**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHEN MORRIS, and KELLY McDANIEL, ) on behalf of themselves and all others similarly ) situated, ) ) Plaintiffs, ) ) v. ) ) ERNST & YOUNG, LLP, and ) ERNST & YOUNG U.S., LLP, ) ) Defendants. ) ) | **Index No.: 12  CIV 0838** <br><br> **AMENDED** <br> **CLASS ACTION COMPLAINT** <br><br> **(Jury Trial Demanded)** |

Plaintiffs Stephen Morris ("Morris") and Kelly McDaniel ("McDaniel") (collectively with Morris, "Plaintiffs"), by their attorneys, Folkenflik & McGerity and Hoffman & Lazear, for themselves, and on behalf of all others similarly situated, make the following allegations upon personal knowledge as to each of Plaintiffs for their own acts and facts, and upon information and belief as to all other matters.  Plaintiffs brings this class and collective action on behalf of those who suffered damages as a result of the violations of the Federal Fair Labor Standards Act, and the laws of California, and as a result of other wrongful conduct and improper labor practices committed by Defendant Ernst & Young LLP and Defendant Ernst & Young U.S., LLP (collectively, "Defendants" or "E&Y") and allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs brings this lawsuit as a collective action under Section 16(b) of the Federal Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §16(b), and as a class action pursuant to Federal Rules of Civil Procedure Rule 23.  The persons Plaintiffs seek to represent are junior accountants: (a) current and former Non-Licensed Senior 1 and Senior 2 (as defined by

Defendants) who have been employed by E&Y to perform audits ("Covered Positions") in the United States at any time since January 24, 2009 (the "Federal Eligibility Period"), whom Defendants failed to and continue to fail to pay overtime for work performed in excess of forty (40) hours per week as required by Federal law (the "FLSA Collective"); and (b) current and former Non-Licensed Senior 1, Senior 2, Staff 1 and Staff 2 (hereinafter collectively referred to as "Non-Licensed Seniors and Staff") who have been employed by E&Y in the United States and inside of the State of California at any time since September 15, 2001 (the "California Eligibility Period") whom Defendants failed to and continue to fail to pay overtime for work performed in excess of forty (40) hours per week as required by California law (the "California Class") (together with the FLSA Collective, the "Classes").

2.      The Plaintiffs seek to represent classes of persons who are so numerous that the joinder of each member of the class is impracticable.

3.      There is a well-defined community of interest in the questions of law and fact affecting the classes and the unnamed plaintiffs which these Plaintiffs seek to represent. The class members' claims against Defendants involve questions of common or general interest, in that their claims are based on Defendants' implementation and utilization of policies pursuant to which all members of the classes were denied payment of wages, overtime compensation during the time in question. These questions are such that proof of a state of facts common to the members of the class will entitle each member of the class to the relief requested in this Complaint.

4.      The Plaintiffs will fairly and adequately represent the interests of the Classes, because the Plaintiffs are members of each of the Classes and the claims of the Plaintiffs are typical of those in each of the Classes.

5.     Defendants violated the FLSA, 29 U.S.C. §207, by failing to pay members of the FLSA Collective overtime pay for a work week longer than forty (40) hours.

6.     Defendants violated Wage Order No. 4 of the California Industrial Welfare Commission ("California Wage Law") which provided during all relevant times that "nonexempt employees must be paid an overtime premium for all hours worked in excess of eight during the workday and in excess of 40 during the workweek, as well as for work performed on the seventh workday in a work week."

7.     By failing to pay their Non-Licensed Seniors and Staff in California any such overtime compensation, Defendants violated the rights of their employees in California under California Wage Law.

8.     As a result of Defendants' violation of the California and Federal labor laws, Plaintiffs and the members of the Classes were unlawfully under-compensated for their work, and are entitled to compensatory damages and statutory penalties.

## JURISDICTION and VENUE

9.     This Court has jurisdiction pursuant to 28 U.S.C. §1331, the Federal statute in question being the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.,* and 28 U.S.C. §1367(a) as to the claims arising under state law.

10.     This Court also has subject matter jurisdiction over all claims pursuant to 28 U.S.C. §1331(d), the Class Action Fairness Act of 2005. On information and belief, the district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs. This action is a class action and, on information and belief, one or more members of the classes of plaintiffs on whose behalf this action is brought is a citizen of a state different from the Defendants.

11.     The United States District Court for the Southern District of New York is proper venue under 28 U.S.C.A. §1391(b)(1) because Defendants' principal place of business is in the city and state of New York, and a substantial part of the events that gave rise to the claims in this action took place in this judicial district.

## PARTIES

12.     Plaintiff Stephen Morris resides in and is a citizen of the State of California.  He was employed by Defendants in Defendants' Los Angeles, California office in its Assurance and Advisory Business Services ("AABS") Division, which is the division performing audits, beginning in January of 2005 in the position of Staff 1 and then was subsequently promoted to the position of Staff 2, and then Senior 1. He ceased working for Defendants in February of 2007.

13.     Plaintiff Kelly McDaniel resides in and is a citizen of the State of California.  She was employed by Defendants in Defendants' San Jose, California office in its AABS Division beginning in October of 2008.  She was hired as Staff 1 and subsequently promoted to the position of Staff 2, and then Senior 1.  She ceased working for Defendants in April 2011.

14.     Defendant Ernst & Young LLP ("E&Y LLP") is a Delaware limited liability partnership practicing public accountancy pursuant to applicable state laws on a nation-wide basis and including, in particular, in California pursuant to a license with the California Board of Accountancy.  E&Y LLP is one of the largest privately held professional services businesses and is headquartered at 5 Times Square, New York, New York.  It has over 90 offices throughout the U.S. and in excess of 41,535 employees.

15.     Upon information and belief, Defendant Ernst & Young U.S., LLP ("E&Y US")(collectively with E&Y LLP, "E&Y") is a Delaware foreign registered limited liability

partnership practicing public accountancy pursuant to applicable state laws, and maintains its principal executive office at 5 Times Square, New York, New York.

16.     Upon information and belief, Defendants are the United States member firms of an international network of affiliated public accounting firms that operate under the name Ernst & Young.  Both of the Defendants meet the statutory requirements under California Law and the FLSA to be deemed the employer of Plaintiffs and all members of the Classes.

17.     The Plaintiffs are former employees of E&Y and those similarly situated to the Plaintiffs are former or current employees of E&Y.

## PLAINTIFFS, CLASS AND REPRESENTATIVE ALLEGATIONS

18.     Defendants were and are professional services businesses engaged in advisory services, assurance (sometimes known as audit services), tax and transactional advisory services. What is generally referred to as an "audit" is the examination of client prepared financial statements made in accordance with Generally Accepted Auditing Standards ("GAAS"), or certain other recognized similar standards, and the expression of an opinion as to whether the client's financial statements are fairly stated and free of material misstatements. Non-partner employees at E&Y are divided into different categories in the audit division, among them Non-Licensed Staff 1, Staff 2, Senior 1 and Senior 2.  These four low-level positions do not require a CPA license. The proposed FLSA Class and California Sub-Class consist entirely of employees and former employees in these four positions, and exclude those who are licensed as CPAs.

19.     As unlicensed employees remain at the company for longer periods of time, they are promoted generally annually from positions as Staff 1 to positions as Staff 2, Senior 1 and Senior 2, where they continue to perform many of the same or very similar non-exempt tasks in a "lock-step" fashion based on length of employment. Seniors may also be given the opportunity

5

to participate to some degree in the planning and reporting phases of the audit, review of work of Staff, and being in charge in an audit engagement with responsibilities for the essentially minuscule administrative tasks including assigning tasks to others, collecting their work and communication with managers or partners about audit progress and any matters of significance. In none of these tasks are the Seniors performing any exempt duties.

20.     During all times relevant herein, the members of the Classes supported the business of Defendants by working under the direction of their superiors, the managers and partners of Defendants. Such work involved the members of the Classes assisting their superiors in the production of the products and services provided by the Defendants' business to its customers. Staff were required to discuss any significant answers with managers or partners. Seniors were required to discuss any significant issues with managers or partners. Members of the Classes were prohibited from making any decision on any matter which might be material to the audit or to E&Y's opinion on the financial statements without approval by the partner with final responsibility for the audit. Most of the time, approval must first be sought from one or more levels of more senior employees who then obtain approval from the audit partner.

21.     Defendants have intentionally limited the potential for individual discretion and independent judgment of members of the Classes in order to maintain quality controls and to limit liability, as well as to comply with legal and professional requirements.

22.     State laws, including California law, generally provide that unlicensed employees engaged in audits must work under the control and supervision of a CPA. Similar rules have been promulgated by the American Institute of Certified Public Accountants ("AICPA"), a professional organization for CPAs, and the Public Company Accounting Oversight Board

("PCAOB"), a private non-profit corporation created by the Sarbanes-Oxley Act to oversee the auditors of public companies.

23.     Companies whose financial statements are audited are generally referred to as *audit clients,* and the public accounting firms that perform audits are generally referred to as *audit firms, CPA firms, or independent auditors.* The professional practice of auditing financial statements in the United States is regulated and controlled by a mixture of private-sector and public standard setters and governing authorities.

24.     Each individual state government issues CPA licenses for practice in that state and issues regulations that govern the work of accounting professionals within that state. There is a National Association of State Boards of Accountancy (NASBA) that is a voluntary association of state boards of accountancy (the common title of the state agency that regulates the practice of public accountancy in that state). NASBA has issued a Uniform Accountancy Act to be used as a model for accountancy laws in the various individual states.

25.     All states have adopted the AICPA-administered Uniform CPA Exam. Each individual state, however, decides what else is required for an individual to be licensed and to work within its borders. State laws also identify those areas of service that are restricted to licensed individuals. All states restrict the service of auditing financial statements to licensed individuals.

26.     State laws that affect and control CPAs go beyond licensing and include various rules that govern firms and individuals practicing public accountancy including ethics, quality control, and continuing professional education. These additional rules and regulations have a high degree of similarity and are generally patterned after comparable AICPA requirements. For

example, ethics requirements generally are adaptations of the AICPA Code of Professional Conduct.

27.     California State has adopted detailed laws, rules, and regulations that govern the practice of public accountancy, and which includes sections that define the profession of public accountancy, restrict the practice of public accountancy and use of the title CPA and similar titles, and establish the requirements for a license as a CPA.

28.     The practice of the profession of public accountancy in California State includes *attest services*. Attest services require the independence of the licensee and include "any audit to be performed in accordance with generally accepted auditing standards ("GAAS") or other similar standards developed by a federal government agency, commission, or board or a recognized international or national professional accountancy organization. "Certified public accountant" or "CPA" means any person who has received a license from a state as a certified public accountant for the practice of public accountancy. Only a person licensed or otherwise authorized to practice may practice public accountancy or use the title CPA or similar title.

29.     To qualify for a license as a CPA, an applicant must fulfill a series of requirements including having received a bachelor's or higher degree in a recognized program in accountancy, meeting an experience requirement, and passing a satisfactory written examination. The written examination used in most states and in California State is the one prepared and administered by the AICPA, the Uniform CPA Exam.

30.     The AICPA is a national, not-for-profit entity that exerts substantial influence on the practice of public accountancy in the United States. Before the creation of the PCAOB by the Sarbanes-Oxley Act in 2002, the SEC had delegated responsibility for setting auditing standards (or GAAS) to the AICPA. The AICPA still sets standards that govern the audits of the financial

8

statements of nonpublic companies in the United States. The AICPA prepares and administers the Uniform CPA Exam.

31.     The AICPA issues and enforces the Code of Professional Conduct (the "Code"). The Code sets ethical requirements for CPAs and states generally use of the Code as a point of reference in adopting their ethical requirements. Under the Code, virtually any matter of significance in connection with providing audit related accountancy service must be reviewed and approved by the CPA in charge of the engagement, who must *at all times* supervise the unlicensed associates who work on the engagement.

32.     The roles of the AICPA contribute substantially to the uniformity of auditing practice across the United States.

33.     The PCAOB is a not-for-profit entity in charge of standard setting and oversight of both the audits of public companies and the firms that perform those audits. To audit the financial statements of a public company whose securities are traded in the United States, the audit firm must be registered with the PCAOB. The registered firm's audit practice is routinely inspected by PCAOB inspectors to evaluate whether the firm is performing in accordance with professional standards. If the PCAOB becomes aware of departures from professional standards through inspections or other means, the PCAOB can investigate and, if appropriate, discipline the firm and individual auditors. Under the structure created by SOX, the SEC oversees the professional standards set by the PCAOB. The PCAOB's standards apply to the audits of all public companies whose securities are traded in the United States.

34.     When the PCAOB became operational in April 2003, it adopted the existing auditing standards previously issued by the AICPA. The PCAOB has adopted several standards of its own since then.

35.     Together, the AICPA and PCAOB standards provide fairly specific requirements that apply to the audits of financial statements. These professional standards govern auditing practice throughout the United States.

36.     The SEC is a government agency that regulates publicly traded companies and exercises authority over the reports the companies file with it and over the stock exchanges. As previously explained, the SEC must authorize all PCAOB rules and standards before they become effective.

37.     On information and belief, most of the audit clients of E&Y in the United States are publicly traded companies or subsidiaries of public corporations.

38.     The AICPA, PCAOB, and SEC all have rules that require the auditor of financial statements to be *independent* and that spell out in detail actions that impair independence of the audit firm, including prohibited activities by firm personnel. All the authorities state that performing management functions of a client impairs independence. Thus, no one working on an audit team can be involved in running the business of audit clients. This requirement of independence is uniformly required throughout the United States.

39.     E&Y's internal standards provide strict limits on what activities can be performed by employees who are not CPAs. An unlicensed E&Y employee *cannot* (i) commit E&Y to an audit engagement; (ii) approve preliminary engagement activities, including the exercise of judgment to assess the potential risk of a potential audit engagement; (iii) approve and sign engagement letters; (iv) work without control and supervision of the licensed CPA; (v) approve or depart from the audit plan/program; (vi) approve and sign any document containing a substantive opinion, conclusion or determination, including audit opinions, audit reports, internal control opinions on public companies (SOX 404 reviews), or certify financial statements; or (vii)

advise client management on matters of significance. Likewise, it is E&Y's policy that Class members are not permitted to deviate from firm policies and procedures without approval.

40.    Plaintiff Morris was an employee of Defendants commencing in January 2005, until February 2007. Throughout that time period, Morris was not a licensed CPA and was assigned to provide services on audit engagements. Initially, his job title was Staff 1. In or about September 2005, he was "promoted" to Staff 2, and in or about September 2006, he was "promoted" to Senior 1. Throughout his employment, Morris regularly worked in excess of 40 hours in a work week. Like all employees in the Covered Positions and Staff 1 through Senior 2 audit employees, he was *required* to work at least 55 hours per week during the busy season which continued from January through March annually, and, in fact, often worked significantly in excess of 55 hours per week. Morris did not receive additional compensation for the overtime hours worked.

41.    Plaintiff McDaniel was an employee of Defendants commencing in October 2008, until April 2011. McDaniel became a licensed CPA in December 2010. Throughout her employment she was assigned to provide services on audit engagements. Initially, her job title was Staff 1. In or about September, 2009, she was "promoted" to Staff 2, and in or about September 2010, she was "promoted" to Senior 1. Throughout her employment, McDaniel regularly worked in excess of 40 hours in a work week. Like all employees in the Covered Positions and Staff 1 through Senior 2 audit employees, she was *required* to work at least 55 hours per week during the busy season which continued from January through March annually, and, in fact, often worked significantly in excess of 55 hours per week. McDaniel did not receive additional compensation for the overtime hours worked.

11

42.     Throughout their employment, Morris and McDaniel performed routine tasks under multiple layers of supervision. The work performed by Plaintiffs and the Classes was not executive, administrative or professional as those terms are defined by Federal and California laws.

43.     The great majority of such work by Plaintiffs and members of the Classes included secretarial, clerical, data entry and support work, including filing papers, organizing and assembling documents, taking notes of meetings, entering data into spread sheets, schedules or forms, formatting spreadsheets, conforming data entered on journals, or subsidiary journals to original documents, adding numbers on journals, calculating percentages from numbers on financial statements on journals, and similar tasks.  Such tasks require very little or no exercise of independent judgment or discretion, and such discretion or judgments as are exercised are not as to matters which are considered "material," the accounting industry's term for matters of significance.  The tasks performed by Plaintiffs and members of the Classes do not require any advanced professional degree or license or the prior completion of any extended course of academic or technical studies in any art or science for the proper performance of these tasks. Limited classroom training and on-the-job training supplied Plaintiffs and the members of the Classes with the skills necessary to perform their tasks.

44.     Many of the tasks performed by members of the Classes were also performed by "interns" who had not completed their undergraduate degrees.

45.     Defendants compensated the Plaintiffs and members of the Classes on a "salary only" basis whereby the Plaintiffs and the members of the Classes were paid a fixed salary for all hours worked during each week and no overtime.

46.    Neither of the Plaintiffs, nor the other members of the FLSA Class or the California Class, were or are part of any group exempt from the overtime requirements of Federal Law or the Labor Laws of the States and jurisdictions of the United States, including, without limitation, the California Wage Law.

47.    Members of the California Class are not "professionals" and did not perform executive or administrative functions as defined by the laws of California, or the FLSA or regulations of administrative interpretation thereof.

## FIRST CLAIM FOR RELIEF
### Restitution for Failure to Pay Overtime to the Federal Collective
### (Violation of FLSA §207)

48.    Plaintiffs hereby incorporate by reference all of the allegations of all prior paragraphs as though fully set forth herein.

49.    Section 207(a)(1) of the FLSA provides, in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. §207(a)(1) (2005).

50.    Section 213(a)(1) of the FLSA provides that the overtime pay requirement does not apply to:

> any employee employed in a bona fide **executive, administrative**, or **professional capacity** (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary school), or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of subchapter II of chapter 5 of title 5 except that an employee of a retail or service establishment shall not be excluded

> from the definition of employee employed in a bona fide executive or administrative capacity because of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of his executive or administrative activities, if less than 40 per centum of his hours worked in the work week are devoted to such activities).

29 U.S.C. §213(a)(1) (2005) (emphasis added).

51.     The Section 213(a)(1) exemption for employees employed in a professional capacity is inapplicable because members of the Classes are not employed in a bona fide "professional" capacity.   The skills necessary to perform the tasks actually performed by Plaintiffs and the other members of the FLSA Collective are acquired through experience, on-the-job training apprenticeship, and limited classroom training at Ernst & Young, as well as through self-study, but not as a result of undergraduate or graduate accountancy training.   To the extent that training in accounting terminology or double entry bookkeeping is useful for the performance of the jobs of members of the Classes, the necessary training and skills are those of an experienced bookkeeper.

52.     The Section 213(a)(1) exemption for executive or administrative personnel also do not apply to members of the FLSA Collective.

53.     For purposes of the FLSA, the employment practices of Defendants were and are uniform throughout the United States in all respects material to the claims asserted in this Complaint and the affirmative defenses applicable to these claims.   Nationally circulated audit manuals and audit practices, policies, agendas and templates are prepared and circulated by Defendants and set forth the nationally applicable standard practices for the duties to be prepared by persons working on audits.

54.     There are no other exemptions applicable to Plaintiffs and/or the other members of the FLSA Collective.

55.     Plaintiffs and other members of the FLSA Collective, either regularly or from time to time, worked more than forty (40) hours per week for Defendants, and received no premium pay for hours worked in excess of forty (40) hours per week.

56.     In committing the wrongful acts alleged to be in violation of the FLSA, Defendants acted willfully in that they knowingly, deliberately and intentionally failed to pay overtime to Plaintiffs and the other members of the FLSA Collective.

57.     As a result of Defendants' failure to pay overtime, Plaintiffs and the other members of the FLSA Collective were damaged in an amount to be proven at trial.

58.     Therefore, Plaintiffs demand that they and the members of the FLSA Collective be paid overtime compensation as required by the FLSA for every hour of overtime worked in any work week for which they were not compensated, plus liquidated damages, and attorneys' fees as provided by law.

## SECOND CLAIM FOR RELIEF
### Restitution for Failure to Pay Overtime to the California Class
### (California Labor Code Section 1194)

59.     Plaintiffs hereby incorporate each and every allegation contained in this Complaint above and re-allege said allegations as though fully set forth herein.

60.     At all relevant times, the Plaintiffs and the California Class members were required to work in excess of eight hours during the workday and in excess of forty (40) hours during the workweek and/or worked more than six consecutive days in a workweek.

61.     During all relevant times the Wage Order No. 4 of the California Industrial Welfare Commission provided that "nonexempt employees must be paid an overtime premium for all hours worked in excess of eight during the workday and in excess of 40 during the workweek, as well as for work performed on the seventh workday in a work week."

15

62.     Although the Plaintiffs and the California Class members worked overtime as that term was defined in the relevant wage orders, Defendants failed and refused to pay the legally required state overtime premiums.

63.     Therefore, Plaintiffs, on their own behalves and on behalf of all California Class members, demand overtime compensation as provided under California law, liquidated damages, and attorneys' fees.

### THIRD CLAIM FOR RELIEF
**Overtime and Unpaid Wages to the California Class**
**(California Labor Business and Professions Code ''17200, et seq)**

64.     Plaintiffs hereby incorporate each and every allegation contained in this Complaint and re-allege said allegations as though fully set forth herein.

65.     Throughout the above-described period, Defendants repeatedly misrepresented to the members of the Classes and the general public that the members of the Classes were "professional" or other sorts of employees exempt from the overtime laws of the State of California. The Defendants also failed to require or have the members of the Classes take specified paid and/or unpaid meal and rest breaks as required by California law and did not pay members of the Classes an hour of additional wages per day for such un-received break time, as required by California law.

66.     The misrepresentations and omissions by the Defendants gave Defendants a competitive advantage over other employers who legitimately paid their workers the proper overtime wages and other wages required by California law and who also gave the employees the meal and rest breaks required by California law or the additional wages required by California law in lieu thereof.

67.     Defendants' conduct described in this Complaint constitutes an unlawful business practice in violation of the provisions of Business and Professions Code ''17200, <u>et seq</u>.

68.     Therefore, Plaintiffs pray for restitution and injunctive relief for themselves and all California Class members for all wages due and an order pursuant to Business & Professions Code Section 17203 to cease from failing to pay overtime wages to workers employed or who render services to Defendants within California.

## FOURTH CLAIM FOR RELIEF
### Statutory Interest on Unpaid Wages to the California Class
### (Labor Code Section 218.6)

69.     Plaintiffs hereby incorporate each and every allegation contained in this Complaint above and re-allege said allegations as though fully set forth herein.

70.     California Labor Code Section 218.6 state, "In any action brought for the nonpayment of wages, the court shall award interest on all due and unpaid wages at the rate of interest specified in subdivision (b) of Section 3289 of the Civil Code, which shall accrue from the date that the wages were due and payable as provided in Part 1 (commencing with Section 200) of Division 2."

71.      Subdivision (b) of Section 3289 of the California Civil Code states, "If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."

72.     Therefore, Plaintiffs, on their own behalves and all California Class members', demand interest on the amount of wages due weekly at the rate of 10% per annum as required by law.

# FIFTH CLAIM FOR RELIEF

### Waiting Penalties to the California Class
### (California Labor Code Section 203)

73.     Plaintiffs hereby incorporate each and every allegation contained in this Complaint above and re-allege said allegations as though fully set forth herein.

74.     California Labor Code Section 203 states, "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

75.     The Plaintiffs and the majority of members of the Classes terminated employment more than 30 days prior to the filing of this lawsuit.

76.     Therefore, Plaintiffs, on their own behalves and all California Class members', demand waiting penalties according to law.

# SIXTH CLAIM FOR RELIEF
### Unpaid Wages for Worked Break Time to the California Class
### (California Labor Code Section 226.7)

77.     Plaintiffs hereby incorporate each and every allegation contained in this Complaint above and re-allege said allegations as though fully set forth herein.

78.     Pursuant to California Labor Code Section 226.7, and the wage orders issued pursuant to said statute, the Plaintiffs and the California Class members were entitled to paid 10 minute breaks for every four hours of daily employment and an unpaid meal break of 30 minutes after five hours of daily employment.

18

79.     Although the Plaintiffs and the California Class members regularly worked for amounts of time each day that would entitle them to the paid and unpaid rest and meal breaks provided for under California Labor Code Section 226.7, they often did not receive such daily rest and meal breaks, and they did not receive one hour of additional pay on the days they did not receive such breaks.

80.     Therefore, Plaintiffs, on their own behalves and all California Class members', demand the payment of an additional one hour of pay for each day that they were not provided with the breaks required by California law.

WHEREFORE, Plaintiffs, on behalf of themselves and the other members of the FLSA Class and the California Class, demand judgment in their favor against Defendants, individually, jointly and severally, for:

A.     Compensatory damages, including restitution for both regular and overtime compensation due Plaintiffs and the other members of the FLSA Class and the California Class during the applicable Federal Eligibility Period and the California Eligibility period, plus liquidated damages and interest thereon at the statutory rate;

B.     An order temporarily, preliminarily, and permanently enjoining and restraining Defendants from engaging in similar unlawful conduct as set forth herein;

C.     Imposition of a constructive trust upon the assets of the Defendants to the extent of the sums due to Plaintiffs and the other members of the FLSA Class and California Class;

D.     The California Class demands premium pay for overtime hours worked according to the Wage Orders of the Industrial Welfare Commission applicable at the time work was performed, as well as one hour of additional wages for each day that they worked and were not

provided with the breaks required by California law and waiting penalties as provided for under Labor Code Section 203;

E.     The California Class also demands interest at the legal rate of 10% per annum, from each week payment of wages were due for each and every California Class member;

F.     Reasonable attorneys' fees, litigation expenses and costs of suit;

G.     Such other and further relief as the Court deems just and equitable.

Dated:  April 10, 2012

FOLKENFLIK & MCGERITY

By: _____
     Max Folkenflik (MF2910)
     Folkenflik & McGerity
     1500 Broadway, 21st Floor
     New York, New York 10036
     Phone: (212) 757-0400
     *Attorneys for Plaintiffs*

     H. Tim Hoffman, Esq.
     Arthur W. Lazear, Esq.
     Ross L. Libenson, Esq.
     Hoffman & Lazear
     180 Grand Avenue Suite #1550
     Oakland, CA  94612
     Telephone:(510) 768-5700
     *Attorneys for Plaintiffs*