1  **AKIN GUMP STRAUSS HAUER & FELD LLP**
   GREGORY W. KNOPP (SBN 237615)
2  CHRISTOPHER K. PETERSEN (SBN 260631)
   2029 Century Park East, Suite 2400
3  Los Angeles, California 90067-3012
   Telephone:   310-229-1000
4  Facsimile:   310-229-1001
   gknopp@akingump.com
5  cpetersen@akingump.com

6  Attorneys for Defendant, ERNST & YOUNG LLP

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11

12 STEPHEN MORRIS and KELLY           Case No. 12-cv-04964-RMW (HRL)
   McDANIEL, on behalf of themselves
13 and all others similarly situated   [Assigned for all purposes to Judge
                                       Ronald M. Whyte]
14             Plaintiffs,
                                       **DEFENDANTS ERNST & YOUNG
15       v.                            LLP'S AND ERNST & YOUNG U.S.,
                                       LLP'S MOTION TO DISMISS, OR
16 ERNST & YOUNG LLP, and ERNST        IN THE ALTERNATIVE, STAY
   & YOUNG U.S., LLP,                  PROCEEDINGS AND COMPEL
17                                     ARBITRATION**
               Defendants.
18                                     Date:   February 15, 2013
                                       Time:   9:00 a.m.
19                                     Ctrm:   6

20

21

22

23

24

25

26

27

28

---

DEFENDANT ERNST & YOUNG'S MOTION TO COMPEL ARBITRATION

103704595

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1
II. BACKGROUND ...................................................................................................1
    A. Ernst & Young's Common Ground Dispute Resolution Program ........1
    B. McDaniel's And Morris's Agreements To Arbitrate Their Claims........2
    C. The Instant Litigation ..............................................................................4
III. ARGUMENT..........................................................................................................4
    A. A Valid Agreement To Arbitrate Exists. ................................................6
    B. The Agreement Encompasses The Claims At Issue. .............................7
IV. CONCLUSION.......................................................................................................8

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Arakawa v. Japan Network Grp.*,
   56 F. Supp. 2d 349 (S.D.N.Y. 1999) .......................................................................... 6

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) ............................................................................................ 1, 5

*Blau v. AT&T Mobility*,
   2012 WL 566565 (N.D. Cal. Feb. 21, 2012) .............................................................. 4

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 2:08 CV 00767-MCE,
   2008 WL 3876341 (E.D. Cal. Aug. 20, 2008) ............................................................ 5

*Brown v. St. Paul Travelers Cos.*,
   331 Fed. Appx. 68 (2d Cir. 2009) ............................................................................... 6

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006) .................................................................................................... 5

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) .................................................................................... 5

*Cohen v. UBS Fin. Servs., Inc.*, No. 12-cv-2147 (BSJ),
   2012 WL 6041634 (S.D.N.Y. Dec. 4, 2012) .............................................................. 4

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) .................................................................................................... 5

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995) .................................................................................................... 6

*Gonsalves v. Infosys Techs., Ltd.*,
   2010 WL 3118861 (N.D. Cal. Aug. 5, 2010) ............................................................. 4

*Lowden v. T-Mobile USA, Inc.*,
   512 F.3d 1213 (9th Cir. 2008) .................................................................................... 6

*Marchese v. Shearson Hayden Stone, Inc.*,
   734 F.2d 414 (9th Cir. 1984) .................................................................................. 7, 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ........................................................................................................ 8

*Newton v. Thomason*,
    22 F.3d 1455 (9th Cir. 1994) ..................................................................................5

*Quevedo v. Macy's Inc.*,
    798 F. Supp. 2d 1122 (C.D. Cal. 2011) ..................................................................6

*Tel-Phonic Servs., Inc. v. TBS Intern., Inc.*,
    975 F.2d 1134 (9th Cir. 1992) ..................................................................................5

**STATE CASES**

*Asmus v. Pac. Bell*,
    23 Cal. 4th 1 (2000) ..................................................................................................7

*Craig v. Brown & Root, Inc.*,
    84 Cal. App. 4th 416 (2000) ....................................................................................7

*Shah v. Wilco Sys., Inc.*,
    806 N.Y.S. 2d 553 (N.Y. App. Div. 2005) ..............................................................6

**FEDERAL STATUTES**

9 U.S.C. § 2 .......................................................................................................... 4, 5

9 U.S.C. § 3 ...............................................................................................................6

## I. INTRODUCTION

Plaintiffs Stephen Morris and Kelly McDaniel are former employees of Ernst & Young who claim that Ernst & Young improperly classified them and other individuals as exempt from federal and California overtime laws. Long before filing this action, however, both plaintiffs agreed to arbitrate the precise claims they now assert. Pursuant to the Federal Arbitration Act ("FAA"), whose "overarching purpose" is "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings," defendants (collectively "Ernst & Young") hereby move to compel plaintiffs to arbitrate their claims. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011). Because plaintiffs indisputably agreed to arbitrate the claims at issue, their agreement must be enforced, and this action should be dismissed.

## II. BACKGROUND

### A. Ernst & Young's Common Ground Dispute Resolution Program

Ernst & Young maintains a Common Ground Dispute Resolution Program (the "Program"), which applies to current and former employees alike. Declaration of Daria Hodapp ("Hodapp Decl."), ¶ 8, Ex. C at ¶ II.A.2. The Program covers "all claims, controversies or other disputes" between Ernst & Young and the employee that could otherwise be resolved by a court, with very limited exceptions that do not apply here. *Id.* at ¶ II.B.1. Covered disputes include claims "based on federal statutes such as . . . the Fair Labor Standards Act," "based on state statutes," and "concerning wages, salary, and incentive compensation programs" (the "Covered Disputes"). *Id.* ¶ II.C.

The Program is the exclusive means for resolving such disputes. "Both the Firm and the Employee give up any right to resolve any Covered Dispute through any other means. ***Neither the Firm nor an Employee will be able to sue in court in connection with a Covered Dispute.***" *Id.* ¶ II.B.1 (original emphasis).

In addition, the Program explicitly informs employees that if they file a lawsuit against Ernst & Young, the firm may proceed directly to arbitration or seek an order to compel compliance with the Program. *See id.* ¶ IV.B. The Program precludes class

1

claims in arbitration by making clear that Covered Disputes pertaining to different employees must be brought in separate arbitration proceedings. *Id.* ¶ IV.K.

The Program authorizes the arbitrator to "provide for reimbursement of the Employee's attorney's fees, in whole or part, in accordance with applicable law or in the interest of justice." *Id.* ¶ IV.P.3. In addition, the portion of arbitrator fees or other costs of arbitration payable by an employee may be adjusted to permit the agreement to be enforced. *Id.* ¶ IV.P.2; V.F. Although the Program clearly provides for the same award of fees and costs as is available in court, to remove any conceivable doubt, Ernst & Young hereby stipulates that plaintiffs are entitled to recover in arbitration any fees and costs that they could recover in court if they prevail on their individual claims. Ernst & Young further stipulates that it will bear all administrative costs and arbitrator fees.

Finally, the Program is expressly governed by the FAA:

> The Program, these procedures, and any arbitration award that may result from them shall be governed by the Federal Arbitration Act and, to the extent, if any, that such Act is held not to apply, to the state law, including judicial interpretations, applicable in the State of New York, provided that principles of conflicts of laws shall not be applied.

*Id.* ¶ V.G.

### B. McDaniel's And Morris's Agreements To Arbitrate Their Claims

McDaniel commenced her employment at Ernst & Young on October 1, 2008. *Id.* at ¶ 5. On or about November 14, 2007, Ernst & Young mailed her a letter offering her employment, and enclosing various documents for her to review and sign. *Id.* ¶ 6, Ex. A. On November 16, 2007, McDaniel signed and accepted her offer in a letter, which set out the terms of her employment, and, in bold language, informed McDaniel that all employment-related disputes would be subject to mandatory mediation or arbitration pursuant to the Program, a copy of which was enclosed with her offer letter. *Id.* The offer letter states:

> **You understand that if an employment related dispute arises between you and the firm, it will be subject to mandatory mediation/arbitration under the terms of the**

2
DEFENDANT ERNST & YOUNG'S MOTION TO COMPEL ARBITRATION

103704595

**firm's alternative dispute resolution program, known as the Common Ground Program, a copy of which is attached.**

*Id.* (emphasis in original).

On or about November 16, 2007, McDaniel also signed a Confidentiality Agreement, which expressly incorporates the Program and requires that certain disputes be submitted to arbitration in accordance with the Program. *Id.* ¶ 7, Ex. B. The Confidentiality Agreement states:

> I further agree that any dispute, controversy or claim (as defined in the E&Y Common Ground Dispute Resolution Program (AA7521) attached) arising between myself and the Firm will be submitted first to mediation and, if mediation is unsuccessful, then to binding arbitration in accordance with the terms and conditions set forth in AA7521, which describes the Firm's Common Ground Dispute Resolution Program. I acknowledge that I have read and understand the E&Y Common Ground Dispute Resolution Program (AA7521) and that I shall abide by it.

*Id.* The Confidentiality Agreement is governed by New York law. *Id.*

Morris commenced his employment at Ernst & Young in January 2005. Declaration of Ingrid McGuire ("McGuire Decl."), ¶ 6. On March 23, 2006, Ernst & Young sent a "Daily Connection" email to its U.S. personnel, including Morris, which set forth revisions to the Program. *Id.* ¶¶ 7, 15, Exs. A, E. This email attached the Program in its entirety. *Id.* ¶ 8. The Program stated, in bold letters, "*An Employee indicates his or her agreement to the Program and is bound by its terms and conditions by beginning or continuing employment with the firm after May 1, 2006.*" *Id.* ¶ 7, Ex. A at ¶ II.A.2 (original emphasis).

Morris received another email on or about April 25, 2006, again setting forth the terms of the revised Program. *Id.* ¶¶ 9–12, 15, Exs. B, C, E. The email stated, in bold letters, "*An Employee indicates his or her agreement to the Program and is bound by its terms and conditions by beginning or continuing employment with the firm after May 25, 2006.*" *Id.*, Ex. B at II.A.2. Ernst & Young also sent a "Daily Connection"

3
DEFENDANT ERNST & YOUNG'S MOTION TO COMPEL ARBITRATION

103704595

email to its U.S. personnel the same day setting forth changes to the Program. *Id.* ¶¶ 13–15, Exs. D, E.

### C. The Instant Litigation

In February 2012, Morris commenced this action in the Southern District of New York, alleging six causes of action based on Ernst & Young's alleged misclassification of him as exempt from California and federal overtime laws. Dkt. No. 1. Morris did not attempt to resolve his dispute through the Program.

Ernst & Young informed Morris that his FLSA claim is barred by the statute of limitations. Declaration of Gregory W. Knopp ("Knopp Decl.") ¶ 3, Ex. A. Morris agreed to amend his Complaint accordingly. Instead of dismissing his time-barred claim, however, Morris amended his Complaint to add another plaintiff—McDaniel—on April 11, 2012. Dkt. No. 12. McDaniel asserts the same claims as Morris. *Id.* She likewise did not attempt to resolve her dispute through the Program.

On May 8, 2012, Ernst & Young filed a motion for transfer of the action to this Court. Dkt. No. 24. That motion was granted on September 11, 2012. Dkt. No. 36. On September 24, 2012, this Court received the transfer order and docket sheet. Dkt. No. 37.[1]

## III. ARGUMENT

The FAA provides that "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction shall be valid, irrevocable, and enforceable." 9

---

[1] In its transfer motion, Ernst & Young expressly reserved its right to seek arbitration and explained that first seeking transfer cannot constitute a waiver of that right. *See* Mot. to Transfer at 2 n.1 (Dkt. No. 25); *see also Gonsalves v. Infosys Techs., Ltd.*, 2010 WL 3118861, at *3 (N.D. Cal. Aug. 5, 2010) ("'A petitioning party does not waive its arbitration rights merely by seeking to change judicial venue of an action prior to requesting arbitration .... [A] party is not required to litigate the issue of arbitration in an improper or inconvenient venue.'") (quoting *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal 4th 1187, 1205 (2003)); *Blau v. AT&T Mobility*, 2012 WL 566565, at *2 (N.D. Cal. Feb. 21, 2012) (quoting *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004)) ("'[I]t is well-established that a party does not waive its right to arbitrate merely by filing a motion to dismiss.'"); *Cohen v. UBS Fin. Servs., Inc.*, No. 12-cv-2147 (BSJ)(JLC), 2012 WL 6041634, at *6 (S.D.N.Y. Dec. 4, 2012) (successful motion to transfer venue did not waive right to pursue motion to compel arbitration).

U.S.C. § 2. By enacting the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). It is the "overarching purpose" of the FAA "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011).

"The court's role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).[2] If these two issues are decided in favor of arbitration, there is "no place for the exercise of discretion," and the Court must "direct the parties to proceed in arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

"If the existence of an arbitration agreement between the parties is proven or undisputed, the party opposing arbitration has the burden of proving any fact necessary to its defense." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 2:08 CV 00767-MCE-EFB, 2008 WL 3876341 (E.D. Cal. Aug. 20, 2008). That party may avoid arbitration only by proving a defense generally applicable to all contracts. 9 U.S.C. § 2 (arbitration provisions must be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract"). Thus, arbitration agreements may be invalidated only by "'contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact

---

[2] Even though plaintiffs originally filed this action in a Second Circuit court, Ninth Circuit precedent clearly governs this motion brought under the FAA. *See Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994) ("[W]hen reviewing federal claims, a transferee court in this circuit is bound only by our circuit's precedent. Accordingly, we will apply our law to interpret the [federal law] claim."); *Tel-Phonic Servs., Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1138 (9th Cir. 1992) ("When a case is transferred from a district in another circuit, the precedent of the circuit court encompassing the transferee district court applies to the case on matters of federal law.").

1  that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

When a party moves to compel arbitration, the court must stay proceedings pending arbitration. *See* 9 U.S.C. § 3. However, courts also have discretion to dismiss rather than stay an action where, as here, all of the claims in the complaint must be submitted to arbitration. *See* 9 U.S.C. § 3; *Quevedo v. Macy's Inc.*, 798 F. Supp. 2d 1122, 1143 (C.D. Cal. 2011) (quoting *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)) ("[T]he FAA . . . does not 'limit the court's authority to grant a dismissal' where the court requires a plaintiff 'to submit all claims to arbitration.'").

### A. A Valid Agreement To Arbitrate Exists.

Courts "apply state-law principles that govern the formation of contracts to determine whether a valid arbitration agreement exists." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Pursuant to New York law, which governs the Program, a person who signs a contract is presumed to know its contents and to assent to them. *See Arakawa v. Japan Network Grp.*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999). That person is bound by the agreement unless she can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract. *Id.*

Further, New York law permits employers "to change any term in an at-will employment and the employee's continued employment is deemed to be a consent thereto." *Shah v. Wilco Sys., Inc.*, 806 N.Y.S. 2d 553, 557 (N.Y. App. Div. 2005) (citing *Bottini v. Lewis & Judge Co.*, 621 N.Y.S. 2d 753 (N.Y. App. Div. 1995)); *see also Brown v. St. Paul Travelers Cos.*, 331 Fed. Appx. 68, 69 (2d Cir. 2009) (holding that "under New York contract law, [plaintiff] is 'deemed to have accepted' the arbitration policy by continuing to work after being advised 'that it was her responsibility to read and understand all of the company policies including the arbitration policy.'"). Thus, under New York law, acceptance of an agreement to arbitrate may be express or implied-in-

fact where the employee's continued employment constitutes her acceptance of an agreement proposed by her employer.³

Under these principles, both plaintiffs are clearly bound by a valid agreement to arbitrate their claims. McDaniel signed both her offer letter and the Confidentiality Agreement, which specifically incorporates the Program. *See* Hodapp Decl. ¶¶ 6–7, Exs. A, B. The Confidentiality Agreement states in plain language that she agrees that "any dispute, controversy or claim" would be subject to binding arbitration. *Id.* ¶ 7, Ex. B. She also acknowledged that she read and understood the dispute resolution procedures and that she would abide by them. *Id.* Morris agreed to be bound by the Program by continuing his employment after the program was instituted in 2002 and revised in 2006. The Daily Connection emails he received, which attached the revised version of the Program that applies to Morris's claims, plainly state that disputes of the type at issue here are subject to binding arbitration. *See* McGuire Decl. ¶¶ 7–15, Exs. A–E.

In short, plaintiffs agreed to arbitrate either expressly in writing or by continued employment with Ernst & Young after assenting to, and with full knowledge of, the arbitration agreement.

### B. The Agreement Encompasses The Claims At Issue.

Once it is determined that an agreement to arbitrate exists, interpretation of the scope of the arbitration clause is governed by the FAA. Courts apply a "liberal construction [to] arbitration agreements . . . in harmony with the national policy favoring arbitration that Congress evinced when it enacted the [FAA]." *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984). Thus, courts "will not except a controversy from coverage of a valid arbitration clause 'unless it may be said

---

³ California law is in accord. *See Asmus v. Pac. Bell*, 23 Cal. 4th 1, 11 (2000) ("California law permits employers to implement policies that may become unilateral implied-in-fact contracts when employees accept them by continuing their employment."); *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420, 422 (2000) (plaintiff was bound by arbitration program where she received brochure regarding program and continued employment after that date).

with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 860 (9th Cir. 1979)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

The arbitration agreement here is clearly "susceptible of an interpretation that covers the asserted dispute." Plaintiffs assert wage and hour claims under California law and the FLSA. The Program explicitly refers to these types of claims as examples of Covered Disputes that are subject to arbitration. *See* Hodapp Decl. ¶ 8, Ex. C ¶ II.C. Specifically, claims (i) concerning an employee's wages or salary, (ii) based on the FLSA, and (iii) based on state law are all covered by the Program. *Id.* Thus, plaintiffs' claims are clearly covered by the dispute resolution process to which they agreed.

## IV. CONCLUSION

The requirements that mandate an order compelling arbitration are fully satisfied. Because plaintiffs are bound by a valid arbitration agreement that encompasses all of their claims, the Court should dismiss the Complaint, including the class claims, and compel arbitration on an individual basis. In the alternative, the Court should stay proceedings while each plaintiff's claims are arbitrated.

Dated: January 10, 2013

AKIN GUMP STRAUSS HAUER &
FELD LLP

By        /s/ *Gregory W. Knopp*
            Gregory W. Knopp
            Attorneys for Defendant
            Ernst & Young LLP

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2029 Century Park East, Suite 2400, Los Angeles, California 90067. On January 10, 2013, I served the foregoing document(s) described as:

**DEFENDANT ERNST & YOUNG LLP'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS AND COMPEL ARBITRATION**

on the interested party(ies) below, using the following means:

**All parties identified for Notice of Electronic Filing generated by the Court's CM/ECF system under the referenced case caption and number**

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 10, 2013 at Los Angeles, California.

Robin Splendore
[Print Name of Person Executing Proof]

[Signature]

PROOF OF SERVICE

103704595