1  MAX FOLKENFLIK
   (Application for Admission *Pro Hac Vice* Pending)
2  **FOLKENFLIK & MCGERITY LLP**
   1500 Broadway, 21St Floor
3  New York, NY 10036
   Telephone: (212)757-0400
4  Facsimile: (212)757-2010

5  H. TIM HOFFMAN, (State Bar No. 49141)
   ROSS L. LIBENSON, (State Bar No. 181912)
6  **HOFFMAN LIBENSON SAUNDERS AND BARBA**
   180 Grand Avenue, Suite 1550
7  Oakland, CA 94612
   Telephone: (510) 763-5700
8  Facsimile: (510) 835-1311

9  *Attorneys for Plaintiffs*

10              UNITED STATES DISTRICT COURT

11         FOR THE NORTHERN DISTRICT OF CALIFORNIA

12 STEPHEN MORRIS, and KELLY      ) Case No. 12-CV-04964 RMW (HRL)
   McDANIEL, on behalf of themselves ) [Assigned for all purposes to Judge
13 and all others similarly situated,  ) Ronald M. Whyte]
                                   )
14           Plaintiffs,           ) **PLAINTIFFS' MEMORANDUM**
                                   ) **OF LAW IN OPPOSITION TO**
15      v.                         ) **DEFENDANTS' MOTION TO**
                                   ) **STAY OR COMPEL**
16 ERNST & YOUNG, LLP, and         ) **ARBITRATION**
   ERNST & YOUNG U.S., LLP,        )
17                                 )
           Defendants.            ) Date:    February 15, 2013
18                                 ) Time:    9:00 a.m.
                                   ) Dept.:   6
19                                 )
20 _____   )

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
**Page**

3   TABLE OF AUTHORITIES ..................................................................................... iii

4   PRELIMINARY STATEMENT AND SUMMARY OF THE ARGUMENT ............................. 1

5   STATEMENT OF ADDITIONAL FACTS ................................................................... 4

6           A.      The EY Arbitration Agreement ..................................................... 4

7           B.      The Expense of Proceeding Individually in Arbitration to Recover
8                   Plaintiff's Statutorily Entitled Overtime Payments ................................. 5

9           C.      The Extensive Litigation by EY Prior to the Motion ................................. 6

10  ARGUMENT 8

11  POINT I      THE EY ARBITRATION AGREEMENT IS
             UNENFORCEABLE SINCE, AS FOUND AGAINST EY IN
12           *SUTHERLAND*, THE AGREEMENT DOES NOT PROVIDE
             FOR MANDATORY FEE SHIFTING AS REQUIRED BY
13           FEDERAL AND STATE LAW ............................................................... 8

14  POINT II     EY CANNOT ENFORCE ARBITRATION UNDER THE EY
             ARBITRATION AGREEMENT BECAUSE IT WAS
15           WAIVED BY LITIGATION CONDUCT IN THIS CASE, *HO*,
             *RICHARDS* AND *LANDON* ................................................................. 10

16  POINT III    ARBITRATION UNDER THE EY ARBITRATION
             AGREEMENT IS PROHIBITIVELY EXPENSIVE AND
17           RENDERS IT IMPOSSIBLE FOR PLAINTIFFS TO
             EFFECTIVELY VINDICATE THEIR STATUTORY RIGHTS
18           AS FOUND IN *SUTHERLAND* .............................................................. 17

19          A.      Plaintiffs' Proof of Prohibitive Cost .............................................. 18

20          B.      The Availability of Fee Shifting Does Not Alter the Conclusion
21                  That Individual Arbitration Is Prohibitively Expensive ......................... 19

22                  1.      Even if Costs Could Be "Shifted," And All Fees Shifted,
                           Individual Arbitration Would Still be Prohibitably
23                         Expensive ................................................................... 19

24                  2.      Plaintiffs' Have Significant Risk that All Costs and
                           Fees Will Not Be Shifted ................................................. 21

25          C.      Vindication of Statutory Rights Analysis Applies to The State
26                  Law Claims ................................................................................ 22

27  POINT IV     THE FLSA CREATES LEGAL RIGHTS WHICH WOULD BE
             IMPERMISSIBLY COMPROMISED BY COMPELLING
28           INDIVIDUAL ARBITRATION ............................................................... 25

-i-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO STAY OR COMPEL ARBITRATION
Case No. 12-CV-04964 RMW (HRL)

1

POINT V        THE EY ARBITRATION AGREEMENT VIOLATES THE
               NATIONAL LABOR RELATIONS ACT AS FOUND IN THE
2              NLRB DECISION IN *D.R. HORTON* TO WHICH THIS COURT
               SHOULD DEFER.  IT IS SETTLED LAW THAT CONRACTS
3              IN VIOLATION OF FEDERAL LAW CANNOT BE
               ENFORCED ........................................................................................................31

4

CONCLUSION ..........................................................................................................................35

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO STAY OR COMPEL ARBITRATION
Case No. 12-CV-04964 RMW (HRL)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Page(s)**

Cᴀꜱᴇꜱ

*14 Penn Plaza, LLC v. Pyett,*
   556 U.S. 247 (2009)..................................................................................8, 26, 31

*Ackerman v. Eber (In re Eber),*
   687 F.3d 1123 (9th Cir. 2012) ............................................................26

*AFL CIO v. NLRB,*
   2013 U.S. App. LEXIS 1139 (2d Cir. Jan. 17, 2013) ...............................33

*Am. Express Co. v. Italian Colors Rest.,*
   133 S. Ct. 194 (U.S. 2012)................................................................3

*Appling v. State Farm Mut. Auto. Ins. Co.,*
   340 F.3d 769 (9th Cir. 2003) ..........................................................10

*AT&T Mobility LLC v. Concepcion,*
   131 S. Ct. 1740 (2011).................................................................7, 24

*Attard v. City of New York,*
   451 Fed. Appx. 21 (2d Cir. 2011) .....................................................17

*Booker v. Robert Half Int'l, Inc.,*
   413 F.3d 77 (D.C. Cir. 2005)...........................................................23

*Brady v. Deloitte & Touche LLP,*
   2012 U.S. Dist. LEXIS 42118 (N.D. Cal. Mar. 27, 2012) ......................20, 24

*Brady v. Williams Capital Group, L.P.,*
   14 N.Y.3d 459 (2010)..................................................................24

*Brown v. Wheat First Sec., Inc.,*
   257 F.3d 821 (D.C. Cir. 2001)........................................................22

*Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.,*
   50 F.3d 388 (7th Cir. 1995) .......................................................11, 16

*Campbell v. PricewaterhouseCoopers, LLP,*
   642 F.3d 820 (9th Cir. Cal. 2011) ....................................................19

*Canning v. NLRB,*
   2013 U.S. App. LEXIS 1659 (D.C. Cir. January 25, 2013) ....................31, 32

-iii-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO STAY OR COMPEL ARBITRATION
Case No. 12-CV-04964 RMW (HRL)

*Carter v. Countrywide Credit Ind. West, Inc.*,
   362 F.3d 294 (5th Cir. 2004) ...................................................................................31

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
   467 U.S. 837 (1984).................................................................................4, 32, 33

*Circuit City Stores v. Adams*,
   532 U.S. 105 (2001)...................................................................................26

*Cohen v. UBS Fin. Servs.*,
   2012 U.S. Dist. LEXIS 174700 (S.D.N.Y. Dec. 3, 2012) ....................................11

*CompuCredit Corp. v. Greenwood*,
   132 S. Ct. 665 (2012)...................................................................................26

*Coneff v. AT&T Corp.*,
   673 F.3d 1155 (9th Cir. 2012) ...........................................................3, 17, 22

*Cornell & Company v. Barber & Ross Company*,
   123 U.S. App. D.C. 378, 360 F.2d 512 (D.C. Cir.), affd. 242 F. Supp. 825 (D.D.C.) ...........11

*Costco Wholesale Corp. v. AU Optronics Corp.* (*In re TFT-LCD (Flat Panel) Antitrust Litig.*),
   2011 U.S. Dist. LEXIS 102958 (N.D. Cal. Sept. 9, 2011) ...................................9

*Creative Telcoms. v. Breeden*,
   120 F. Supp. 2d 1225 (D. Haw. 1999) ...................................................................12

*D.R. Horton, Inc. v. N.L.R.B.*,
   N.L.R.B. Case No. 12-CA-25764 ........................................................ passim

*Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*,
   304 F.3d 753 (7th Cir. 2002) ...........................................................................16

*Gentry v. Superior Court*,
   42 Cal. 4th 443, 64 Cal. Rptr. 3d 773 (2007) ...................................................24

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991)...................................................................25, 30, 31

*Gonsalves v. Infosys Techs., Ltd.*,
   2010 U.S. Dist. LEXIS 79683 (N.D. Cal. Aug. 5, 2010)...............................11, 12

*Green Tree Financial Corp. v. Randolph*,
   531 U.S. 79 (2000)...................................................................17, 18, 23

*Halim v. Great Gatsby's Auction Gallery, Inc.*,
   516 F.3d 557 (7th Cir. 2008) ...................................................................11

-iv-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO STAY OR COMPEL ARBITRATION
Case No. 12-CV-04964 RMW (HRL)

*Hamilton v. State Farm Fire & Car Co.,*
 270 F.3d 778 (9th Cir. 2001) ...................................................................13

*Hill v. Blind Indus. & Servs.,*
 179 F.3d 754 (9th Cir. Cal. 1999) .............................................................11

*Hill* v. *Ricoh Ams. Corp.,*
 603 F.3d 766 (l0th Cir. Kan. 2010) ..........................................................11

*Ho v. Ernst & Young, LLP,*
 2011 U.S. Dist. LEXIS 106658 (N.D. Cal. Sept. 20, 2011) .......................2

*Hoffman LaRoche v. Sperling,*
 493 U.S. 165 (1989) ...................................................................................30

*In re Am. Express Merchs. Litig.,*
 554 F.3d 300 (2d Cir. 2009)("*Amex I*") ........................................... passim

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
 2011 WL 1753784 (N.D. Cal. May 9, 2011) ..............................................12

*Irwin* v. *UBS Painewebber, Inc.,*
 324 F. Supp. 2d 1103 (C.D. Cal. 2004) .....................................................12

*Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchs. Litig.),*
 667 F.3d 204 (2d Cir. 2012)("*Amex III*") ...............................................3, 17

*ITC Ltd. v. Punchgini, Inc.,*
 482 F.3d 135 (2d Cir. 2007)........................................................................32

*James v. McDonald's Corp.,*
 417 F.3d 672 (7th Cir. 2005) ......................................................................23

*Johnson v. West Suburban Bank,*
 225 F.3d (3d Cir. 2000)...............................................................................31

*Kaiser Steel Corp. v. Mullins,*
 455 U.S. 72 (1982).................................................................................4, 34

*Kilgore v. KeyBank Nat'l Ass'n,*
 697 F.3d 1191 (9th Cir. 2012) ....................................................................22

*Kilgore v. KeyBank, Nat'l Ass'n,*
 673 F.3d 947 (9th Cir. 2012) ......................................................................22

*Kristian v. Comcast Corp.,*
 446 F.3d 25 (1st Cir. 2006)......................................................................9, 23

-v-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO STAY OR COMPEL ARBITRATION
Case No. 12-CV-04964 RMW (HRL)

*La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   2010 U.S. App. LEXIS 23928 (2d Cir. Nov. 22, 2010)..........................................................16

*Landon v. Ernst & Young LLP and Ernst & Young U.S. LLP*,
   Case No. C-08-02853......................................................................................................6, 8, 10

*LaVoice v. UBS Fin. Service*,
   2012 U.S. Dist. LEXIS 5277 (S.D.N.Y June 13, 2012)...........................................................3

*McBurnie v. City of Prescott*,
   210 U.S. Dist. LEXIS, 135738 (D. Ariz 2010)........................................................................9

*Mitsubishi Motors Corp. v. Solar/Chrysler Plymouth, Inc.*,
   473 U.S. 614 (1985).......................................................................................................8, 9, 25

*N.L.R.B. v. City Disposal Systems, Inc.*,
   465 U.S. 822 (1984)...........................................................................................................4, 33

*Nat'l Supermarkets Assoc. v. Am. Express Travel Related Servs. Co. (In re Am. Express
   Merchants' Litig.)*,
   634 F.3d 187, 2011 U.S. App. LEXIS 4507 (2d Cir., 2011)("*Amex II*") ..........................3, 23

*National Fund for Cancer Research v. A.G. Edwards & Sons*,
   261 U.S. App. D.C. 284, 821 F.2d 772 (D.C. Cir. 1987) ......................................................10

*Nev. Gold & Casinos, Inc. v. Am. Heritage, Inc.*,
   110 P.3d 481 (Nev. 2005) ......................................................................................................10

*Nicholas v. KBR, Inc.*,
   565 F.3d 904 (5th Cir. 2009) .................................................................................................11

*Owen v. Bristol Care, Inc.*,
   2013 U.S. App. LEXIS 356 (8th Cir. Mo. Jan. 7, 2013) ..................................................33, 34

*Pippins v. KPMG LLP*,
   2012 U.S. Dist. LEXIS 173918 (S.D.N.Y. Nov. 29, 2012) ...................................................20

*Radzanower v. Touche Ross & Co.*,
   426 U.S. 148 (1976)................................................................................................................34

*Raniere v. Citigroup Inc.*,
   827 F. Supp 294 (S.D.N.Y. Nov. 22, 2011)...........................................................................25

*Raniere v. Citigroup Inc.*,
   827 F. Supp. 2d 294 (S.D. N.Y. 2011)...............................................................3, 25, 28, 29

*Richards v. Ernst & Young LLP*,
   Case No. C-08-04988........................................................................................................6, 8, 10

*S & H Contractors* v. *AJ Taft Coal Co.*,
   906 F.2d 1507,1514 (1990)....................................................................................11

*Shearson/Am. Express, Inc. v. McMahon*,
   482 U.S. 220, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987).........................................26

*Stutler v. T.K. Constructors Inc.*,
   448 F.3d 343 (6th Cir. 2006) ..................................................................................22

*Sutherland v. Ernst & Young, LLP*,
   10 Civ. 3332 (KMW)(S.D.N.Y.) ...............................................................................8

*Sutherland v. Ernst & Young LLP*,
   768 F. Supp. 2d 547 (S.D.N.Y. 2011) ("*Sutherland I*")................................. passim

*Sutherland v. Ernst & Young LLP*,
   847 F. Supp. 2d 528 (S.D.N.Y. 2012) ("*Sutherland II*").......................... passim

*Sutherland v. Ernst & Young LLP*,
   856 F. Supp 2d. 638 (S.D.N.Y. 2012) ("*Sutherland III*").....................................18

*Uphoff v. Elegant Bath Ltd.*,
   176 F.3d 399 (7th Cir. 1999) ..................................................................................21

*Van Ness Townhouses v. Mar Indus. Corp.*,
   862 F.2d 754 (9th Cir. 1989) .................................................................10, 12, 16

*Welborn Clinic v. MedQuist, Inc.*,
   301 F.3d 634 (7th Cir. 2002) ..................................................................................16

**STATUTES AND RULES**

9 U.S.C. § 2............................................................................................... passim

9 U.S.C. § 256......................................................................................................28

28 U.S.C. § 1404(a) ...............................................................................8, 11, 12, 15

28 U.S.C. § 1821 (b)............................................................................................21

29 U.S.C. § 102......................................................................................................32

29 U.S.C. § 103......................................................................................................32

29 U.S.C. § 104(d) ...............................................................................................29

29 U.S.C. § 115.................................................................................................29, 34

29 U.S.C. §157......................................................................................................30

-vii-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO STAY OR COMPEL ARBITRATION
Case No. 12-CV-04964 RMW (HRL)

29 U.S.C.§ 216(b) ...............................................................................................9, 26, 27, 30

Age Discrimination Employment Act of 1967 ("ADEA")..........................................................30

California Labor Code Section 1194(a) ..................................................................................9

National Labor Relations Act of 1935 (the "NLRA") ......................................................... passim

Norris-LaGuardia Act of 1932...............................................................................................29

**OTHER AUTHORITIES**

*Lopez, Collective Confusion: FLSA Collective Actions Rule 23 Class Actions and the Rules Enabling Act*, 69 Hastings Law Journal 215 ......................................................27, 28

Second Circuit's *Amex Trilogy* ............................................................................................18

Sloan, 4 *American Landmark Legislation* (1984), Congressional Debates (House), June 14, 1938.......................................................................................................................27

-viii-

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO STAY OR COMPEL ARBITRATION
Case No. 12-CV-04964 RMW (HRL)

1   MAX FOLKENFLIK
    (Application for Admission *Pro Hac Vice* Pending)
2   **FOLKENFLIK & MCGERITY LLP**
    1500 Broadway, 21St Floor
3   New York, NY 10036
    Telephone:  (212)757-0400
4   Facsimile:  (212)757-2010

5   H. TIM HOFFMAN, (State Bar No. 49141)
    ROSS L. LIBENSON, (State Bar No. 181912)
6   **HOFFMAN LIBENSON SAUNDERS AND BARBA LLP**
    180 Grand Avenue, Suite 1550
7   Oakland, CA  94612
    Telephone:  (510) 763-5700
8   Facsimile:   (510) 835-1311

9   *Attorneys for Plaintiffs*

10                  UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12   STEPHEN MORRIS, and KELLY     )   Case No. 12-CV-04964 RMW (HRL)
     McDANIEL, on behalf of themselves )   [Assigned for all purposes to Judge
13   and all others similarly situated,  )   Ronald M. Whyte]
                                    )
14            Plaintiffs,           )   **PLAINTIFFS' MEMORANDUM**
                                    )   **OF LAW IN OPPOSITION TO**
15      v.                          )   **DEFENDANTS' MOTION TO**
                                    )   **STAY OR COMPEL**
16   ERNST & YOUNG, LLP, and       )   **ARBITRATION**
     ERNST & YOUNG U.S., LLP,      )
17                                 )
              Defendants.          )   Date:    February 15, 2013
18                                 )   Time:   9:00 a.m.
                                   )   Dept.:  6
19                                 )
                                   )

20        Plaintiffs, by their attorneys, Folkenflik & McGerity LLP and Hoffman Libenson

21   Saunders and Barba LLP & Lazear submit this Memorandum of Law in Opposition to

22   Defendants' Motion to Stay or Compel Arbitration.

23              **PRELIMINARY STATEMENT AND**
                **SUMMARY OF THE ARGUMENT**
24

25        Defendants Ernst & Young LLP and Ernst & Young U.S., LLP ("Defendants" or "Ernst

26   & Young") move to compel arbitration of Plaintiffs' claims for unpaid overtime under the Fair

27   Labor Standards Act ("FLSA") and under the California Labor Code (the "Labor Code") by

28   simply referring to the existence of an arbitration agreement.  Defendants ignore the extensive

and significant judicial history of interpreting this specific arbitration agreement, and finding it unenforceable in circumstances which, while different in some respects, are sufficiently similar to control the result here.  Defendants ignore the long history of their invocation of the courts and extensive litigation of these claims in this case and related cases.

First, the agreement which Defendants seek to enforce has been found to be unenforceable because it does not provide for mandatory shifting of costs and expenses, or in others allow for arbitrator discretion, where the relevant statutes mandatorily require that costs and expenses be shifted to the employer.  See, *Sutherland v. Ernst & Young LLP*, 768 F. Supp. 2d 547, 550 (S.D.N.Y. 2011) ("*Sutherland I*"); *Sutherland v. Ernst & Young LLP*, 847 F. Supp. 2d 528, 532, fn 1 (S.D.N.Y. 2012) ("*Sutherland II*");  Although in *Sutherland* Defendants sought to evade that defect by "stipulating" to changes in the agreement *post hoc*, there has been no "stipulation" changing the terms of the EY Arbitration Agreement in this case, and in all events the District Court in the *Southerland* found that the "stipulations" were insufficient.  See, *Sutherland I* at 552, fn 6, *Sutherland II* at 533.

Second, this Court found that in *Ho v. Ernst & Young, LLP*, a putative class action in which both plaintiffs were putative class members and in which Plaintiff Morris was a participant, that Ernst & Young had intentionally waived its right to arbitration.  *See, Ho v. Ernst & Young, LLP,* 2011 U.S. Dist. LEXIS 106658 (N.D. Cal. Sept. 20, 2011) (the *Ho* Consolidated Actions), *petition for leave to file a motion for reconsideration denied*,  Ho Docket No. 302. In that case Ernst & Young received the benefits of litigation, including extensive litigation and discovery directed at the class in general and Plaintiff Morris, in particular which would be useful in individual arbitration against these Plaintiffs and should support a finding of waiver here.  Whether such a waiver applies to all putative class members, or, if not, whether it at least applies to Morris, who specifically identified his personal dispute with Ernst & Young and was personally subjected to discovery, is an issue that appears to be one of first impression.

1    We respectfully submit that to hold that a waiver in a putative class action does not

2    apply to all putative class members would be to eviscerate the waiver doctrine in class action

3    cases and to allow a defendant to abuse the judicial system through gamesmanship.  In all events,

4    arbitration of the claims in this action was waived by Ernst & Young's conduct in this action.

5    Third, the cost of proceeding in individual arbitration proceedings under the arbitration

6    agreement at issue here have been judicially found to be so high that individual arbitration would

7    not allow the participants to "effectively vindicate [their] statutory rights."  See, *Sutherland I* at

8    549, *Sutherland II* at 540.  Where arbitration must be conducted on an individual basis, but class

9    proceedings in Court would allow those statutory rights to be vindicated,  arbitration may not be

10   compelled.  *See, also*, *Italian Colors Rest. v. Am. Express Travel Related Servs. Co. (In re Am.*

11   *Express Merchs. Litig.*), 667 F.3d 204 (2d Cir. 2012)("*Amex III*"), *Am. Express Co. v. Italian*

12   *Colors Rest.*, 133 S. Ct. 194 (U.S. 2012); *Nat'l Supermarkets Assoc. v. Am. Express Travel*

13   *Related Servs. Co. (In re Am. Express Merchants' Litig.)*, 634 F.3d 187, 2011 U.S. App. LEXIS

14   4507 (2d Cir., 2011)("*Amex II*"), and *In re Am. Express Merchs. Litig.*, 554 F.3d 300 (2d Cir.

15   2009)("*Amex I*")(collectively hereinafter the "*Amex Trilogy*").  The Ninth Circuit apparently

16   approved and applied the effective vindication of statutory rights analysis in *Coneff v. AT&T*

17   *Corp.*, 673 F.3d 1155, 1159 (9th Cir. 2012) finding Plaintiff had not shown that he could not

18   effectively vindicate his statutory rights in arbitration).

19   Fourth, the class and collective action waiver irreconcilably conflicts with the express

20   Congressional grant of a statutory right to collective action in the FLSA.  *See*, *Raniere v.*

21   *Citigroup Inc.*, 827 F. Supp. 2d 294, 310-14 (S.D. N.Y. 2011), but *see*, *LaVoice v. UBS Fin.*

22   *Service*, 2012 U.S. Dist. LEXIS 5277 at 20 (S.D.N.Y June 13, 2012) (declining to follow

23   *Raniere* without discussion).

24   Fifth, the National Labor Relations Board held in *D.R. Horton, Inc. v. N.L.R.B.*, NLRB

25   Case No. 12-CA-25764, 357 NLRB No. 184, (Jan. 3, 2012) that a class/collective action waiver

26   imposed in an agreement required as a condition of employment is in violation of Sections 7 and

27   8 of the National Labor Relations Act and in violation of the *Norris LaGuardia Act*.  This Court

28

is required to give substantial deference to the NLRB's finding of unlawfulness under the NLRA. *Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 844 (1984)("considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer"); *N.L.R.B. v. City Disposal Systems, Inc.*, 465 U.S. 822, 830 (1984)("we have not hesitated to defer to the Board's interpretation of the [NLRA]"). The Board's conclusion is correct and this Court can and should reach the same result even without deference to the Board. Unlawfulness under Section 7 of the NLRA is a basis for denial of relief on public policy grounds as incorporated into Section 2 of the FAA. [1] *See*, *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982).

## STATEMENT OF ADDITIONAL FACTS

### A.    The EY Arbitration Agreement

The arbitration agreements Ernst & Young impose upon each of Plaintiffs as a condition of their employment differ, in minor respects but essentially they are the same in all relevant respects. The program is titled "Ernst &Young's Common Ground Dispute Resolution Program," ("EY Arbitration Agreement"). *See*, Exhibit C to the Declaration of Daria Hodapp submitted in support of Defendants' motion. It bars all Court proceedings, Hodapp. Dec., Ex. C, II.B., at 15 as well as proceeding in arbitration as a class or collective action. *Id.*

The Dispute Resolution process mandated by the EY Arbitration Agreement is lengthy, complex and multi-phased. Phase I, requires mediation at which "each party shall be responsible for the party's own attorney's fees and related expenses." Exhibit C to Dec. of D. Hodapp, page 17. Phase II is arbitration, either before the International Institution for Conflict Prevention and Resolution ("IICPR"), AAA or JAMS as the employee chooses. *Id.*

---

[1]   Section 2 of the FAA excludes from enforcement arbitration agreements voidable "*upon such grounds as exist at law or in equity for the revocation of any contract.*"

9 U.S.C. § 2. (*emphasis added*).

The provider chosen must agree to comply by the terms of the EY Arbitration Agreement. *Id*. If there is any conflict between the provider's arbitration rules and terms provided by the E&Y Arbitration Agreement, the EY Arbitration Agreement "will take precedence." *Id*. Further, the arbitrator must also be bound by the EY Arbitration Agreement. Exhibit C to D. Hodapp Dec., page 18.

Discovery in the arbitration is atypically expansive and expensive. *See*, Folkenflik Dec. ¶¶ 14-15. However, unlike the FLSA which provides mandatory fee shifting to a prevailing employee, the general rule under the EY Arbitration Agreement in the sharing of costs is "equally" to the extent "permitted by law and the Arbitration Rules".[2] Exhibit C to Dec. of D. Hopp, page 20. There are significant limits on what fees and costs can be staffed, both under the arbitration program and by law.

Finally, the EY Arbitration Agreement provides confidentiality of "all aspects of the proceeding." As a result, an employee arbitrating a second case will not be able to have the advantage of discovery in an earlier arbitration. Folkenflik Dec. ¶ 21.

**B.    The Expense of Proceeding Individually
in Arbitration to Recover Plaintiff's Statutorily
Entitled Overtime Payments**

Morris' overtime claim is approximately $ 17,642.97 and McDaniel's overtime claim is approximately $28,805.19, and each of them have some additional potential damages under California law, the costs of complying with the EY Arbitration Agreement as means of settling each of Plaintiffs' separate disputes would be in excess of $160,000 in attorney's fees, and

---

[2]    Section IV. 3. gives the arbitrator the discretion under to make a different sharing arrangement. Section IV. 3. provides:

> 3. Party attorney fees and other expenses. Each party will be responsible for the party's own attorney's fees and related expenses, but the Arbitrator will have authority to provide for reimbursement of the Employee's attorney's fees, in whole or part, in accordance with applicable law or in the interest of justice.

EY Arbitration Agreement *See* IV. 3. Exhibit C to Hodapp Dec., page 20.

$33,500 in expert witness fees, and well over $6,000 of additional costs and potentially in addition to one-half of the arbitrator's estimated $24,000 fee.  The aggregate of attorney's fees and expenses is nearly five times McDaniel's loss and nearly seven times Morris' loss. Folkenflik Dec. ¶¶ 44-45 and Exhibit D.

Plaintiffs cannot afford to and would not proceed to vindicate their rights if they had to bear the costs of any attorney's fees, even if there were a chance of reimbursement of those fees. Plaintiffs cannot afford to, and would not, incur the costs of mediation and non-reimbursable expert witness fees which alone substantially exceed any possible recovery.  Folkenflik Dec. ¶¶ 33, 40.  Morris Dec. ¶¶ 8-11.

Counsel for the Plaintiff would not represent Plaintiffs based on the fee arrangement set forth in the EY Arbitration Agreement, and are unaware of an attorney who would accept such an engagement and does not believe that one can be found to do so.  Folkenflik Dec. ¶ 43.

## C.   The Extensive Litigation by EY Prior to the Motion

This action does not stand in isolation.  The dispute between Plaintiffs and Ernst & Young arose long ago in earlier actions.  In September 2005 David Ho, a former employee in Ernst & Young's tax group, commenced a putative class action captioned *Ho v. Ernst & Young LLP*, Case No. C-05-04867, raising the same claims under the California Labor Code as are raised by Plaintiffs here.  In 2007, Sarah Fernandez ("Fernandez"), who worked in Ernst & Young's Assurance group was added as a Plaintiff.  [*Ho* Docket No. 86.], and that case was consolidated with *Richards v. Ernst & Young LLP*, Case No. 08-04988, in which was first served to federal court from state court,  and *Landon v. Ernst & Young LLP and Ernst & Young U.S. LLP*, Case No. C-08-02853 (collectively hereafter the "*Ho* Consolidated Actions"). [*Ho* Docket No. 188].

Following consolidation, extensive litigation took place including numerous depositions of Plaintiffs and third party witnesses, extensive document production at responses and interrogatories and production of witness statements [*Ho* Docket No. 291-1] these are actions are largely unavailable in arbitration.  There was extensive motion practice including three separate motions for defendants for summary judgment which were granted in whole or in part.  *See, Ho* Docket Nos. 40, 43, 51, 77, 111, 200, 201].   The class certification motion included 52 declarations and 74 exhibits, essentially laying bare the Plaintiffs in this case would submit in any individual action.  [*Ho* Docket Nos. 237, 238, 240-260, 267-284].

Plaintiffs were putative class members in the consolidated actions.  Plaintiff Morris was deposed extensively, and his deposition played a critical part in Ernst & Young's arguments against class certification.  Folkenflik Dec. ¶ 51.

Since 2002, Ernst & Young had imposed mandatory individual arbitration as a condition of employment, upon all members of the putative classes in the *Ho Consolidated Action*.  Dec. of Ingrid McGuire, ¶6.  However, until mid-2011 Ernst & Young did not raise, or even suggest, that it desired to have any of the disputes which were the subject of the *Ho Consolidated Action* arbitrated, rather than litigated.

On June 24, 2011, Ernst & Young filed a motion to compel arbitration.  That motion was denied, *Ho* Docket No. 302, and re-argument was denied.  *Ho* Docket No. 302.  Folkenflik Dec. ¶ 55-56.  Ernst & Young argued that this exceedingly late first time assertion of its alleged arbitration right was justified by a change in the law resulting from the Supreme Court decision in *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740 (2011).  Ho Docket No. 288.

On December 8, 2012, Plaintiff Morris moved to intervene as a Plaintiff in the *Ho* action. *Ho* Docket No. 311.  That motion was denied.  *Ho* Docket No. 322.  Morris then commenced this action in the Southern District of New York.  Plaintiff McDaniel subsequently joined in this

action as an additional plaintiff.  Ernst & Young filed an answer and asserted the right to compel arbitration, but never moved to stay or compel arbitration.  Instead, Ernst & Young proceeded in the action with Initial Disclosures, filed a motion under 28 U.S.C. § 1404(a) which was granted.  The transferred case was initially assigned to Magistrate Judge Maria-Elena James.  On May 8, 2012, Ernst & Young filed a motion to relate this action to *Ho/Fernandez*, *Landon* and *Richards* and only after this case was assigned to Judge Whyte did Ernst & Young finally move January 11, 2013 to compel arbitration.  Folkenflik Dec. ¶ 58.

In the spring of 2010, a similar action had been filed against Ernst & Young based on New York law and the Fair Labor Standards Act ("FLSA"), *Sutherland v. Ernst & Young, LLP*, 10 Civ. 3332 (KMW)(S.D.N.Y.).  Folkenflik Dec ¶ 59.

After preliminary litigation Ernst & Young finally moved on August 20, 2010, to compel arbitration of the *Sutherland* action which was denied.  *See*, *Sutherland I. R*e-argument was also denied.  *See*, *Sutherland* II.  *See also*, Folkenflik Dec ¶ 59.

## ARGUMENT

## POINT I

### THE EY ARBITRATION AGREEMENT IS UNENFORCEABLE SINCE, AS FOUND AGAINST EY IN SUTHERLAND, THE AGREEMENT DOES NOT PROVIDE FOR MANDATORY FEE SHIFTING AS REQUIRED BY FEDERAL AND STATE LAW

The law is clear that arbitration of statutory rights is premised upon the guiding principal that, "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by statute; it only submits their resolution in an arbitral rather than a traditional forum." *14 Penn Plaza*, *LLC v. Pyett*, 556 U.S. 247, 265-66, (2009), *quoting Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 29 (1991), and *Mitsubishi Motors Corp. v. Solar/Chrysler Plymouth*, *Inc.*, 473 U.S. 614, 628 (1985).

As a result, an arbitration agreement which limits a Plaintiff's right to a statutory remedy is not enforceable.  *See, e.g.*, *Mitsubishi Motors Corp., supra.; Mitsubishi Motors*, 473 U.S. at 637 n.19 (stating that if a contractual agreement had operated "as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy"); *Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) ("On the basis of these precedents, we conclude that the award of treble damages under the federal antitrust statutes cannot be waived."); *Costco Wholesale Corp. v. AU Optronics Corp.* (*In re TFT-LCD (Flat Panel) Antitrust Litig.*), 2011 U.S. Dist. LEXIS 102958 (N.D. Cal. Sept. 9, 2011) (same).

One of the key remedies under the FLSA is the mandatory shifting of fees to the employee who successfully sues for violation of the act.  *See*, 29 U.S.C.§ 216(b); *McBurnie v. City of Prescott,* 210 U.S. Dist. LEXIS, 135738 at 6 (D. Ariz 2010) (award of attorneys' fees "is mandatory").  The same is true under the California Labor Code.  *See*, California Labor Code Section 1194(a).

However, the EY Arbitration Agreement does not provide for mandatory fee shifting and instead appears to provide that the claimant may have to share the expenses of the arbitration. Ernst & Young argued in *Sutherland* that the EY Arbitration Agreement complies with the mandatory fee shifting remedy provided by the statute.  That argument was rejected by Judge Wood in *Sutherland II* in a holding which clearly delineates the terms of the EY Arbitration Agreement relating to fee shifting.

> Ernst & Young states that "[t]he parties' agreement explicitly mandates a fee award 'in accordance with applicable law,' which requires that a prevailing plaintiff be awarded her fees." (Def.'s Reply at 2.)
>
> The plain text of the Agreement, however, does not mandate or require anything — it states only that "the Arbitrator will have authority" to reimburse fees if applicable law and the interest of justice would also permit reimbursement of fees. The Agreement also prohibits the reimbursement of costs or expenses. It states that each party is "responsible for the party's own attorney's fees and related expenses" but the arbitrator "will have authority to

-9-

provide for reimbursement of the Employee's attorneys fees." (Reece Dec. Ex. D.) By explicitly describing expenses as each party's own responsibility and then saying nothing about the possible reimbursement of those expenses, the Agreement appears to prevent shifting of costs or expenses on behalf of a prevailing plaintiff.

The Agreement also provides that "[t]he parties' intent is for Arbitrator fees and other costs of the arbitration, other than filing and administrative fees, to be shared equally to the extent permitted by law." Sutherland understandably believes that this provision will require her to pay a significant amount of the costs of the arbitration.  (Dec. of Stephanie Sutherland, dated September 2, 2010 ("Sutherland Dec.") ¶ 2.)

*Sutherland v. Ernst & Young LLP*, 847 F. Supp. 2d 528, 532 (S.D.N.Y. 2012).

This Court has the discretion to apply the doctrine of collateral estoppel to that finding on the meaning of the EY Arbitration Agreement.  *See, Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003).  But even were the Court to conclude that it should not apply collateral estoppel, Judge Wood's construction of the language of the agreement is clearly correct.  The language of the agreement cited by Judge Wood makes clear the intention not to allow the shifting of costs and expenses, and also to make the shifting of attorneys' fees permissive and not mandatory as the relevant statutes require.

For this reason alone the arbitration agreement is unenforceable.

## POINT II

### EY CANNOT ENFORCE ARBITRATION UNDER THE EY ARBITRATION AGREEMENT BECAUSE THAT HAS BEEN WAIVED BY LITIGATION CONDUCT IN THIS CASE, *HO*, *RICHARDS* AND *LANDON*

As a general rule, "silence and much-delayed demand for arbitration indicates a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims." *National Fund for Cancer Research v. A.G. Edwards & Sons,* 261 U.S. App. D.C. 284, 821 F.2d 772, 777 (D.C. Cir. 1987) (waiver found).  In the Ninth Circuit a party will be found to have waived their right to arbitrate by actively litigating their claim in state or federal court. *See*, *Van Ness Townhouses v. Mar Indus. Corp*., 862 F.2d 754, 759 (9th Cir. 1989); *Nev. Gold & Casinos, Inc. v. Am. Heritage, Inc.*, 110 P.3d 481, 485 (Nev. 2005).

In some circuits, and under New York law, a clear intent to invoke the judicial process is sufficient to prove waiver.  Accordingly, several Circuits have found that simply the act of filing suit without asserting an arbitration clause can constitute sufficient invocation of the judicial process, to waive the right to arbitration.  *Nicholas v. KBR, Inc.,* 565 F.3d 904, 908 (5th Cir. 2009); *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc*., 50 F.3d 388, 390 (7th Cir. 1995). [3] Removing a case to federal court can be sufficient to find waiver.  *Compare Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc*., 50 F.3d 388, 390 (7th Cir. 1995) with *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008) (removal followed by prompt assertion of arbitration right not sufficient.).  The Ninth Circuit has not yet applied that rule to arbitration but it applied that concept in a context other than arbitration.  *Hill v. Blind Indus. & Servs.*, 179 F.3d 754, 759 (9th Cir. Cal. 1999) (removal is waiver of Sovereign Immunity).[4]  It is yet unsettled whether the invocation of the judicial process along is sufficient in the Ninth Circuit to waive arbitration.

A failure to assert a right to arbitration combined with prejudice to the opposing party requires the denial of a motion to compel arbitration.  Some courts have found prejudice simply

---

[3]   *Hill* v. *Ricoh Ams. Corp.,* 603 F.3d 766, 773 (l0th Cir. Kan. 2010) (after seeking motion to dismiss and participating in numerous hearings, conferences, other motions and depositions, "arbitration would permit a party to manipulate the judicial process-for example, by allowing it to take a mulligan if the court proceeding is progressing unfavorably"); *S & H Contractors* v. *AJ Taft Coal Co.,* 906 F.2d 1507,1514 (1990) (right to arbitration waived after filing motions to dismiss because "[A] party that substantially invokes the litigation machinery prior to demanding arbitration may waive its right to arbitrate."); *Cornell & Company v. Barber & Ross Company,* 123 U.S. App. D.C. 378, 360 F.2d 512, 513 (D.C. Cir.), affd. 242 F. Supp. 825 (D.D.C.)(right to arbitration waived because "litigation machinery substantially invoked" by the moving party), *see also, De Sapio vs. Kohlmeyer*, 35 N.Y.2d 402, 405 (1974) (participation in the lawsuit manifests an affirmative acceptance of the judicial forum, with whatever advantages it may offer in the particular case, his actions are then inconsistent with a later claim that only the arbitral forum is satisfactory.).  *Id*. at 405 (N.Y. 1974).

[4]   The cases cited by Defendants at page 4, n.1 of their Memorandum are clearly distinguishable.  *Gonsalves v. Infosys Techs., Ltd.*, 2010 U.S. Dist. LEXIS 79683 (N.D. Cal. Aug. 5, 2010), was applying California law, and not the FLSA or New York law which govern this action, to determine whether waiver had occurred.  It found that it had, on grounds other than the motion for remand, and denied the motion to compel.  The motion to remand unlike a Section 1404(a) is addressed to jurisdiction and not venue.  Similarly, in *Cohen v. UBS Fin. Servs*., 2012 U.S. Dist. LEXIS 174700 (S.D.N.Y. Dec. 3, 2012), the defendant had transferred the case from California, but the Court found there, unlike the showing here, that there was "no evidence that Defendants have engaged in the type of dilatory tactics that would warrant a finding of waiver." *Id*. at 19.  Moreover, there was no evidence of forum shopping discussed by the court in that case forum shopping is evident here.

where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate.  *Creative Telcoms. v. Breeden*, 120 F. Supp. 2d 1225, 1233 (D. Haw. 1999) (collecting cases).

In the Ninth Circuit prejudice exists where there were "pleadings, motions, and approving a pre-trial conference order -- and [failure to] move to compel arbitration until more than two years after the [plaintiffs] brought the action."  *Van Ness Townhouses v. Mar Industries Corp*., 862 F.2d 754, 759 (9th Cir. 1988).

The cases in this Circuit have uniformly found motions addressed to the merits constituted prejudice and waived any right to arbitration.  *In re TFT-LCD (Flat Panel) Antitrust Litig.,* 2011 WL 1753784 (N.D. Cal. May 9, 2011) (citing *Van Ness); see, also, Irwin* v. *UBS Painewebber, Inc.,* 324 F. Supp. 2d 1103, 1110 (C.D. Cal. 2004) ("To constitute a waiver, the arbitrable issues must have been litigated on the merits"); *Gonsalves* v. *Infosys Technologies, Ltd.,* 2010 U.S. Dist. LEXIS 79683 (N.D. Cal., Aug. 5, 2010) (party that engaged in "judicial litigation of the merits of arbitrable issues" waived right to compel arbitration).

Where motions for summary judgment have not been made, *Van Ness* requires applying a sliding scale.   Limited discovery, litigation and delay is not prejudice; extensive discovery litigation and delay is prejudice.

If viewed solely from the commencement of this action, Plaintiffs believe that Defendants have done enough to waive their rights to compel arbitration.  Defendants failed to initiate mediation or arbitration under its agreement once this action was filed and instead made a Section 1404(a) motion to transfer the case "for the convenience of the witnesses" who would be called on *in the litigation of the action* in Court.

As Ernst & Young stated in its transfer motion:

> Ernst & Young hereby moves to transfer this action to the Northern District of California, which has adjudicated the same claims brought on behalf of the same employees for more than six years. Transfer is warranted when the plaintiff could have

-12-

brought the action in the transferee district, and transfer would promote the convenience of the witnesses and parties and the interests of justice.

…

[T]ransfer would promote convenience and the interests of justice. As the California actions illustrate, nearly all of the likely witnesses—including Morris himself, the Ernst & Young witnesses familiar with his job duties, and the employees he purports to represent—are California residents. A California forum, therefore, would be far more convenient for the witnesses and parties alike. Further, all of Morris's claims require the application of California law, with which the Northern District of California is more familiar. Moreover, transfer would enable the court that has presided over the same claims for years—deciding many substantive motions in the process—to adjudicate Morris's duplicative claims as well.

*See*, Memorandum of Law in Support of Ernst & Young's Motion to Transfer Venue, Folkenflik Dec. Ex. G at 1.

However, if Defendants had intended to proceed with arbitration[5], the location of the Court procedures, the experience of the court with the case, and even the location of most witnesses would be irrelevant.  Depositions are limited by the arbitration agreement to three for each side.  Ernst & Young succeeded on its motion because of the cited need for consistency in *court proceedings*, the fact that Ernst & Young alerted the Southern District Court's to its intention to move for arbitration, may have minimized the chance of finding Defendants judicially stopped from seeking arbitration.  *See*, *Hamilton v. State Farm Fire & Car Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  However, the delay and blatant form shopping with respect to the timing of this motion, does have implications for the integrity of the judicial obligations and can and should be considered on the issue of waiver.

Similarly, once transferred, the case was assigned to Chief Magistrate Judge James.  Yet rather than file its arbitration motion, Defendants successfully sought to have the case marked "related" and assigned to this Court.

---

[5]   Ernst & Young's footnote to their memorandum of law sought to preserve its right to later move to compel arbitration after transfer, but this attempt to "have its cake and eat it too" does not change the fact that the transfer motion was irreconcilable with Ernst & Young's later attempt to compel arbitration.

Those actions were entirely unnecessary to Defendants' assertions of its arbitration rights, and resulted in delays and expenses solely relevant to litigation in Court.  That is a sufficient "invocation of the judicial process" and also unnecessary prejudice and expense to waive arbitration under precedent in other circuits.  Even should this court not embrace that standard when viewing this case in isolation, the activities in this action, this action must be taken together with Defendants' extensive delay and litigation in the *Ho Consolidated Actions*.  Twelve depositions of Plaintiffs, including, in particular, Plaintiff Morris, three separate motions for summary judgments, motion practices supported by fifty-two declarations and 74 exhibits, all gave Defendants enormous insight into Plaintiffs' strategies in this case, insight they could not have obtained in the same extent if they had arbitrated instead of litigated the *Ho Consolidated Actions*.

We have found no case that expressly discusses whether a waiver of arbitration in a class action amounts to waiver of arbitration as to all class members.  Certainly were a class certified, a finding of waiver would be necessary or else a defendant could always litigate against a class only to assert arbitration against each individual class member once a class is certified.  That result would be playing the system and using the right to waive or proceed in arbitration as both a sword and a shield.  On the other hand, extending such a waiver to all putative class members might be inappropriate when certification of a class is denied on the merits, but no such denial was issued in the *Ho Consolidated Action*.  This action is effectively an extension of the *Ho Consolidated Action.*  If anything, the granting of certification of the *Richards* tax sub-class suggests that certification of an audit class would also be appropriate.

This action is only brought separately because the Court exercised its discretion to deny Plaintiffs' motion to amend in *Ho* and to add Morris as a plaintiff.  That decision should not

affect Mr. Morris' substantive right to litigate as part of a class where Ernst & Young was found to have waived its arbitration right in the prior case.

Most importantly of all, Defendants knew they had a dispute with Mr. Morris concerning his classification as an exempt employee since early 2008. As when Ernst & Young said in its Section 1404(a) motion, "Morris has assisted his lawyers in prosecuting these claims in several lawsuits in the Northern District of California." After the plaintiffs have failed to obtain certification of an Assurance class, Morris attempted to intervene in one of the California cases for the explicit purpose of re-litigating the court's class certification decision. The court ruled that Morris could not join the six-year-old lawsuit, so he filed this action instead. Ernst & Young's memorandum in support of Ernst & Young's motion to transfer venue, Exhibit __ to Folkenflik Dec. at 1.

Under the EY Arbitration Agreement, both parties have the obligation to bring the dispute to mediation once a dispute arises. EY Arbitration Agreement Sec. IV A., Exhibit C to Hodapp Dec. at p. 17. Ernst & Young is not entitled to simply sit back and await the commencement of an action in Court before its duties under the agreement are triggered. The EY Arbitration Agreement contemplates that no such suit will be initiated. *Id.* Sec. II B.1., Exhibit C to Hodapp Dec., p. 15. (Neither the firm nor an employee will be able to sue in court …) The agreement provides that if a suit is filed, the other pay "may chose directly to Phase II or to seek an order requiring the party to file the law suit to satisfy the requirements of the program. *Id.*, Sec. IV. B. Exhibit C to Hodapp Dec. at p. 17.

EY's litigation *with* Stephen Morris in the *Ho Consolidated Action* concerning its dispute with Stephen Morris is more than a sufficient basis to find waiver of its "right" to arbitration.

There is great prejudice to this case from Ernst & Young's taking advantage of extensive pre-trial discovery in the *Ho Consolidated Actions* from Ernst & Young's non-parties *and parties*

far beyond what is available in arbitration.  Ernst & Young benefited from the early revelation of witnesses and counsel's legal theories.  There was a delay and expense, as well as its multiple motions, some successful, addressed to the merits.

If viewed from the commencement of the consolidated *Ho* action, therefore, or even if limited to the time when Stephen Morris appeared as a participant in the *Ho Consolidated Action*, EY's conduct is more than sufficiently found even under *Van Ness*.

Moreover, Ernst & Young clearly engaged in impermissible "forum shopping"  in this case, arguing before Judge Wood that the case should be transferred here for reasons of efficient litigation in Court, when in reality Defendants really wanted to have its arbitration motion delayed so that it could  avoid Judge Wood who already denied an arbitration motion.

It is unacceptable and impermissible for Ernst & Young, or any litigant, to "see how the case was going in federal district court before deciding whether it would be better off there or in arbitration."  *Cabinetree of Winscon v. Kraftmaid Cabinetry*, 50 F.3d 388, 390-91 (7th Cir. 1995); *accord*, *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2010 U.S. App. LEXIS 23928 (2d Cir. Nov. 22, 2010), *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 637 (7th Cir. 2002) ("[W]e do not want parties to forum shop, taking a case to the courts and then, if things go poorly there, abandoning their suit in favor of arbitration.")

This type of conduct apparently is part of a corporate strategy Ernst & Young has pursued in other cases.  *See*, *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002)(Ernst & Young participated in confirmation of bankruptcy plan then sought arbitration of claim). The Court of Appeals did not condone such conduct in *Cabinetree* or *Ernst & Young*.  This Court should not do so here.

1

2                                    **POINT III**

3                   **ARBITRATION UNDER THE EY ARBITRATION**
                    **AGREEMENT IS PROHIBITIVELY EXPENSIVE AND**
4                   **RENDERS IT IMPOSSIBLE FOR PLAINTIFFS TO**
                    **EFFECTIVELY VINDICATE THEIR STATUTORY**
5                   **RIGHTS AS FOUND IN *SUTHERLAND***

6          As the Supreme Court has recognized, "the existence of large arbitration costs could

7  preclude a litigant . . . from effectively vindicating [his or] her federal statutory rights in the

8  arbitral forum."  *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 90 (2000).  Under the

9  *Amex Trilogy*, and apparently approved by the Ninth Circuit in *Coneff v. AT&T Corp.,* 673 F.3d

10 1155 (9th Cir. 2012), an arbitration class action waiver might make individual arbitration cost

11 prohibitive, while class litigation could be cost effective.  In *Coneff*, the Ninth Circuit

12 distinguished cases where the Plaintiffs "have no effective means to vindicate their rights," and

13 where arbitration should not be compelled, from those where the Plaintiffs merely "have

14 *insufficient incentive* to [arbitrate]."  *Id*. at 1159 and n. 3. (emphasis added).  Finding the

15 Plaintiffs in that case fell into the unprotected second category, the Court enforced the arbitration

16 agreement.  Plaintiffs' problem here is not insufficient "incentive."  The facts in this case show

17 that arbitration could not provide these Plaintiffs with an effective means to vindicate their

18 statutory rights.    *Id*. at 1159 and n.3.

19         The showing of "prohibitive cost" must be through "individualized evidence" and that

20 the party opposing arbitration on the ground of "prohibitive expense" bears the burden of

21 showing "the likelihood of incurring such costs."  *Amex III*, 667 F.3d at 217 (quoting *Green*

22 *Tree*, 531 U.S. at 92,  *and Livingston v. Associates Fin., Inc*., 339 F.3d 553, 557 (7th Cir. 2003)).

23 Plaintiffs have made that "individualized showing" that prohibitive costs would be incurred in

24 arbitration.

25         Once Plaintiffs have made out their *prima facie* case on prohibitive costs, the burden

26 shifts to the Defendant to rebut that evidence.  *Attard v. City of New York*, 451 Fed. Appx. 21, 23

27 (2d Cir. 2011).  In *Sutherland*, Ernst & Young made no attempt to rebut that evidence.

28

*Sutherland I*, 768 F. Supp 2d at 551-52 (Plaintiff's evidence "uncontradicted").  The evidence here, based on the same cost estimates as in *Sutherland* and Defendants own records of Plaintiffs' overtime cannot be seriously challenged.

A.   **Plaintiffs' Proof of "Prohibitive Cost."**

The case-by-case approach mandated by *Randolph*, and by the *Amex Trilogy*, requires looking at the facts of each case individually to determine whether Plaintiff may "effectively vindicate" her statutory rights under arbitration. *Amex I*, 554 F.3d at 320 ("[W]e have found that plaintiffs have demonstrated the necessity of some class mechanism in order to bring their claims against Amex. This demonstration … depends upon a showing that the size of the recovery received by any individual plaintiff will be too small to justify the expenditure of bringing an individual action.")  As Judge Wood correctly noted in *Sutherland II*, the *Amex I* decision did not set a cost-to-recovery ratio below which claims are deemed "prosecutable." The Second Circuit's *Amex Trilogy* instead embraced a functional approach, which "depends upon a showing that the size of the recovery received by any individual plaintiff will be too small to justify the expenditure of bringing an individual action." *Amex I*, 554 F.3d at 320.

Plaintiff's proof in *Sutherland* and here includes the Declaration of Plaintiff's counsel based on extensive personal experience in arbitration.  It addresses with particularity each step in the highly detailed arbitration process and made separate estimates for hours of work required and the cost of each such step, and the costs and necessity for expert fees.  *See*, Folkenflik Dec.

The District Court's finding in *Sutherland* that the expected expenses were so high when compared to the potential recovery that "[o]nly a 'lunatic or a fanatic' would undertake such an endeavor," *Sutherland I*, 768 F. Supp. 2d at 552,  makes it clear that Plaintiff in that case cleared the legal hurdle by a wide margin.  *See*, *also Sutherland v. Ernst & Young LLP*, 856 F. Supp 2d. 638, 641 (S.D.N.Y. 2012) ("*Sutherland III*")(Dolinger, M.J.).  ("[P]laintiff's proffer on the issue

of financial unfeasibility was more than adequate.").  As Judge Wood's opinion in *Sutherland II* made clear, a change in the risk/reward ratio by $40,000 would not be sufficient to alter the "Luna[cy]" of proceeding in this case.  *Sutherland II* at 551, n.5. (eliminating expert fee and expense does not render arbitration cost not prohibitive.).

Here, as in *Sutherland*, Plaintiffs have submitted proof that the claims of the Plaintiffs are far too small to justify the cost and risk of individual arbitration.  *See*, Folkenflik Dec. and  Morris Dec.

> **The Availability of Fee Shifting Does Not**
> **Alter the Conclusion That Individual Arbitration**
> **Is Prohibitively Expensive**

> **1.     Even if Costs Could Be "Shifted," And All Fees Shifted,**
> **Individual Arbitration Would Still be Prohibitably**
> **Expensive**

The availability of fee shifting is certainly a factor to be considered, and it was considered by the District Court in *Sutherland*.  The District Court correctly found that under the facts of that case, which are the same facts here, the availability of fee shifting was not sufficient to allow the Plaintiff to effectively vindicate statutory rights.  First, the District Court considered the evidence on Plaintiff's ability to pay.  The unchallenged evidence in *Sutherland* conclusively established that Plaintiff simply cannot afford the necessary $200,000 to proceed in an individual arbitration.  *Sutherland I* at 553.  The fact that she might have recovered her fees and expenses if she prevailed does not make those funds magically appear today.  The same is true of Plaintiffs Morris and McDaniel.

Second, even if Plaintiffs could afford to fund such a gamble, they would have to consider that they might not win and recover any of the expenses she incurred.  See, *Amex I* at 319, *Sutherland I* at 550. Here, there is a substantial litigation risk.  This case is at the cutting edge of FLSA and California Labor Code, seeking the application of the FLSA and

the Labor Code to junior accountants performing audits.  There is no settled law finding that requires overtime payments to employees performing the duties in question.

Indeed several recent decisions in similar overtime cases against accounting firms have been adverse to Plaintiffs' case here.  *See*, *e.g*., *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820 (9th Cir. Cal. 2011)(reversing grant of summary judgment for Plaintiffs); *Brady v. Deloitte & Touche LLP*, 2012 U.S. Dist. LEXIS 42118 (N.D. Cal. Mar. 27, 2012)(granting motion to decertify class); *Pippins v. KPMG LLP*, 2012 U.S. Dist. LEXIS 173918 (S.D.N.Y. Nov. 29, 2012)(granting summary judgment to accounting firm defendant).

The District Court correctly concluded in *Sutherland* that "it would not make economic sense for an individual to retain an attorney to handle one of these cases on an hourly basis and it is hard to see how any lawyer could advise a client to do so." *Id.*, quoting, *Kristian v. Comcast Corp*., 446 F.3d 25, 60 (1st Cir. 2006).  For the case to be pursued, therefore, Plaintiff would have to find an attorney willing to risk his fees and the relatively substantial out of pocket costs involved, including $33,500 in expert witness fees, and over $6,000 in other expenses, as well as $160,000 in legal fees.

Irrespective of the incentive provided by fee shifting, no rational attorney would invest $40,000 out of pocket and $160,000 in time based on a hope, far from a certainty, that may win and recover a portion of his legal fees, and a portion of his costs.  The actual damages are so low, that a contingency would not even cover the unrecovered expenses. The evidence on this motion, similar to the evidence in *Sutherland,* shows that neither Plaintiff's current attorneys nor other attorneys would undertake the risk of litigating an individual arbitration under the facts of this case.  Folkenflik Dec. ¶ 43.

The District Court concluded in *Sutherland* that the evidence and facts submitted to the court showed that "no attorney (regardless of competence) would ever take such a case on a contingent fee basis." *Sutherland I* at 553, *quoting*, *Caban v. J.P. Morgan Chase & Co.*, 606 F. Supp. 2d 1361, 1371 (S.D. Fla. 2009).

As a result, the District Court in *Sutherland* correctly concluded that the effect of fee shifting was insufficient to alter the Court's conclusion that proceeding with an individual arbitration under those facts would be an act of "luna[cy]." It would be at least as great an act of "luna[c]y" for these Plaintiffs to proceed in individual arbitration.

**2.      Plaintiffs' Have Significant Risk that All
Costs And Fees Will Not Be Shifted**

It is clear under the EY Arbitration Agreement that mediation costs and expenses *cannot* be "shifted" to the losing party. *See*, EY Arbitration Agreement, Section III H. JA49, JA58. The Plaintiff would have to advance bear those expenses without any chance of reimbursement.

The potential for shifting expert fees is limited by law Non testimonial fees not recoverable. *See, E.G. Uphoff v. Elegant Bath Ltd.*, 176 F.3d 399, 411 (7th Cir. 1999). *Amex I*, 317-18. Testimonial fees limited by 28 U.S.C. § 1821 (b) to $40 dollars a day. The arbitrator is bound to follow these legal rules. As the Second Circuit held in *Amex I*, fee shifting "plainly does not solve the problem." *Amex I* at 318. Expert witness fees in this case alone exceed the amount of Morris' likely recovery, and nearly equal McDaniel's potential recovery and would be "not recoverable," except in a trivial amount even if Plaintiff should prevail.

The EY Arbitration Agreement states "[t]he parties' intent is for Arbitrator fees and other costs of the arbitration, other than filing and administrative fees, to be shared equally," EY Arbitration Agreement, Section IV.P. 2, Ex. C to Hodapp Dec. p. 20, and that "[e]ach

party will be responsible for the party's own attorney's fees and related expenses." *Id.* Section IV P. 3. Ex. C to Hodapp Dec. p. 20. Even though the arbitrator has discretion to shift attorney's fees (not attorney costs) there is substantial risk that even if the Plaintiff prevails, the arbitrator will not shift attorney's fees at all or if he does will not shift the fees in their entirety. Folkenflik Dec. ¶ 47. In all, despite the potential for "fee shifting," individual arbitration does not provide a forum which allows for the effective vindication of statutory rights in these cases.

**B.      Vindication of Statutory Rights Analysis
         <u>Applies to The State Law Claims</u>**

For the same reasons that federal rights under the FLSA cannot be effectively vindicated in individual arbitration, the parallel rights under the California Labor Code cannot be effectively vindicated in individual arbitration.

Concededly, it is unsettled whether the "vindication of statutory rights" analysis applies to statutory rights granted under state statutes. *Kilgore v. KeyBank, Nat'l Ass'n, No.*, 673 F.3d 947, 961 (9th Cir. 2012) seems to indicate that it does not, and the Ninth Circuit panel in *Conneff* cited *Kilgore*,[6] as well as *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 346 (6th Cir. 2006); and *Brown v. Wheat First Sec., Inc.*, 257 F.3d 821, 825-26 (D.C. Cir. 2001) for the proposition that "*Mitsubishi, Gilmer, Green Tree* and similar decisions [setting forth the "effecting vindications of statutory rights defense to an arbitration demand] are limited to federal statutory rights." *Coneff v. AT&T Corp.*, 673 F.3d at 1159.

---

[6] Even were the holding of *Kilgore* to survive *en banc* review, it would not necessarily be dispositive of the issue in this case. The holding does not apply to state law rights encompassed in the savings clause contained in Section 2 of the FAA. *Kilgore v. KeyBank, N.A.*, 673 F.3d at 962. ("We read the Supreme Court's decisions on FAA preemption to mean that, *other than the savings clause*, the only way a particular statutory claim can be held inarbitrable is if Congress intended to keep that federal claim out of arbitration proceedings…")(emphasis supplied) *Kilgore* does not address the situation here where a state law contains a "vindication of statutory rights" defense, cognizable under the FAA section 2 savings clause.

However, the Ninth Circuit granted a re-hearing *en banc* in *Kilgore* and held that the "three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit." *Kilgore v. KeyBank Nat'l Ass'n*, 697 F.3d 1191, 1192 (9th Cir. 2012) petition for re-hearing *en-banc* granted, *Kilgore v. KeyBank Nat'l Ass'n*, 697 1191 (9th Cir. 2012). The holdings of *Kilgore*, and that part of *Coneff* which relied on *Kilgore*, are no longer the law in this Circuit. Whether the "vindication of statutory rights" doctrine applies to state statutory in this Circuit rights will likely be settled when the Circuit issues its opinion in *Kilgore*.

There is ample reason for the Ninth Circuit to conclude, as several other circuits have, that the FAA cannot be used to eviscerate state statutory rights any more than it could be used as an end run around federal statutory rights. *See, e.g.*, *Kristian v. Comcast Corp.*, 446 F.3d 25, 29 (1st Cir. 2006) (invalidating provisions of arbitration agreement barring recovery of fees and costs and barring class arbitration "because they prevent the vindication of statutory rights under state and federal law,"); *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79-81 (D.C. Cir. 2005) (applying *Green Tree* to state statutory rights) (Judge, now Justice Roberts); Cf. *James v. McDonald's Corp.*, 417 F.3d 672, 679 (7th Cir. 2005) ("unclear whether the rationale of *Green Tree* applies to situations that do not involve the assertion of federal statutory rights").

Indeed, there is no holding, nor any logic, which would require this Court or the Ninth Circuit to hold that an arbitration clause which effectively prohibits the effective vindication of arbitration neutral state law statutory rights may nonetheless be enforced. There is no basis to believe that such a rule is consistent with the FAA, which showed solicitude to state law. *See*, 9 U.S.C. § 2. Nor would such a rule be compelled by the Federal Common Law of arbitrarbility.

Moreover, the proper analysis under the FAA of the enforceability of state statutory rights is whether the agreement is unenforceable under the "savings clause" in Section 2 of the FAA.  *See*, *Amex II*, 634 F.2d at 199  That section provides that arbitration agreements within the scope of the FAA  are "enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

It may well be that some states do not recognize a "vindication of statutory rights" defense to enforcement of a contract.  However, New York law, which applies to the arbitration agreement at issue, recognizes that arbitration may not be compelled  when the arbitration agreement "contain[s] terms that could preclude a litigant from vindicating his/her statutory rights in the arbitral forum."  *Brady v. Williams Capital Group, L.P.*, 14 N.Y.3d 459, 467 (2010).

In reaching its conclusion in *Brady*, the Court of Appeals held that "we are mindful of the strong State policy favoring arbitration agreements and the equally strong policy requiring the invalidation of such agreements when they contain terms that could preclude a litigant from vindicating his/her statutory rights in the arbitral forum."  *Id*. at 467.  The rule adopted by the New York Court of Appeals requires a case by case analysis and at a minimum requires the court to "consider the following questions: (1) whether the litigant can pay the arbitration fees and costs; (2) what is the expected cost differential between arbitration and litigation in court; and (3) whether the cost differential is so substantial as to deter the bringing of claims in the arbitral forum."  *Id*.

The same result would apply under California law, which has a specific rule invalidating arbitration agreements in labor law cases where arbitration would not allow for the effective vindication of statutory rights.  *Gentry v. Superior Court,* 42 Cal. 4th 443 (2007).

1
2
3
4
5
6
7
8

At least so long as  the *Brady* or *Gentry* rules are applied on a case by case basis in a manner consistent with the rule in the *Amex Trilogy*, it would not be in conflict with the FAA or the holding of the Supreme Court in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011).  To put it differently, if the arbitration agreement is unenforceable as to the Federal claims because it runs afoul of the "vindication of statutory rights" analysis, it is similarly unenforceable as to the State law claims as against state law public policy, and void under Section 2 of the FAA.

## POINT IV

### THE FLSA CREATES LEGAL RIGHTS WHICH WOULD BE IMPERMISSIBLY COMPROMISED BY COMPELLING INDIVIDUAL ARBITRATION

9
10
11
12
13
14
15
16
17
18
19
20
21
22

The right to a collective action under Section 16(b) of the FLSA may not be avoided by an arbitration agreement containing a class action waiver.  That question is presently before the Second Circuit in the appeal from Judge Sweet's decision in *Raniere v. Citigroup Inc.,* 827 F. Supp 2d 294, 314 (S.D.N.Y. 2011) (Second Circuit Docket No. 11-5213).  Judge Sweet found the right to collective action to be substantive and not waivable in an arbitration agreement. *Raniere v. Citigroup Inc.,* 827 F. Supp 294, 314 (S.D.N.Y. Nov. 22, 2011)("An otherwise enforceable arbitration agreement should not become the vehicle to invalidate the particular Congressional purposes of the collective action provision and the policies on which that provision is based.") (Sweet, J.) (footnote omitted).

23
24
25
26
27

The EY Arbitration Agreement undermines a substantial portion of the FLSA's remedial and enforcement scheme, including in particular the right to proceed in a collective action.  The question before this Court is whether it agrees with Judge Sweet's conclusions that the right to collective action is a substantive right and whether barring collective action is inconsistent with the congressional intent emphasized in the FLSA.

28

The Supreme Court has long recognized that Congressional intent as expressed in statutory language and legislative history, may well preclude arbitration of certain controversies. As the Court said in *Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth*, 473 U.S. 614, 627-28 (1985), "it is the congressional intention expressed in [a] statute in which the Courts must rely to identify any categorical claims as to which agreements to arbitrate will be held unenforceable." Congress itself may "evidence[ ] an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *See, Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. at 26, quoting *Mitsubishi Motors Corp*., 473 U.S. at 628. The Congressional intention "to include protection against waiver of [a statutory right] will be deducible from text or legislative history." *Id*. at 29, *accord 14 Penn Plaza, LLC v. Pyett*, 556 U.S. 247, (2009); *accord, Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987); *Ackerman v. Eber (In re Eber)*, 687 F.3d 1123, 1129 (9th Cir. 2012).

Both the text and the legislative history of the FLSA make it clear that the right to collective action cannot be waived. Section 16(b) of the FLSA contains several remedial and enforcement provisions. Most significantly for this case, it provides a *right* to proceed in court in a collective action. "An action to recover the liability [for unpaid minimum wages, liquidated damages and other appropriate relief] *may be maintained* against any employer … in any Federal or State Court of competent jurisdiction by any one or more employees *for and in behalf of himself or themselves or other employees in similarly situated*." 29 U.S.C. § 216(b) (emphasis supplied).[7]

---

[7] *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012), which found that the statute was insufficiently specific to bar arbitration is clearly distinguishable on several grounds. First, it dealt with the language of the statute alone, rather than that language in the context of legislative history akin to the FLSA. Second, the FLSA was passed at a time when the commerce clause, and therefore the FAA, did not extend to labor contracts which were not "engaged in" interstate commerce and those which were had been excluded from the FAA. *See, Circuit City Stores v. Adams*, 532 U.S. 105, 119 (2001). Third, the language of the "disclosure provision" in the statute at question in *CompuCredit* is very different, and less consistent with an intent to provide a right to judicial action, than the language in the FLSA.

The arbitration agreement at issue contains an absolute bar to proceeding as a collective claim in arbitration, and bars any action in Court.   The question, therefore, is whether this statutorily granted collective action remedy is a substantive right which cannot be compromised or waived by an arbitration agreement.  The legislative history of the  FLSA shows that it is.

The FLSA was a signature, perhaps the signature issue, of the New Deal legislative program.  There can be little doubt of the strong congressional intent to ensure that the minimum wage and overtime provisions of the FLSA were fully enforced for all employees.  *See*, e.g., *Forsythe*, *The Legislative History of the Fair Labor Standards Act,* 6 Law and Contemporary Problem 464, 464-67 (1939)(hereinafter "*Forsythe*"); *Lopez, Collective Confusion: FLSA Collective Actions Rule 23 Class Actions and the Rules Enabling Act*, 69 Hastings Law Journal 215, 279-281 (2006)(hereinafter "*Lopez*").

The statutory rights, remedies, penalties and enforcement mechanisms incorporated into the FLSA were significant Congressionally mandated aspects of the legislation.   Indeed, as originally drafted, Section 16(b) was substantially stronger.  The original section provided:

> (b) "Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action for and in behalf of all employees similarly situated."

29 U.S.C. § 216(b) (prior to amendment).

In commenting on these important enforcement provisions during the House debates on June 14, 1938, Congressman Kent Keller of Illinois, one of the managers on the part of the House on the Conference Committee which reported out the Act in final form, stated:

> Among the provisions for the enforcement of the act an old principle has been adopted and will be applied to new uses.  If there shall occur violations of either the wages or hours, the employees can themselves, or by designated agent or representatives, maintain an action in any court to recover the wages due them and in such a case the court shall allow liquidated damages in addition to the wages due equal to such deficient payment  and shall also allow a reasonable attorney's fees and assess the court costs against the violator of the law so that employees will not suffer the burden of an

-27-

expensive lawsuit.  The provision has the further virtue of minimizing the cost of enforcement by the Government.  It is both a common-sense and economical method of regulation.  The bill has other penalties for violations and other judicial remedies, but the provision which I have mentioned puts directly into the hands of the employees who are affected by violation the means and ability to assert and enforce their own rights, thus avoiding the assumption by Government of the sole responsibility to enforce the act.

Sloan, 4 *American Landmark Legislation* (1984), at 465, Congressional Debates (House), June 14, 1938 (emphasis supplied).

Almost simultaneously with the passage of these statutory rights for employees to enforce the FLSA, the original version of Rule 23 regarding federal class actions was passed.  Rule 23 allowed class actions to proceed as true class actions, hybrid class actions, or "spurious" class actions.  True and hybrid class actions involve plaintiffs who shared interests in the same property, or who sought to collect from a common fund; spurious class actions involved related claims against the same defendant or defendants where there are common issues of fact or law. *Lopez* at 284-85.

The representative actions incorporated into Section 16(b) of the FLSA, include actions by employees on behalf of others "similarly situated" and actions by named agents or representatives.  The FLSA rules were clearly greater than procedural remedies then available under the original Federal Rules of Civil Procedure Rule 23.

The FLSA enforcement provisions were modified by the Portal-to-Portal Act.  That Act eliminated the "representative action" by an agent or other person.  The Act also required members being represented in a collective action to file a "consent to sue" in order to have the action proceed on their behalf.  In addition, Section 256 was added to FLSA to define the commencement of a collective action as the filing of individual "consents to sue."  9 U.S.C. § 256.  *See*, *Lopez* at 281-84.

Had Congress chosen not to provide any special procedural rights to plaintiffs in a

collective action, the language concerning the collective action *right* could have simply been eliminated.    At the time, under *then existing* class action law, in the absence of any congressionally granted right, plaintiffs would have been allowed to proceed in a spurious class action under Rule 23.  However, that was not what Congress determined to do.  Although the collective action right *was limited*, it was not *eliminated* as a statutory right.

Reviewing this history, Judge Sweet held in *Ranier*e:

> These collective action provisions were crafted by not one  but over the course of several Congresses to balance the need to incentivize the bringing of often small claims by way of collectivization in order to ensure the statute's function, while barring actions "brought on behalf of employees who had no real involvement in, or real knowledge of, the lawsuit." *Arrington*, 531 F. Supp. at 501. The Act's, and more specifically this provision's, lengthy legislative history evidences Congress' precise determination of how this balance should be struck in order to ensure the statute's remedial and deterrent functions.. . . The particular FLSA collective action mechanism was additionally a Congressional determination regarding the allocation of enforcement costs, as the ability of employees to bring actions collectively reduces the burden borne by the public fisc, as Representative Keller noted. *See*, 83 Cong. Rec. 9264. Moreover, prohibition of the waiver of the right to proceed collectively accords with the Congressional policy of uniformity with regard to the application of FLSA standards, *see*, H. Rep. No. 2182, 75th Cong., 3d Sess. at 6-7, because an employer is not permitted to gain a competitive advantage because his employees are more willing to assent to, or his human resources department more able to [obtain], collective action waivers than those of his competitors.

*Raniere v. Citigroup Inc.*, 827 F. Supp 2d 294, 314 (S.D.N.Y. 2011).

Moreover, the true legislative history of the FLSA starts not with the FLSA itself, passed in 1938, but with the passage of the Norris-LaGuardia Act of 1932.  The Norris-LaGuardia Act reflected an express Congressional policy to protect the right of collective action by employees to pursue, collectively, resolution of disputes concerning their employment, including collective action in "*any suit in any court of the United States or of any State*."  29 U.S.C. § 104(d) (emphasis added).  Reviewing the language of that statute, the National Labor Relations Board concluded:

> The Norris-LaGuardia Act, in sum, protects concerted employment-related litigation by employees against federal judicial restraint based upon agreements between employees and their employer. Consistent with the terms and policy of the Norris-LaGuardia Act, an arbitration  agreement imposed upon individual

1  employees as a condition of employment cannot be held to prohibit employees
   from pursuing an employment-related class, collective, or joint action in a Federal
2  or State court.

3  *D.R. Horton, Inc. v. N.L.R.B.*, N.L.R.B. Case No. 12-CA-25764, at 5.

4      The Norris-LaGuardia Act expressly repeals "[a]ll acts and parts of acts in conflict with

5  the provisions of this chapter…"  29 U.S.C. § 115.  That express repeal would encompass the

6  FAA which was passed in 1925.

7      Also prior to the enactment of the FLSA in 1938, Congress passed the National Labor

8  Relations Act of 1935 (the "NLRA").  That act protected the right of employees "to engage in . .

9  . concerted activities for the purpose of collective bargaining or other mutual aid or protection . .

10 . ." 29 U.S.C. §157.

11

12     As the NLRB found in reviewing the NLRA:

13     It is well settled that "mutual aid or protection" includes employees' efforts to
       "improve terms and conditions of employment or otherwise improve their lot as
14     employees through channels outside the immediate employee-employer
       relationship."  *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565–566 (1978).  The
15     Supreme Court specifically stated in *Eastex* that Section 7 "protects employees
       from retaliation by their employer when they seek to improve and judicial
16     forums." *Id*. at 565-566. The same is equally true of resort to arbitration.

17 *D.R. Horton, Inc. v. N.L.R.B.*, N.L.R.B. Case No. 12-CA-25764, at 2.

18     Woven through the history of national labor policy is the clear Congressional intent to

19 protect collective action.  The language and history of the FLSA enshrines a substantive right to

20 collective action.  The FLSA legislative history, must be read as guaranteeing a substantive right

21 to collective actions.  The EY Arbitration Agreement precludes a right that is guaranteed by the

22 FLSA.

23

24     Supreme Court holdings are not to the contrary.  As the Supreme Court held in *Hoffman*

25 *LaRoche v. Sperling*, 493 U.S. 165 (1989), "Congress had stated its policy that … plaintiff's [in

26 actions where Section 216(b) applies], should have the opportunity to proceed collective.  A

27 collective action allows … plaintiff's the advantage of lower individual costs to vindicate rights

28

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO STAY OR COMPEL ARBITRATION
Case No. 12-CV-04964 RMW (HRL)

by the pooling of resources." *Id.* at 170.  The Supreme Court characterized this as, again, an "explicit statutory direction of a single … action for a multiple … plaintiffs." *Id.* at 173.

In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), plaintiff, a securities broker, filed a claim for age discrimination under the Age Discrimination Employment Act of 1967 ("ADEA").  The Court held that plaintiff's claim could be compelled to be arbitrated pursuant to the New York Exchange Rule 347 which required arbitration between a registered representative and his employer on claims involving his employment and termination.  The Supreme Court therefore held that the employee could be compelled to arbitrate his individual claim.

*Gilmer* may stand for the proposition that a collective action may be held in arbitration, but where collective arbitration is barred, *Gilmer* cannot be properly read to support compelling individual action and denying the FLSA collective remedy.[8]  Similarly, the waiver at issue in *14 Penn Plaza v. Pyett*, 556 U.S. 247, 258 (2009), was a part of a bargained for exchange, agreed to through the collection actions of collective bargaining.  It was an exercise of rights guaranteed by Section 7 of the NLRA, not a violation of those rights.  *See*, *D.R. Horton Inc. v. N.L.R.B.*, N.L.R.B. Case No. 12-CA-25764, (Jan. 3, 2012) at 10.  The Supreme Court did not hold to the contrary.

---

[8] Several Circuit courts have held otherwise, concluding that based on certain Supreme Court *dicta* in *Gilmer* the Supreme Court rejected the notion that the unavailability of a collective or class action remedy would preclude arbitration of individual ADEA or Truth in Lending Act ("TILA") claims.  *See*, e.g., *Johnson v. West Suburban Bank*, 225 F.3d 366, 377 (3d Cir. 2000).  Those cases cannot apply to the collective action remedy in FLSA whose full legislative history is deference from that of the ADEA and TILA.  *But see*, *Carter v. Countrywide Credit Ind. West, Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) (applying analysis to FLSA claims without discussion of differences in legislative history).

Moreover, that interpretation of *Gilmer* has been rejected by the Second Circuit.  "We cannot agree with this view of *Gilmer* because a collective, and perhaps a class action remedy, in fact was available in that case ….  The statement in *Gilmer* that the arbitration clause would be enforceable 'even if' class remedies were available [*sic.* unavailable] evidences that the Court itself was uncertain, but acknowledged the probability, that class action[s] were feasible under the NYSE's rules."  *Amex I.* 554 F.3d at 314.

**POINT V**

**THE EY ARBITRATION AGREEMENT VIOLATES THE NATIONAL
LABOR RELATIONS ACT AS FOUND IN THE NLRB DECISION
IN *D.R. HORTON* TO WHICH THIS COURT SHOULD DEFER.
IT IS SETTLED LAW THAT CONRACTS IN VIOLATION
OF FEDERAL LAW CANNOT BE ENFORCED**

A separate and independently sufficient ground for affirmance is the decision of the

N.L.R.B. in *D.R. Horton, Inc.* N.L.R.B Case No. 12-CA-25764 (Jan. 3, 2012). [9] In that case, in a

lengthy and scholarly review of the relevant statutes and decisional law, the Board held that an

agreement is entered into as a condition of employment which prohibits employee participation

in collective judicial or arbitral action to address employment-related grievances is a violation of

Section 7 of the National Labor Relations Act ("NLRA"). *D.R. Horton,* at 4.  It also held such

agreements also are unenforceable under Section 15 of the Norris-LaGuardia Act.[10] *Id.* at 5-6.

This holding expressly was applied by the Board to cover employment-related litigation

---

[9]  It is as yet unclear what effect, if any, the decision of the Court of Appeals for the District of Columbia in *Canning v. NLRB*, 2013 U.S. App. LEXIS 1659 (D.C. Cir. January 25, 2013) will have on the continued viability of the *D.R. Horton* decision.  At the time of the decision in *Horton*, the NLRB was comprised of 3 members.  Member Becker was a recess appointee, appointed during a recess in March 2010.  In its appeal to the Fifth Circuit, D.R. Horton had argued that Member Becker's appointment ended in December 2011, even though the Senate was in *pro forma* session, thereby depriving the NLRB of a quorum.  The NLRB has responded to that argument by asserting that the Senate  was not adjourned until January 3, 2012, after the Board issued the *D. R. Horton* decision on that day.  *Canning* seems to support the NLRB's position, although counsel has not yet had the opportunity to evaluate the facts surrounding Member Becker's appointment in 2010 in light of *Canning*.  *Canning* will almost certainly be reviewed by the Supreme Court, and possibly by the Court of Appeals *en banc* prior to that.

[10] As the Board explained:

In fact, the provisions of the Norris-LaGuardia Act prohibit the enforcement of a broad array of "yellow dog"-like contracts, including agreements comparable to that at issue here. Section 2 of the Norris-LaGuardia Act, which declares the "public policy of the United States," observes that the "individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment." 29 U.S.C. § 102.  Accordingly, Congress determined that workers should "have full freedom of association" and "shall be free from the interference, restraint, or coercion of employers" in "concerted activities for the purpose of collective bargaining *or other mutual aid or protection.*" *Id.* (*emphasis added*). In turn, Section 3 of the statute provides that "*any .. .* undertaking or promise in conflict with the public policy declared in" Section 2—not only the "yellow dog" contract—"is declared to be contrary to the public policy of the United States, shall not be enforceable in any court of the United States and shall not afford any basis for the granting of legal or equitable relief by any such court." 29 U.S.C. § 103 (*emphasis added*).

*D.R. Horton*, at 3.

under State law, as well as claims under Federal law, since any such suit would be a "labor dispute" under Section 13 of the Norris-LaGuardia Act.  That Act covers any "controversy concerning terms and conditions of employment…" *See, e.g. Id*. at 6.  The Board held: "an arbitration agreement imposed upon individual employees as a condition of employment cannot be held to prohibit employees from pursuing an employment-related class, collective, or joint action in a Federal or State court." *Id*.

"[G]eneral principles of administrative law requir[e] deference to an agency's interpretation of the statutes it is charged with administering." *ITC Ltd. v. Punchgini, Inc*., 482 F.3d 135, 159 (2d Cir. 2007); *See*, *also*, *Chevron, U.S.A., Inc. v. NRDC, Inc.,* 467 U.S. 837, 844 (1984)("considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer"); *N.L.R.B. v. City Disposal Systems, Inc*., 465 U.S. 822, 830 (1984)("we have not hesitated to defer to the Board's interpretation of the [NLRA]"). "The NLRB's interpretation of the [National Labor Relations] Act perceives this *Chevron* differenced unless its interpretation is unreasonable."  Local Union 36, IBIW, *AFL CIO v. NLRB*, 2013 U.S. App. LEXIS 1139, 15 n.3 (2d Cir. Jan. 17, 2013).  Unlawfulness under Section 7 of the NLRA is a basis for denial of relief on public policy grounds as incorporated into Section 2 of the FAA.[11]

While the Board's decision may not be determinative, "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding."  *Chevron, U.S.A., Inc*. at 843.  The Board's decision on the interpretation of the Norris-LaGuardia Act may not be entitled to the same level of deference, but

---

[11] Section 2 of the FAA excludes from enforcement arbitration agreements voidable "*upon such grounds as exist at law or in equity for the revocation of any contract.*"

9 U.S.C. § 2. *(emphasis added)*.

that act is within the Board's special expertise and the Board's interpretation of that act is entitled to some degree of deference.

There is no evidence of any lack of Congressional sanction for the Board's interpretation that a ban on collective action violates the NLRA and the Norris-LaGuardia Act. To the contrary, Section 2 of the FAA expressly contemplates denying enforcement to agreements which are in violation of law.

Some cases, such as *Owen v. Bristol Care, Inc*., 2013 U.S. App. LEXIS 356 (8th Cir. Mo. Jan. 7, 2013), have refused to deny arbitration on the basis of *D.R. Horton* based in whole or in part on the conclusion that the holding by the NLRB on the conflict between the NLRA and the FAA is not entitled to any special deference.[12] The flaw in that argument is that it conflates a two-step analysis into one. The NLRB's holding that it is a violation of the NLRA to impose collective action waivers a condition of employment is undeniably entitled to deference. The rule that a contract which is unlawful, either under the NLRA or any other federal statute, will not be enforced, rests on more general and well settled principles.

As the Supreme Court has held: "There is no statutory code of federal contract law, but our cases leave no doubt that illegal promises will not be enforced in cases controlled by the federal law." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (U.S. 1982).

Other principles of statutory construction also apply and also require the FAA to yield to the contrary command of the NLRA and the Norris-Laguardia Act. The FAA was passed in 1925, and both the Norris-LaGuardia Act (1932) and the NLRA (1935) were subsequent statutes. The Norris-LaGuardia Act contains *an express repeal of prior inconsistent statutes* in Section 15. 29 U.S.C. § 115. ("Repeal of conflicting laws. All Acts and parts of Acts in conflict with the

---

[12] The *Owen* court also relied upon the fact that the arbitration agreement in that case did not bar collective actions in a complaint before the NLAB. *See Id*. at 9-10. However, the EY Arbitration Agreement provides, to the contrary, "both the Firm [EY] and Employee give up any right to resolve any covered dispute through any other means." *See* EY Arbitration Agreement Sec. II. B.1., Exhibit C to Hodapp Dec. at p. 15. See also, *id*. Sec.V. D. p.21.

provisions of this Act are hereby repealed.").  Moreover, in accordance with long settled law, if the FAA were considered to be in irreconcilable conflict with the Norris-LaGuardia Act or the NLRA, then those later passed statutes would be enforced, and not the FAA.  *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976) ("where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one.")

Accordingly, because an agreement barring collective action to resolve a labor dispute is unlawful, the arbitration agreement cannot stand.  Even if the NLRB had not ruled as it did in *D.R. Horton*, this Court could and should reach the conclusion that the ban on collective action in the EY Arbitration Agreement violates Section 7 of the National Labor Relations Act.

## CONCLUSION

If Plaintiffs were forced to individual arbitration, they would be unable to vindicate their statutory rights under federal and state law.  Those rights include the right to collective action which the EY Arbitration Agreement violates.  Further, the inescapable fact is that EY has waived its right to pursue arbitration against these Plaintiffs and the class they seek to represent, (and most particularly, with respect to Plaintiff Morris), by their conduct in this case and in the earlier related consolidated cases.

Accordingly, Plaintiffs respectfully request that the motion be denied.

January 28, 2013               FOLKENFLIK & McGERITY LLP

                              By:             /S/Max Folkenflik                    .

                                    Max Folkenflik
                                    Attorneys for Plaintiffs

January 28, 2013               HOFFMAN LIBENSON SAUNDERS AND BARBA LLP

                              By :             /S/Ross L. Libenson                    .
                                    Ross L. Libenson
                                    Attorneys for Plaintiffs