**AKIN GUMP STRAUSS HAUER & FELD LLP**
GREGORY W. KNOPP (SBN 237615)
KATHARINE J. GALSTON (SBN 237442)
CHRISTOPHER K. PETERSEN (SBN 260631)
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3012
Telephone:    310-229-1000
Facsimile:    310-229-1001
gknopp@akingump.com
kgalston@akingump.com
cpetersen@akingump.com

Attorneys for Defendants, ERNST & YOUNG LLP
and ERNST & YOUNG, U.S. LLP

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN MORRIS and KELLY McDANIEL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ERNST & YOUNG LLP, and ERNST & YOUNG U.S., LLP,,<br><br>Defendants. | Case No. 12-cv-04964-RMW (HRL)<br><br>[Assigned for all purposes to Judge Ronald M. Whyte]<br><br>**DEFENDANT ERNST & YOUNG LLP'S AND ERNST & YOUNG U.S., LLP'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS AND COMPEL ARBITRATION**<br><br>Date:     February 15, 2013<br>Time:     9:00 a.m.<br>Ctrm:     6 |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................1

II.   ARGUMENT ......................................................................................................3

  A.    Ernst & Young Did Not Waive Its Right To Compel Arbitration..........3
        1.    Ernst & Young Did Not Act Inconsistently With Its Right To Compel Arbitration..........................................................4
              a.    Ernst & Young Did Not Act Inconsistently With Its Right To Arbitrate By Seeking (Successfully) A Transfer To This Court. ............................................4
              b.    Ernst & Young Did Not Act Inconsistently With Its Right To Arbitrate By Actions It Took In *Ho*. ..................6
              c.    Ernst & Young Did Not Act Inconsistently With Its Right To Arbitrate Morris's Claims By Not Initiating Some Action Against Morris When He Submitted A Declaration In *Ho*.................................................7
        2.    The Plaintiffs Cannot Establish Prejudice. ..................................8

  B.    Arbitration Is Not Prohibitively Expensive, And, Thus, Could Not Prevent Morris And McDaniel From Pursuing Their Claims. ........... 10
        1.    Arbitration Is Not Prohibitively Expensive Because Ernst & Young Has Agreed To Pay All Arbitration Costs And The Plaintiffs Are Entitled To Recover Their Attorney's Fees And Costs (Including Their Estimated Expert Fees). ...................... 10
              a.    Because McDaniel Has Offered No Evidence Of "Prohibitive" Costs, Her Defense Fails For This Reason Alone...............................................................11
              b.    Neither Plaintiff Has Shown That The Cost Of Arbitration Would Be "Prohibitive." ............................. 12
        2.    The Ninth Circuit Has "Soundly Rejected" The Second Circuit's Approach In American Express—Currently On Review In The Supreme Court—That The Plaintiffs Urge This Court To Follow........................................................... 14

  C.    In The Alternative, The "Prohibitive Costs" Defense Applies Only To Plaintiffs' Federal Law Claims, Not Their State Law Claims............ 18

  D.    The FLSA Does Not Render The Agreements To Arbitrate Unenforceable.............................................................................. 20

  E.    The NLRA Does Not Render The Agreements To Arbitrate Unenforceable.............................................................................. 22

III.  CONCLUSION................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adkins v. Labor Ready, Inc.,*
  303 F.3d 496 (4th Cir. 2002) ............................................................. 21

*Alyeska Pipeline Serv. Co. v. Wilderness Society,*
  421 U.S. 240 (1975) ........................................................................... 13

*In re Am. Express Merchants' Litig.,*
  554 F.3d 300 (2d Cir. 2009) ("*Amex I*"), *aff'd after remand,* 634 F.3d 187 (2d
  Cir. 2011), *aff'd,* 667 F.3d 187 (2d Cir. 2012) ("*Amex III*"),
  *cert. granted,* 133 S. Ct. 594 (2012) ................................... 15, 19, 22

*Ass'n of Civilian Technicians, Silver Barons Chapter*
  *v. Fed. Labor Relations Auth.,*
  200 F.3d 590 (9th Cir. 2000) ............................................................. 24

*AT&T Mobility LLC v. Concepcion,*
  131 S. Ct. 1740 (2011) ................................................................ passim

*Blau v. AT&T Mobility,*
  2012 WL 566565 (N.D. Cal. Feb. 21, 2012) ........................................ 4

*Booker v. Robert Half Int'l, Inc.,*
  413 F.3d 77 (D.C. Cir. 2005) ............................................................. 19

*Bradford v. Rockwell Semiconductor Sys., Inc.,*
  238 F.3d 549 (4th Cir. 2001) ....................................................... 11, 12

*Britton v. Co-op Banking Group,*
  916 F.2d 1405 (9th Cir. 1990) ............................................................. 9

*Brown v. Trueblue, Inc.,*
  2012 WL 1268644 (M.D. Pa. Apr. 16, 2012) ..................................... 25

*Brown v. Wheat First Sec., Inc.,*
  257 F.3d 821 (D.C. Cir. 2001) ........................................................... 19

*Cal. Nat. Guard v. Fed. Labor Relations Auth.,*
  697 F.2d 874 (9th Cir. 1983) ............................................................. 24

ii

*Caley v. Gulfstream Aerospace Corp.*,
   428 F.3d 1359 (11th Cir. 2005) .................................................................. 21, 22

*Campbell v. PricewaterhouseCoopers, LLP*,
   642 F.3d 820 (9th Cir. 2011) ............................................................................ 14

*Canning v. NLRB.*,
   -- F.3d --, 2013 WL 276024 (D.C. Cir. Jan. 25, 2013) ....................................... 24

*Carey v. 24 Hour Fitness USA, Inc.*,
   2012 WL 4754726 (S.D. Tex. Oct. 4, 2012) ................................................ 24, 25

*Carter v. Countrywide Credit Indus., Inc.*,
   362 F.3d 294 (5th Cir. 2004) .......................................................... 12, 21, 22

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) .......................................................................... 1, 3

*Clemins v. GE Money Bank*,
   2012 WL 5868659 (E.D. Wis. Nov. 20, 2012) ................................................... 19

*Cohen v. UBS Fin. Servs., Inc.*,
   2012 WL 6041634 (S.D.N.Y. Dec. 4, 2012) ......................................................... 4

*CompuCredit Corp. v. Greenwood*,
   132 S. Ct. 665 (2012) ........................................................................ 1, 3, 20, 23

*Coneff v. AT&T Corp.*,
   673 F.3d 1155 (9th Cir. 2012) .............................................................. 16, 18, 19

*Cruz v. Cingular Wireless*,
   648 F.3d 1205 (11th Cir. 2011) ........................................................................ 16

*D.R. Horton, Inc.*,
   357 NLRB No. 184, 2012 WL 36274 (Jan. 3, 2012) ......................... 2, 23, 24, 25

*D.R. Horton, Inc. v. NLRB*,
   No. 12-60031 (5th Cir., filed Jan. 13, 2012) ..................................................... 23

*Delock v. Securitas Security Servs. USA, Inc.*,
   2012 WL 3150391 (E.D. Ark. Aug. 1, 2012) .................................................... 25

*Diaz-Ramos v. Hyundai Motor Co.*,
   501 F.3d 12 (1st Cir. 2007) ............................................................................... 22

iii

*Fisher v. A.G. Becker Paribas Inc.*,
    791 F.2d 693 (9th Cir. 1986) ...................................................... 3, 4, 9, 10

*Garcia v. Dell, Inc.*,
    2012 WL 5928132 (S.D. Cal. Nov. 13, 2012) .................................... 16

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ................................................................... 18, 22

*Gonsalves v. Infosys Techs., Ltd.*,
    2010 WL 3118861 (N.D. Cal. Aug. 5, 2010) ..................................... 4

*Green Tree Financial Corp. v. Randolph*,
    531 U.S. 79 (2000) ................................................................. passim

*Hendricks v. AT&T Mobility, LLC*,
    823 F. Supp. 2d 1015 (N.D. Cal. 2011) .......................................... 12

*Herrington v. Waterstone Mortg. Corp.*,
    2012 WL 1242318 (W.D.Wis. Mar. 16, 2012)................................... 25

*Hill v. Blind Industries and Services of Maryland*,
    179 F.3d 754 (9th Cir. 1999) ........................................................ 5

*Hoffman Plastic Compounds, Inc. v. NLRB*,
    535 U.S. 137 (2002)................................................................... 24

*Horenstein v. Mortgage Mkt., Inc.*,
    9 F. App'x 618 (9th Cir. 2001) ..................................................... 21

*Jasso v. Money Mart Exp., Inc.*,
    2012 WL 1309171 (N.D. Cal. Apr. 13, 2012)................................... 25

*Jasso v. Money Mart Exp., Inc.*,
    879 F. Supp. 2d 1038 (N.D. Cal. 2012) .......................................... 16

*Jenkins v. First Am. Cash Advance of Ga., LLC*,
    400 F.3d 868 (11th Cir. 2005) ............................................. 1, 13, 18

*Kaltwasser v. AT&T Mobility LLC*,
    812 F. Supp. 2d 1042 (N.D. Cal. 2011) .......................................... 12

*Kilgore v. KeyBank, NA*,
    673 F.3d 947 (9th Cir. 2012) ....................................................... 19

iv

*Kristian v. Comcast Corp.,*
446 F.3d 25 (1st Cir. 2006) ................................................................. 19

*Laguna v. Coverall North America, Inc.,*
2011 WL 3176469 (S.D. Cal. July 26, 2011) ........................................6

*Lake Commc'ns., Inc. v. ICC Corp.,*
738 F.2d 1473 (9th Cir. 1984), ...........................................................8

*Large v. Conseco Fin. Servicing Corp.,*
292 F.3d 49 (1st Cir. 2002) ................................................................ 12

*LaVoice v. UBS Fin. Servs., Inc.,*
2012 WL 124590 (S.D.N.Y. Jan. 13, 2012) ................................. 21, 25

*Livingston v. Assocs. Fin., Inc.,*
339 F.3d 553 (7th Cir. 2003) ................................................. 11, 12, 16

*Lu v. AT&T Services, Inc.,*
2011 WL 2470268 (N.D. Cal. June 21, 2011) ..................................... 21

*McKennon v. Nashville Banner Publ'g Co.,*
513 U.S. 352 (1995) ........................................................................... 22

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
473 U.S. 614 (1985) ..................................................................... 8, 18

*Mora v. Harley-Davidson Credit Corp.,*
2012 WL 1189769 (E.D. Cal. Apr. 9, 2012) .........................................6

*Morvant v. P.F. Chang's China Bistro, Inc.,*
870 F. Supp. 2d 831 (N.D. Cal. 2012) ................................................ 25

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) .................................................................................3

*New Process Steel, L.P. v. NLRB,*
130 S. Ct. 2635 (2010) ....................................................................... 23

*NLRB v. Long Island Coll. Hosp.,*
20 F.3d 76 (2d Cir. 1994) ................................................................... 23

*Owen v. Bristol Care, Inc.,*
702 F.3d 1050, 2013 WL 57874 (8th Cir. Jan. 7, 2013) ................. 21, 22, 24, 25

*Pleasants v. Am. Express Co.*,
  541 F.3d 853 (8th Cir. 2008) ............................................................ 16

*Pomposi v. Gamestop, Inc.*,
  2010 WL 147196 (D. Conn. Jan. 11, 2010)......................................... 21

*Pro Tech Indus., Inc. v. URS Corp.*,
  377 F.3d 868 (8th Cir. 2004) ............................................................. 18

*Raniere v. Citigroup Inc.*,
  827 F. Supp. 2d 294 (S.D.N.Y. 2011) ................................................ 21

*Reid v. Supershuttle Int'l Inc.*,
  2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010)...................................... 21

*Rush v. Oppenheimer & Co.*,
  779 F.2d 885 (2d Cir. 1985)................................................................. 8

*Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co., Inc.*,
  572 F.2d 1328 (9th Cir. 1978) ......................................................... 3, 8

*Smith v. Bayer Corp.*,
  131 S. Ct. 2368.............................................................................. 6, 7

*Smith v. T-Mobile USA Inc.*,
  570 F.3d 1119 (9th Cir. 2009) .......................................................... 22

*Snowden v. CheckPoint Check Cashing*,
  290 F.3d 631 (4th Cir. 2002) ............................................................ 16

*Southern S.S. Co. v. NLRB*,
  316 U.S. 31 (1942)........................................................................... 24

*Sovak v. Chugai Pharm. Co.*,
  280 F.3d 1266 (9th Cir. 2002) ............................................................ 3

*Stutler v. T.K. Constructors Inc.*,
  448 F.3d 343 (6th Cir. 2006) ............................................................ 18

*Sutherland v. Ernst & Young, LLP*,
  768 F. Supp. 2d 547 (S.D.N.Y. 2011) ............................... 2, 13, 14, 15

*Tamsco Properties, LLC v. Langemeier*,
  2013 WL 246782 (E.D. Cal. Jan. 22, 2013) ..................................... 3, 5

vi

*Tenet HealthSystem Phila., Inc. v. Rooney,*
  2012 WL 3550496 (E.D. Pa. Aug. 17, 2012) ..................................................... 25

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
  2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011) ............................................6

*Torres v. United Healthcare Svcs., Inc.,*
  2013 WL 387922 (E.D.N.Y. Feb. 1, 2013) ................................................. 21, 25

*United States v. Park Place Assocs., Ltd.,*
  563 F.3d 907 (9th Cir. 2009) ............................................................... 9, 10

*Vinole v. Countrywide Home Loans, Inc.,*
  571 F.3d 935 (9th Cir. 2009) .................................................................. 14

*Wicker, v. Oregon ex rel. Bureau of Labor,*
  543 F.3d 1168 (9th Cir. 2008) ................................................................. 17

*Zhou v. Wang's Rest.,*
  2007 WL 134441 (N.D. Cal. Jan. 16, 2007) .................................................. 17

**STATE CASES**

*Brady v. Williams Capital Group, L.P.,*
  14 N.Y.3d 459 (2010) ......................................................................... 20

*Brewer v. Premier Golf Properties,*
  168 Cal. App. 4th 1243 (2008) ................................................................ 17

*Discover Bank v. Super. Ct.,*
  36 Cal. 4th 148 (2005) ....................................................................... 20

*Eicher v. Advanced Bus. Integrators, Inc.,*
  151 Cal. App. 4th 1363 (2007) ................................................................ 17

*Gentry v. Superior Court,*
  42 Cal. 4th 443 (2007) ................................................................... 17, 20

*Harrington v. Payroll Entm't Svcs., Inc.,*
  160 Cal. App. 4th 589 (2008) ................................................................. 13

*Mitroff v. United Servs. Auto Assn.,*
  72 Cal. App. 4th 1230 (1999) ..................................................................7

**FEDERAL STATUTES**

29 U.S.C. § 216(b) ........................................................................ 13, 21

29 U.S.C. § 255(a) ............................................................................. 18

**STATE STATUTES**

Cal. Lab. Code § 1194 ....................................................................... 13

**RULES**

F. R. Evid. 602 ................................................................................. 17

F. R. Evid. 802 ................................................................................. 17

DEFENDANT ERNST & YOUNG LLP'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION
Case No. 12-cv-04964-RMW (HRL)

1    I.   **INTRODUCTION**

2          The plaintiffs do not dispute, and therefore concede, that they agreed to arbitrate

3    any employment disputes against their former employer Ernst & Young LLP ("Ernst &

4    Young") pursuant to an agreement that provides that arbitration is the "sole method" for

5    resolving employment related disputes and that requires all claims to be arbitrated

6    individually, and not as class actions.  Nor do the plaintiffs dispute that all of their

7    claims fall within the scope of their agreements to arbitrate and that they never

8    attempted to resolve their claims through arbitration.

9          The plaintiffs, instead, urge this Court not to enforce those agreements.  They

10   contend that Ernst & Young has waived its right to arbitrate or that the agreements are

11   unenforceable for some public policy reason.  None of these arguments survives

12   scrutiny and none can avoid the "strong federal policy favoring arbitration," *Chiron*

13   *Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1128 (9th Cir. 2000), that "requires

14   courts to enforce agreements to arbitrate according to their terms," *CompuCredit Corp.*

15   *v. Greenwood*, 132 S. Ct. 665, 669 (2012).

16         *First*, neither Morris nor McDaniel can satisfy the "heavy burden" required to

17   establish a waiver of the right to arbitrate.  Ernst & Young has taken no action

18   inconsistent with its right to enforce the arbitration agreements—neither by seeking

19   (successfully) to transfer the lawsuits, nor by litigating a prior lawsuit against *different*

20   plaintiffs (the *Ho* consolidated action).  In addition, it is well-established that there can

21   be no waiver of the right to arbitrate unless the opponent of arbitration demonstrates

22   prejudice.  Neither Morris nor McDaniel has proffered any evidence of prejudice.

23         *Second*, the plaintiffs argue that the enforcement of the agreement's class waiver

24   provision would prevent them from bringing their claims because an individual action

25   would be prohibitively expensive.  This "vindication of rights" or "prohibitive costs"

26   defense, however, applies *only* when there are costs *unique to arbitration* that are so

27   high as to prevent plaintiffs from bringing claims to enforce their federal statutory

28   rights.  Here, because all the costs the plaintiffs allegedly will incur are potentially

                                        1

1   recoverable should they prevail—as provided for in the parties' agreement to arbitrate

2   and made absolutely clear by Ernst & Young's express stipulations (which the plaintiffs

3   ignore)—there are no costs unique to arbitration that could render arbitration

4   prohibitively expensive.  Nor does the plaintiffs' reliance on *Sutherland v. Ernst &*

5   *Young*—a decision by a court that was bound to follow Second Circuit law currently on

6   review to the Supreme Court and that contradicted a New York decision in a related case

7   (*Mansberger v. Ernst & Young*)—establish that arbitration would be prohibitively

8   expensive.  The Ninth Circuit, along with other courts of appeal and district courts in

9   this Circuit, has "soundly rejected" the plaintiffs' argument that an arbitration agreement

10  with a class waiver should not be enforced when claimed damages "are far too small to

11  justify the cost and risk of individual arbitration."  Dkt. 49 (Plaintiffs' Opposition

12  ("Opp.")) 19.  Moreover, even if the plaintiffs could establish a "prohibitive costs"

13  defense (which they cannot), it would apply *only* to McDaniel's federal claim (Morris

14  has none) and would not preclude the arbitration of the plaintiffs' state law claims.

15      *Third*, the plaintiffs argue that the Fair Labor Standards Act ("FLSA") contains a

16  substantive right to proceed in a collective action that cannot be waived.  But they

17  identify no language, nor legislative history, evincing such a congressional intent and

18  mischaracterize a procedural option as a substantive right.  Their reliance on a single

19  New York district court decision—when *all* other decisions are to the contrary—cannot

20  preclude the enforcement of their agreements to arbitrate.

21      *Fourth*, the plaintiffs argue that the enforcement of their agreement to arbitrate

22  would violate the National Labor Relations Act ("NLRA"), relying exclusively on *D.R.*

23  *Horton, Inc.*, 357 NLRB No. 184, 2012 WL 36274 (Jan. 3, 2012)—a two-member

24  decision of the National Labor Relations Board ("NLRB") that is currently on review to

25  the Fifth Circuit.  They urge this Court to defer to that "widely criticized" and rejected

26  administrative decision without pointing to any support in the NLRA (or the Norris-La

27  Guardia Act) for overriding the Federal Arbitration Act's ("FAA") mandate.

28      Therefore, because neither the plaintiffs' waiver argument nor any of the asserted

2

public policy reasons survives scrutiny, this Court is bound to direct the parties to proceed to arbitration in accordance with their agreements to arbitrate.

## II.   ARGUMENT

The FAA establishes "'a liberal federal policy favoring arbitration agreements'" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit*, 132 S. Ct. at 669 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011).  The FAA "'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Chiron*, 207 F.3d at 1130 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

### A.   Ernst & Young Did Not Waive Its Right To Compel Arbitration.

"[I]n light of the strong federal policy favoring enforcement of arbitration agreements," "[w]aiver of a contractual right to arbitration is not favored" and "any party arguing waiver of arbitration bears a heavy burden of proof."[1]  *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 693, 694 (9th Cir. 1986); *Shinto Shipping Co., Ltd. v. Fibrex & Shipping Co., Inc.*, 572 F.2d 1328, 1330 (9th Cir. 1978) (same); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").  A finding of waiver requires "the intentional relinquishment or abandonment of a known right." *Tamsco Properties, LLC v. Langemeier*, 2013 WL 246782, at *7 (E.D. Cal. Jan. 22, 2013) (citing *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 935 n.10 (9th Cir. 2009)).

---

[1] While the plaintiffs mention New York law, Opp. 11 & n.4, they nonetheless agree that the Ninth Circuit's standard for waiver of the right to arbitrate controls here.  Opp. 10 (citing *Van Ness v. Mar Indus. Corp.*, 862 F.2d 754 (9th Cir. 1989)).  It is well-settled that the FAA controls questions of waiver of the right to arbitrate. *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269-71 (9th Cir. 2002).

Accordingly, to prove a waiver of the right to arbitrate, the party opposing arbitration must show: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Fisher*, 791 F.2d at 694. The plaintiffs have not satisfied this heavy burden and, thus, there can be no waiver.

### 1. Ernst & Young Did Not Act Inconsistently With Its Right To Compel Arbitration.

The plaintiffs contend that Ernst & Young has acted inconsistently with its right to compel arbitration (1) by seeking to transfer this action and (2) by actions taken in *Ho* (in which neither Morris or McDaniel was a party). Neither contention has merit.

#### a. Ernst & Young Did Not Act Inconsistently With Its Right To Arbitrate By Seeking (Successfully) A Transfer To This Court.

It is well-established that first moving to transfer an action does not relinquish a party's right to compel arbitration. *E.g., Gonsalves v. Infosys Techs., Ltd.*, 2010 WL 3118861, at *3 n.2 (N.D. Cal. Aug. 5, 2010) ("A petitioning party does not waive its arbitration rights merely by seeking to change judicial venue of an action prior to requesting arbitration . . . [A] party is not required to litigate the issue of arbitration in an improper or inconvenient venue." (quotations omitted)); *Cohen v. UBS Fin. Servs., Inc.*, 2012 WL 6041634, at *6 (S.D.N.Y. Dec. 4, 2012) (determining successful motion to transfer venue did not waive right to compel arbitration); *see also Blau v. AT&T Mobility*, 2012 WL 566565, at *2 (N.D. Cal. Feb. 21, 2012) ("a party does not waive its right to arbitrate merely by filing a motion to dismiss").

Ernst & Young, in moving to transfer, made plain its intention to later move to compel arbitration by informing Morris and McDaniel at every step that it sought to arbitrate. Ernst & Young raised arbitration as a defense when it opposed Morris's motion to intervene in *Ho* (Declaration of Chris Petersen ("Petersen Decl.") ¶ 2, Exh. A, at 19-25) and in its answer to Morris's complaint (Dkt. 30 at 19); explained to Judge Wood that it would seek to compel arbitration after its transfer motion was decided (Dkt. 13 at 41:24-42:7); and reiterated its plan to compel arbitration in the transfer

4

1   motion itself (Dkt. 25 at 2 n.1).  There was thus no "intentional relinquishment or

2   abandonment" of Ernst & Young's right to arbitrate.  *Tamsco*, 2013 WL 246782, at *7.

3        The plaintiffs cite no authority to the contrary.  Instead, they point to arguments

4   Ernst & Young made in support of its motion to transfer—arguments Ernst & Young

5   was required to make in order to meet the requisite showing to justify a transfer—

6   regarding why the Northern District of California is a more appropriate venue than the

7   Southern District of New York, contending such arguments evince an intent to proceed

8   in court, as opposed to arbitration.  Opp. 12-13.  Yet the plaintiffs ignore Ernst &

9   Young's statements that it would seek to compel arbitration after a transfer and that it

10   did not waive its right to do so by seeking a transfer.  Ernst & Young knew that the

11   plaintiffs were likely to later oppose arbitration and so argued that California would be a

12   better forum—should the claims remain in court.  In ordering the transfer, Judge Wood

13   recognized that, in the event a motion to compel arbitration was later denied, California

14   was nonetheless a better forum than New York.  Dkt. 36.

15        As a last gasp, the plaintiffs—both of whom live in California and worked for

16   Ernst & Young here—argue that seeking a transfer was "forum shopping," and thus

17   inconsistent with the right to arbitrate, without citing any authority on point.  Opp. 16.

18   The only cases the plaintiffs cite (the vast majority of which are outside the Ninth

19   Circuit) involved instances in which a <u>plaintiff</u> filed a lawsuit without mentioning the

20   parties' arbitration agreement; a defendant removed the action to federal court before

21   asserting its arbitration defense; or a defendant moved to dismiss the action on other

22   grounds before asserting its right to compel arbitration.  Opp. 11 (citing cases).  None of

23   these facts are present here.  The sole Ninth Circuit case they cite, *Hill v. Blind*

24   *Industries and Services of Maryland*, 179 F.3d 754 (9th Cir. 1999), is inapposite, as it

25   relates to a defendant's waiver of Eleventh Amendment immunity (a defense waived

26   unless timely asserted) by waiting until the first day of trial to assert it.

27        Ernst & Young's motion to transfer was neither a conscious choice of litigation, as

28   opposed to arbitration, nor inconsistent with its right to arbitrate.

1

b. Ernst & Young Did Not Act Inconsistently With Its Right To Arbitrate By Actions It Took In *Ho*.

2

3    The plaintiffs contend that Ernst & Young acted inconsistently with its right to

4  compel *Morris and McDaniel* to arbitrate their claims by not moving to compel

5  Richards and Fernandez to arbitrate in *Ho* until after *Concepcion* rendered those

6  agreements to arbitrate enforceable—a decision this Court determined was a waiver of

7  Ernst & Young's right to arbitrate, a ruling on appeal to the Ninth Circuit. The plaintiffs

8  argue that a waiver as to a named plaintiff constitutes a waiver as to all putative class

9  members. Opp. 14. These meritless contentions do not satisfy their heavy burden.

10    It is well-settled that a defendant "cannot move to compel arbitration against

11  putative class members prior to certification of a class." *Laguna v. Coverall North*

12  *America, Inc.*, 2011 WL 3176469, at *8 (S.D. Cal. July 26, 2011). Putative class

13  members are "not parties" and, thus, "their claims are not at issue." *Mora v. Harley-*

14  *Davidson Credit Corp.*, 2012 WL 1189769, at *15 (E.D. Cal. Apr. 9, 2012); *see also*

15  *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011) (recognizing putative class members

16  are not parties to litigation, especially prior to a decision on certification). A defendant

17  "does not have a right to compel arbitration against [putative] class members prior to

18  class certification." *Mora*, 2012 WL 1189769, at *15. Thus, a defendant does not act

19  inconsistently with its right to arbitrate by not moving to compel arbitration against

20  putative class members. *E.g., id.*; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL

21  1753784, at *4 (N.D. Cal. May 9, 2011); *Laguna*, 2011 WL 3176469, at *8.

22    Ernst & Young therefore cannot have acted inconsistently with its right to compel

23  the arbitration of *Morris's and McDaniel's* claims by any actions taken in *Ho* because

24  Morris and McDaniel were merely putative class members and Ernst & Young did not

25  have any obligation, let alone the ability, to move to compel them to arbitrate.

26    Nor does the waiver ruling in *Ho*—currently on appeal to the Ninth Circuit—

27  "amount[] to waiver of arbitration as to all class members." Opp. 14. This action is not

28  an "extension" of *Ho*, as the plaintiffs' incorrectly contend, *id.* Morris and McDaniel

6

were only putative class members in *Ho* and thus not "part[ies]"—neither before nor after certification was denied. *Bayer Corp.*, 131 S. Ct. at 2379.  This is a separate action.  It is elementary that a ruling in one action cannot be binding in a separate action without, among other things, the party relying on that ruling demonstrating that the issue in the subsequent action is "*identical* to an issue litigated in a previous action." *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995) as amended 75 F.3d 1391 (1996) (emphasis added).  Such a showing is impossible here because the waiver ruling in *Ho*, as this Court acknowledged, turned on facts that were unique to the parties asserting a waiver in that case.  Petersen Decl. ¶ 7, Exh. E (finding Ho and Fernandez proved *they* were prejudiced).

Moreover, any decision Ernst & Young has made regarding the enforcement of other agreements to arbitrate does not impact its rights under Morris's and McDaniel's agreements.  Any rule that would hold a company's decision regarding arbitration in one case against it in another case would lead to the absurd result whereby a corporate entity could forever waive its right to arbitrate.  Such a rule, besides being harsh and unprecedented, would simply be unworkable.  *Cf. Mitroff v. United Servs. Auto Assn.*, 72 Cal. App. 4th 1230, 1243 (1999) (evidence of another litigation against corporate defendant inadmissible because it would require "a detailed inquiry into the facts and contentions of the parties in each of the other cases").

> c. Ernst & Young Did Not Act Inconsistently With Its Right To Arbitrate Morris's Claims By Not Initiating Some Action Against Morris When He Submitted A Declaration In *Ho*.

Morris argues without any support that Ernst & Young had some obligation to take some action against him—such as initiate mediation, the first phase of the Common Ground Program (the "Program")—once he testified (in a declaration and deposition) in support of class certification in *Ho*.[2]  Opp. 15.  There is no such requirement.

The parties' agreement provides that *the party initiating a dispute* must follow the steps outlined in the Program, beginning with mediation.  Ernst & Young did not bring

---

[2] McDaniel does not make this argument, as she submitted no declaration in *Ho*.

any claims against Morris, and thus never had an obligation to invoke mediation. Once
Morris filed his own lawsuit ignoring *his* obligation to first comply with the terms of the
Program, Ernst & Young had the option "to proceed directly to Phase II [arbitration] or
to seek an order requiring the party who filed the lawsuit to satisfy the requirements of
the Program." Dkt. 42, Hodapp Decl., Exh. C, ¶ IV.B. Ernst & Young chose to proceed
directly to arbitration, in full compliance with the terms of the Program and, thus, its
right to arbitrate under that agreement.

Moreover, Morris, in his declaration, expressly stated that he would *consider*
bringing a lawsuit against Ernst & Young "if" a class were not certified. Petersen Decl.
¶ 3, Exh. B, ¶ 1. Later, at his deposition, Morris stated that he did not intend to bring a
lawsuit against Ernst & Young, even if certification were denied. *Id.*, ¶ 4, Exh. C
(Morris Depo. Tr., 23:13-23). Whatever his plans, Morris himself recognized that, until
he filed suit in New York, he had not initiated any claim against Ernst & Young. And
there was no guarantee he would ever do so. Indeed, the plaintiffs in *Ho* produced
declarations from 13 other putative class members, none of whom ever filed a claim
against Ernst & Young, in arbitration or in court. Petersen Decl. ¶ 4. Ernst & Young did
not act inconsistently with its right to arbitrate by waiting for Morris to file a claim.[3]

Accordingly, at no time, did Ernst & Young act inconsistently with its right to
arbitrate Morris's and McDaniel's claims.

> 2.     The Plaintiffs Cannot Establish Prejudice.

There can be no waiver of a right to compel arbitration unless the party arguing
waiver proves that it was prejudiced. *Shinto Shipping*, 572 F.2d at 1330; *Lake
Commc'ns., Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir. 1984) ("More is required
than action inconsistent with an arbitration provision; prejudice to the party opposing
arbitration must also be shown."), overruled on other grounds by *Mitsubishi Motors
Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 632-35 (1985); *see also Rush v.*

---

[3] Morris's 2008 declaration did not make "it absolutely clear" that he had a dispute with Ernst &
Young (Morris Decl. In Support Of Opp., ¶ 4)—far from it. It merely described his job duties to
support the motion in for class certification. Petersen Decl. ¶ 3, Exh. B at ¶¶ 2-6.

*Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985)  ("Given th[e] dominant federal policy favoring arbitration, waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated.").

Costs and expenses incurred in litigating claims are insufficient to establish prejudice. *Fisher*, 791 F.2d at 697 (no prejudice despite "time, money, and effort" responding to pretrial motions, preparing for trial, and conducting "extensive discovery" during three and a half years of litigation); *see also Park Place Assocs.* 563 F.3d at 921 (no prejudice despite "extreme burdens of discovery, which were disproportionately imposed on [the plaintiff]").  When a plaintiff is a party to a mandatory arbitration agreement but nonetheless pursues arbitrable claims in court, any such "wound[s]" are "self-inflicted. *Fisher*, 791 F.2d at 698.  "Any extra expense incurred as a result of the [plaintiff's] deliberate choice of an improper forum, in contravention of [the] contract, cannot be charged to [the defendant]." *Id.*; *see also Britton v. Co-op Banking Group*, 916 F.2d 1405, 1413 (9th Cir. 1990) (holding plaintiff's costs in litigating for two years, instead of pursuing arbitration, "should not count" in determination of prejudice).

Here, given the very early stage of this action, the plaintiffs cannot demonstrate any prejudice should they now be compelled to arbitrate.  Ernst & Young has not served any discovery or made any motions as to the merits of the plaintiffs' claims.  And, to the extent the plaintiffs have incurred costs during their limited time litigating in court—since early 2012 (far less than the three and half years of "extensive" discovery and motion practice that the Ninth Circuit held did *not* suffice to prove prejudice in *Fisher*, 791 F.2d at 697)—such costs were "self-inflicted," *id.* at 698.  The plaintiffs chose to pursue their claims in litigation, rather than in arbitration as mandated by their agreements, and, thus, litigated at their peril.  Any expense in opposing the motion to transfer also fails to prove prejudice because Ernst & Young had every right to seek a transfer before moving to compel arbitration.

The discovery and motion practice that the plaintiffs rely on to argue prejudice, Opp. 11-12, did not occur in this action.  It was addressed to the plaintiffs in *Ho*—*not*

9

*Morris or McDaniel.* Even if such actions could establish prejudice (which they do not, *Fisher*, 791 F.2d at 696-98; *Park Place Assocs.*, 563 F.3d at 921), they do not here.[4]

Because Ernst & Young did not act inconsistently with its right to arbitrate (neither in seeking a transfer to this Court nor in actions taken in *Ho*) and also because the plaintiffs have not proffered any evidence of prejudice, the plaintiffs have not proved that Ernst & Young waived its right to arbitrate.

### B. Arbitration Is Not Prohibitively Expensive, And, Thus, Could Not Prevent Morris And McDaniel From Pursuing Their Claims.

The plaintiffs seek to avoid their agreements to arbitrate by arguing that the cost of proceeding in individual arbitration is "so high that 'individual arbitration would not allow the participants to 'effectively vindicate [their] statutory rights.'" Opp. 3 (quoting *Sutherland v. Ernst & Young, LLP*, 768 F. Supp. 2d 547, 549 (S.D.N.Y. 2011)). This defense to arbitration necessarily fails, however, because—as made plain by Ernst & Young's express stipulations, which the plaintiffs ignore—there will be no costs unique to arbitration whatsoever, let alone costs that could render arbitration prohibitively expensive. And, the plaintiffs' argument that "the claims of the Plaintiffs are far too small to justify the cost and risk of individual arbitration," Opp. 19, is based solely on Second Circuit precedent and has been "soundly rejected" by the Ninth Circuit as inconsistent with Supreme Court authority.

> ### 1. Arbitration Is Not Prohibitively Expensive Because Ernst & Young Has Agreed To Pay All Arbitration Costs And The Plaintiffs Are Entitled To Recover Their Attorney's Fees And Costs (Including Their Estimated Expert Fees).

The plaintiffs' "vindication of rights" or "prohibitive costs" defense, as they acknowledge (Opp. 17, 22), stems from the Supreme Court's decision in *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79 (2000).

---

[4] There is no merit to the plaintiffs' contention that Ernst & Young could have learned something in *Ho* that it could not have learned in the arbitration of Morris's and McDaniel's claims. Opp. 15-16. The arbitration agreements permit depositions of the plaintiffs and fact witnesses; written and expert discovery; and dispositive motions. Dkt. 42, Hodapp Decl., Ex. C, ¶ IV.L. Nor does the fact that arbitration will be confidential (Opp. 5) make any difference, as much of the discovery produced in the *Ho* litigation was subject to a protective order and thus similarly restricted.

Although *Green Tree* acknowledged that a legitimate reason to deny arbitration may exist if a party would "be saddled with prohibitive [arbitration] costs," 531 U.S. at 90-92 (even though it ultimately decided that the risk of such costs in that case was "too speculative to justify the invalidation of the arbitration agreement"), the Supreme Court made clear that "[the] party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring [prohibitive] costs," *id.* at 92.

The party opposing arbitration thus "must provide some *individualized evidence* that it likely will face prohibitive costs in the arbitration at issue *and* that it is financially incapable of meeting those costs." *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003) (emphasis added); *see also Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 557 (4th Cir. 2001) (recognizing *Green Tree* requires a "showing of individualized prohibitive expense").

### d. Because McDaniel Has Offered No Evidence Of "Prohibitive" Costs, Her Defense Fails For This Reason Alone.

McDaniel has made not met her burden under *Green Tree*. Although her attorney submitted his estimate as to the costs required to pursue her claims (which are the same costs he estimates are needed for Morris's claims), McDaniel has not submitted any evidence demonstrating that such costs are "prohibitive" or that she "is financially incapable of meeting those costs." *Livingston*, 339 F.3d at 557. Without such evidence, her argument for invalidating her arbitration agreement necessarily fails. *See, e.g., id.* (reversing denial of motion to compel arbitration where plaintiffs offered only "unsubstantiated and vague assertion[s]" as to arbitration costs and no evidence of their inability to pay); *Bradford*, 238 F.3d at 558 (holding arbitration agreement enforceable where plaintiff "failed to demonstrate any inability to pay the arbitration fees and costs, much less prohibitive financial hardship, to support his assertion that the fee-splitting provision deterred him from arbitrating his statutory claims"). McDaniel thus cannot avoid her agreement to arbitrate.

e. Neither Plaintiff Has Shown That The Cost Of Arbitration Would Be "Prohibitive."

The plaintiffs cannot satisfy their burden under *Green Tree* because the parties' agreements to arbitrate and Ernst & Young's stipulations regarding costs preclude any possibility that the arbitration will be prohibitively expensive.

In *Green Tree*, the Supreme Court was concerned regarding whether an agreement imposed costs *unique to arbitration* that would effectively preclude access to that forum. *Green Tree*, 531 U.S. at 522; *see also Bradford*, 238 F.3d at 556 (*Green Tree* inquiry "evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation" and examines "the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims"); *Kaltwasser v. AT&T Mobility LLC*, 812 F. Supp. 2d 1042, 1049-50 (N.D. Cal. 2011) (*Green Tree* inquiry "confined to circumstances in which a plaintiff argues that costs specific to the arbitration process, such as filing fees and arbitrator's fees, prevent her from vindicating her claims"); *Hendricks v. AT&T Mobility, LLC*, 823 F. Supp. 2d 1015, 1021-22 (N.D. Cal. 2011) (same).

A defendant's agreement to pay all costs of arbitration "forecloses the possibility that [the plaintiff] could endure any prohibitive costs in the arbitration process." *Livingston*, 339 F.3d at 557 (holding plaintiff could not satisfy *Green Tree* showing where defendant had agreed to pay all costs of arbitration); *see also Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 300 (5th Cir. 2004) (holding *Green Tree* argument "mooted by [defendant's] representation to the district court that it would pay all arbitration costs"); *Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 56-57 (1st Cir. 2002) (holding "no such [*Green Tree*] showing is possible because [defendant] has agreed to cover the costs of arbitration, thus "moot[ing] the issue of arbitration costs").

Although the plaintiffs argue at length their concern that they "may have to share the expenses of the arbitration" because the agreement "does not provide for mandatory

1  fee shifting," Opp. 8-9, 21-22, they ignore the fact that Ernst & Young <u>expressly</u>

2  <u>stipulated</u> to the fee-shifting that the plaintiffs seek in its motion to compel arbitration:

> Although the Program clearly provides for the same award of fees and costs as is available in court, to remove any conceivable doubt, Ernst & Young hereby stipulates that plaintiffs are entitled to recover in arbitration any fees and costs that they could recover in court if they prevail on their individual claims. Ernst & Young further stipulates that it will bear all administrative costs and arbitrator fees.

7  Dkt. 42 (Motion ("Mot.")) 2.

8       The plaintiffs have asserted claims for allegedly unpaid overtime wages under the

9  FLSA and California law, both of which provide for the recovery of attorney's fees and

10  costs as a matter of right for a prevailing plaintiff. 29 U.S.C. § 216(b); Cal. Lab. Code

11  § 1194; *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 261 n.34 (1975)

12  (attorney's fees "mandatory" under the FLSA); *Harrington v. Payroll Entm't Svcs., Inc.*,

13  160 Cal. App. 4th 589, 594 (2008) (recovery of attorney's fees and costs "a matter of

14  right" for prevailing plaintiff). Thus, there is no risk that fees will not be shifted should

15  the plaintiffs prevail, as they incorrectly contend, Opp. 8-10. To the extent there was

16  any ambiguity in the agreement (which there was not), Ernst & Young has now made

17  this crystal clear. The plaintiffs can recover fees and costs in arbitration just as they

18  would be able to do in court.

19       The plaintiffs' contention that there is a "significant risk that all costs and fees

20  will not be shifted" is entirely unfounded. Opp. 21-22. *First*, any issue as to whether

21  mediation fees would be shifted (*id.* at 21), is irrelevant because mediation fees are not

22  at issue here, only arbitration. *Second*, as to the recovery of expert fees (*id.*), Ernst &

23  Young, to remove any doubt as to whether these costs would be recoverable, stipulates

24  that, should the plaintiffs prevail, they may recover any expert fees reasonably necessary

25  to prosecute their individual claims, up to the $33,500 estimated by the proposed

26  expert.[5] *Third*, there is no support for the plaintiffs' contention that fee-shifting would

---

27  [5] In support of their argument, the plaintiffs submit the expert declaration from *Sutherland*,

28  claiming the same cost for putting together the same report. The plaintiffs have also given no reason why they need such testimony to prove their individual claims—all of which must be determined by

13

be left up to the discretion of the arbitrator. *Id*. The arbitrator is obligated to follow the law on the recovery of attorney's fees and costs, Dkt. 42, Hodapp Decl., Ex. C ¶ IV.P (providing for reimbursement of fees "in accordance with applicable law"); Mot. 2 (stipulating that the plaintiffs are entitled to fees and costs they "could recover in court"), and, as discussed above, both the FLSA and California law mandate the recovery of attorney's fees and costs for prevailing plaintiffs.

The plaintiffs thus cannot satisfy their burden under *Green Tree* because the parties' agreement to arbitrate and Ernst & Young's stipulations preclude any possibility that arbitration will be prohibitively expensive.

    2.    <u>The Ninth Circuit Has "Soundly Rejected" The Second Circuit's</u><br><u>Approach In *American Express*—Currently On Review In The Supreme</u><br><u>Court—That The Plaintiffs Urge This Court To Follow.</u>

The plaintiffs contend that (regardless of fee-shifting) arbitration would nonetheless be prohibitively expensive because the size of their claims (which they allege to be $17,642.97 for Morris and $28,805.19 for McDaniel, Opp. 5) "are far too small to justify the cost and risk of individual arbitration." *Id*. at 19. This argument— that pursuing claims as an individual, rather than as part of a class, is prohibitively expensive because the potential cost of proving the claim may exceed individual damages—is based solely on Second Circuit authority (currently being reviewed by the Supreme Court) and has been squarely rejected by the Ninth Circuit.

The plaintiffs urge this Court to follow the district court's decision in *Sutherland*, Opp. 18-19, a decision in which the district court was bound to follow Second Circuit precedent—precedent that is now on review to the Supreme Court—and which itself has been appealed. The district court in *Sutherland* refused to enforce the parties' agreement to arbitrate under the prohibitive costs doctrine set forth in *American*

---

examining actual job characteristics and duties, not by expert analysis. *Campbell v. PricewaterhouseCoopers, LLP*, 642 F.3d 820, 822 (9th Cir. 2011) (holding unlicensed accountants not categorically ineligible for California overtime exemptions; eligibility determined by inquiry into job duties); *Vinole v. Countrywide Home Loans, Inc*., 571 F.3d 935, 947 (9th Cir. 2009) (affirming refusal to allow expert testimony to prove FLSA and state law exemption claims, as it was "not certain" that it "would actually assist the court" since plaintiffs' claims "require a fact-intensive, individual analysis of each employee's exempt status").

DEFENDANT ERNST & YOUNG LLP'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION<br>Case No. 12-cv-04964-RMW (HRL)

1  *Express*, reasoning that Sutherland's claimed damages ($1,867.02) were too small to

2  justify an outlay of expenses that might not be fully recoverable should she prevail.[6]

3  The plaintiffs ignore, however, another decision in a related case—*Mansberger v. Ernst*

4  *& Young*—that enforced the plaintiff's agreement to arbitrate and rejected his argument

5  that "the relatively high cost of bringing such actions compared to the relatively small

6  recoveries." Petersen Decl., ¶ 6, Exh. D (7/1/11 order at 5).

7      In *American Express*, the Second Circuit invalidated an arbitration agreement

8  with a class waiver provision because the plaintiffs demonstrated that they could not

9  bring their federal statutory claims without a class proceeding. The Second Circuit

10 concluded that the class waiver would prevent plaintiffs from pursuing their federal

11 statutory claims because "the record evidence before [the court] established, as a matter

12 of law, that the cost . . . would be prohibitive." *Amex III*, 667 F.3d at 212. Because

13 expert evidence established that the prosecution of the individual Sherman Act claims

14 (for which they sought a median recovery of $1,751 each) would require an economic

15 antitrust study that would cost "at least several hundred thousand dollars" and could

16 "exceed $1 million"—expenses that would be largely unrecoverable if the plaintiffs

17 prevailed—the "only economically feasible means" for the plaintiffs to enforce their

18 rights was through a class action. *Id.* at 218 (emphasis added); *Amex I*, 554 F.3d at 316.

19      The Ninth Circuit has neither "approved" nor "applied" the Second Circuit's

20 analysis in *American Express* or *Sutherland*, as the plaintiffs incorrectly contend.[7] Opp.

21 3, 17. To the contrary, the Ninth Circuit has expressly held that the argument that "the

22 claims at issue in this case cannot be vindicated effectively because they are worth much

23 less than the cost of litigating them" (the same argument the plaintiffs make here, Opp.

24 18-19) cannot invalidate an agreement to arbitrate because *Concepcion* "rejected that

---

[6] *In re Am. Express Merchants' Litig.*, 554 F.3d 300 (2d Cir. 2009) ("*Amex I*"), *aff'd after remand*, 634 F.3d 187 (2d Cir. 2011), *aff'd*, 667 F.3d 187 (2d Cir. 2012) ("*Amex III*"), *cert. granted*, 133 S. Ct. 594 (2012) (collectively, "*American Express*").

[7] The plaintiffs' assertion that the conclusion of the district court in *Sutherland*, applying Second Circuit law, could be "collateral estoppel" (Opp. 10), is thus specious.

15

1  premise." *Coneff v. AT&T Corp.*, 673 F.3d 1155, 1159 (9th Cir. 2012); *see also Jasso v.*
2  *Money Mart Exp., Inc.*, 879 F. Supp. 2d 1038, *6-7 (N.D. Cal. 2012) ("[T]o the extent
3  that [*American Express*'s] holding rested on the principle that a class waiver should be
4  unenforceable where the amounts at issue in the claims and the expense of prosecuting
5  the claims would effectively preclude vindication of statutory rights, that argument has
6  been soundly rejected by the Ninth Circuit. . . .).

7        In any event, because there can be no dispute here that the plaintiffs have the
8  potential to be <u>fully compensated</u> for their costs of bringing suit, their claims are unlike
9  those in *American Express*—and more like numerous cases that have enforced class
10 action waivers in arbitration agreements where attorney's fees and costs are recoverable.
11 *E.g.*, *Coneff*, 673 F.3d at 1159 (rejecting argument that small-dollar claims could not be
12 vindicated effectively without class treatment where arbitration agreement had "a
13 number of fee-shifting and otherwise pro-consumer provisions"); *Garcia v. Dell, Inc.*,
14 2012 WL 5928132, at *5 (S.D. Cal. Nov. 13, 2012) (enforcing arbitration agreement
15 with class waiver and rejecting contention that cost of litigating claim—nearly $30,000,
16 when plaintiff sought only $5,000 damages—made individual arbitration prohibitively
17 expensive because "whether the Plaintiff has proper economic incentive alone cannot
18 undermine the FAA and is not reason enough to deem the arbitration agreement
19 unenforceable"); *see also Cruz v. Cingular Wireless*, 648 F.3d 1205, 1215 (11th Cir.
20 2011) (rejecting prohibitive-costs defense where arbitration agreement contained
21 provisions that "essentially guaranteed [plaintiffs] to be made whole" (quotations
22 omitted)); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638-39 (4th Cir. 2002)
23 (rejecting argument that plaintiff could not maintain action for small individual damages
24 without class proceeding as "unfounded" because statutory claims specifically provided
25 for recovery of fees); *Pleasants v. Am. Express Co.*, 541 F.3d 853, 857-59 (8th Cir.
26 2008) (enforcing class waiver where amount in controversy was less than $100 because
27 provision for recovery of fees, costs, and statutory damages allowed for vindication of
28 statutory rights); *Livingston*, 339 F.3d at 557 (enforcing arbitration agreement with class

16

1    waiver because plaintiffs could recover attorney's fees if they prevailed and defendant's

2    agreement to pay all arbitration fees "foreclose[d] the possibility that the [plaintiffs]

3    could endure any prohibitive costs in the arbitration process").

4         Indeed, because the recovery of reasonable attorney's fees and costs is mandatory

5    for a prevailing plaintiff, plaintiffs routinely file individual overtime claims for damages

6    comparable to (or even far less than) what Morris and McDaniel have asserted here.

7    *See, e.g., Eicher v. Advanced Bus. Integrators, Inc.*, 151 Cal. App. 4th 1363, 1382-83

8    (2007) (affirming overtime wage recovery of $46,617); *Brewer v. Premier Golf*

9    *Properties*, 168 Cal. App. 4th 1243, 1246, 1257 (2008) (affirming single plaintiff's

10   award of approximately $26,000); *Zhou v. Wang's Rest.*, 2007 WL 134441, at *6-7 (N.D.

11   Cal. Jan. 16, 2007) (single plaintiff awarded approximately $525 on FLSA claim); *see*

12   *also Gentry v. Superior Court*, 42 Cal. 4th 443, 462 (2007) (noting that "some 40

13   published cases over the last 70 years in California have involved individual employees

14   prosecuting overtime violations without the assistance of class litigation or arbitration").

15        In light of this overwhelming authority, the plaintiffs' submission of a declaration

16   from their attorney stating that he would not represent them on an individual basis and

17   that he did not know of another lawyer who would "under such circumstances," Dkt. 50,

18   Folkenflik Decl. ¶ 43, does not establish that no reasonable lawyer would do so.[8] By

19   authorizing the recovery of fees and costs, the FLSA and California law provide

20   plaintiffs "with effective access to the judicial process" and ensure that there are lawyers

21

---

22   [8] Ernst & Young objects to the portions of Folkenflik's declaration offering his own views "based
     on his experience" about: (1) whether arbitration would be prohibitively expensive (¶ 27:12-13); (2)

23   whether arbitrators would shift attorney's fees or costs or expert witness fees (¶ 47:1-11); and (3)
     whether another attorney would represent the plaintiffs in individual actions (¶ 43:5-8). Whether

24   arbitration would be "prohibitively expensive" is a legal conclusion that cannot be contained in a
     supporting declaration. *Wicker, v. Oregon ex rel. Bureau of Labor*, 543 F.3d 1168, 1177 (9th Cir. 2008)

25   (barring attorney declaration stating legal conclusion). Out-of-court statements about the "experience
     of arbitrators and attorneys with whom" Folkenflik has discussed the matter and about whether another

26   attorney might represent the plaintiffs are inadmissible hearsay.  F. R. Evid. 802. These statements also
     constitute unsubstantiated speculation. *Wicker*, 543 F.3d at 1177-78 (barring attorney declaration

27   "contain[ing] improper speculation about the judge's understanding of the case"). The statements also
     lack foundation because Fokenflik does not have personal knowledge of the experiences of other

28   attorneys or arbitrators.  F. R. Evid. 602.

willing to represent plaintiffs in the vindication of their rights. *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 878 (11th Cir. 2005) (quotations omitted).

Because the plaintiffs have failed to identify any costs—let alone *prohibitive* costs—that might prevent them from prosecuting their individual claims in arbitration, this defense to enforcement of their agreements to arbitrate necessarily fails.

**C.   In The Alternative, The "Prohibitive Costs" Defense Applies Only To Plaintiffs' Federal Law Claims, Not Their State Law Claims.**

Even if the plaintiffs could show that pursuing their FLSA claims in individual arbitration would be cost-prohibitive (which they cannot), that showing would not preclude the arbitration of their California law claims.[9]

The plaintiffs do not dispute that all Supreme Court authority regarding the vindication of rights doctrine pertains only to rights arising under federal law.  Opp. 22. As the Ninth Circuit in *Coneff* held, "*Mitsubishi, Gilmer, Green Tree* and similar decisions are limited to federal statutory rights."  673 F.3d at 1159 n.2.  *Coneff* is supported by a plain reading of *Green Tree* which refers expressly to arbitration costs that "could preclude a litigant . . . from effectively vindicating her *federal* statutory rights."  531 U.S. at 90 (emphasis added).  The Court also states that "the party seeking to avoid arbitration bears the burden of establishing that *Congress* intended to preclude arbitration of the statutory claims at issue."  *Id.* at 92 (emphasis added).

Other courts considering the arbitration of state law claims have also held a vindication of statutory rights defense inapplicable.  *E.g.*, *Stutler v. T.K. Constructors Inc.*, 448 F.3d 343, 346 (6th Cir. 2006) (holding plaintiffs asserting only state law claims could rely only upon state law contract defenses in challenging the arbitration agreement, not the federal common law vindication of rights defense); *see also Pro Tech*

---

[9] Morris's FLSA claim is time-barred.  As alleged in his complaint, Morris stopped working for Ernst & Young in February 2007, roughly five years before he commenced this action.  The FLSA requires an action be commenced within three years of when the cause of action accrued.  29 U.S.C. § 255(a); Dkt. 1 ¶¶ 1, 12.  Morris has implicitly conceded that his FLSA claims are time-barred by adding McDaniel as a plaintiff only after being told that his FLSA claims were time-barred.  Thus, Morris has *only* state law claims, to which the vindication of rights doctrine does not apply.

18

1 | *Indus., Inc. v. URS Corp.*, 377 F.3d 868, 873 (8th Cir. 2004) (holding *Green Tree*

2 | inapplicable to state law claims because "[i]n *Green Tree*, the Supreme Court addressed

3 | arbitration of federal statutory claims"); *Amex III*, 667 F.3d at 215 (describing

4 | *Mitsubishi*'s rule as one "regarding the arbitrability of federal statutory claims"); *Brown*

5 | *v. Wheat First Sec., Inc.*, 257 F.3d 821, 825-26 (D.C. Cir. 2001) (declining to apply

6 | defense to state law claim); *Clemins v. GE Money Bank*, 2012 WL 5868659, at *5 (E.D.

7 | Wis. Nov. 20, 2012) ("The *Green Tree* reasoning does not appear to apply to state law

8 | claims because state laws cannot limit the scope of the FAA.").[10]

9 |     Plaintiffs argue that because the Ninth Circuit granted rehearing en banc in

10 | *Kilgore v. KeyBank, NA*, 673 F.3d 947 (9th Cir. 2012), whether the vindication of rights

11 | defense applies to state law claims is unsettled in the Ninth Circuit.  Not so.  It is true

12 | that *Kilgore* acknowledged that the vindication of rights doctrine "applies only to

13 | federal statutory claims," *id.* at 961, but *Coneff* clearly holds that the defense was

14 | applicable only to federal statutory rights, 673 F.3d at 1159 n.2, and *Coneff* remains the

15 | law of this circuit.  Moreover, *Kilgore* involved a different issue, specifically, whether in

16 | light of *Concepcion* the FAA "preempts California's state law rule prohibiting the

17 | arbitration of claims for broad, public injunctive relief."  673 F.3d at 951.

18 |     Finally, the plaintiffs argue that the vindication of rights defense should apply to

19 | state law claims because the agreement is "unenforceable as to the State law claims as

20 | against state law public policy."  Opp. 24-25 (citing *Brady v. Williams Capital Group,*

21 | *L.P.*, 14 N.Y.3d 459 (2010) and *Gentry v. Superior Court*, 42 Cal. 4th 443 (2007)).

22 |     The FAA nonetheless requires enforcement of the agreement to arbitrate.

23 | "Although § 2's saving clause preserves generally applicable contract defenses, nothing

24 | in it suggests an intent to preserve state-law rules that stand as an obstacle to the

25 |

---

26 | [10] *But see Kristian v. Comcast Corp.*, 446 F.3d 25, 29 (1st Cir. 2006) (invalidating provisions of arbitration agreement barring recovery of fees and costs and barring class arbitration "because they

27 | prevent the vindication of statutory rights under state and federal law," but without specifically addressing whether prohibitive-costs defense is applicable to state statutory claims); *Booker v. Robert*

28 | *Half Int'l, Inc.*, 413 F.3d 77, 79-81 (D.C. Cir. 2005) (applying *Green Tree* to state statutory rights without considering whether *Green Tree* limited to federal statutory rights).

1   accomplishment of the FAA's objectives." *Concepcion*, 131 S. Ct. at 1748.  Because the

2   state public policy that the plaintiffs rely upon is not a "generally applicable contract

3   defense," it is preempted by the FAA.[11]

4        Therefore, even if the vindication of rights defense were applicable and satisfied

5   (which it is not), it would not preclude the arbitration of the plaintiffs' state law claims.

6        **D.    The FLSA Does Not Render The Agreements To Arbitrate Unenforceable.**

7        The plaintiffs further challenge the enforcement of their arbitration agreements by

8   contending that the FLSA provides a "substantive right to [a] collective action" that

9   cannot be waived.  Opp. 30.  This public policy defense—one that has been

10  resoundingly rejected—finds no support in the FLSA.

11       As the Supreme Court recently reaffirmed, courts must "enforce agreements to

12  arbitrate according to their terms," "unless the FAA's mandate has been overridden *by a*

13  *contrary congressional command*." *CompuCredit*, 132 S. Ct. at 669 (quotations

14  omitted, emphasis added).  The plaintiffs, as the parties seeking to avoid arbitration bear

15  the burden of demonstrating that Congress intended to preclude arbitration agreements

16  waiving class actions in the FLSA.  *Id.* at 675 (Sotomayor, J., concurring) (reasoning

17  that since competing interpretations of federal statute were in "equipoise," proponents

18  of arbitration must "prevail," because opponents "bear the burden of showing that

19  Congress disallowed arbitration of their claims, and because [courts] resolve doubts in

20  favor of arbitration").  The plaintiffs fail to identify any such command in the FLSA.

21       Instead, the plaintiffs rely on a single New York district court case (which is

22  currently on appeal to the Second Circuit and which other New York district court

23  judges have declined to follow), while ignoring the fact that "all of the . . . courts of

24  _____

25  [11] The plaintiffs argue that the *Brady* or *Gentry* rules "are applied on a case by case basis" and thus
    do not conflict with *Concepcion* and are not preempted by the FAA.  Opp. 25.  They are wrong.  In

26  *Concepcion*, the Supreme Court struck down California's *Discover Bank* rule, notwithstanding the fact
    that it did "not hold that all class action waivers are necessarily unconscionable" and instead purported

27  to require a fact-specific analysis.  *Discover Bank v. Super. Ct.*, 36 Cal. 4th 148, 162 (2005).  The
    Supreme Court concluded that *Discover Bank*, in spite of its apparent "case-by-case approach,"

28  effectively required "inevitable class arbitration" or no arbitration at all.  *Concepcion*, 131 S. Ct. at
    1750.

1  appeals that have considered this issue [have] concluded that arbitration agreements

2  containing class waivers are enforceable in FLSA cases."[12]  *Owen v. Bristol Care, Inc.*,

3  702 F.3d 1050, 2013 WL 57874, at \*4 (8th Cir. Jan. 7, 2013) (emphasis added); *see, e.g.*,

4  *Horenstein v. Mortgage Mkt., Inc.*, 9 F. App'x 618, 619 (9th Cir. 2001) (enforcing class

5  action waiver in FLSA case and recognizing that "[a]lthough plaintiffs who sign

6  arbitration agreements lack the procedural right to proceed as a class, they nonetheless

7  retain all substantive rights under the statute"); *Caley v. Gulfstream Aerospace Corp.*,

8  428 F.3d 1359, 1378 (11th Cir. 2005) (holding arbitration agreement's prohibition of

9  "'certain litigation devices,'" including class actions, "consistent with the goals of

10  'simplicity, informality, and expedition'" in arbitration (quoting *Gilmer v.*

11  *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)); *Carter v. Countrywide Credit*

12  *Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) (holding inability to proceed collectively

13  in arbitration does not deprive plaintiffs of substantive right under the FLSA); *Adkins v.*

14  *Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) (holding there is "no suggestion in

15  the text, legislative history, or purpose of the FLSA that Congress intended to confer a

16  nonwaivable right to a class action under that statute" and enforcing arbitration

17  agreement's class waiver); *see also Lu v. AT&T Services, Inc.*, 2011 WL 2470268, at \*3

18  (N.D. Cal. June 21, 2011) ("Because the right to proceed on a collective basis [under

19  Section 216(b)] implicates an employee's procedural, as opposed to substantive rights, a

20  collective action waiver contained in severance agreement is enforceable.").

21      In *Owen*, the Eighth Circuit rejected the argument that the FLSA's collective

22  action provision precludes class waivers, determining that "the FLSA contains no

23  'contrary congressional command' as required to override the FAA."  2013 WL 57874,

24  at \*2. The court considered both the FLSA's text and its legislative history—including

25  "the history of national labor policy" that the plaintiffs urge this Court to consider, Opp.

---

[12] *Compare Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294 (S.D.N.Y. 2011), *with Torres v. United Healthcare Svcs., Inc.*, 2013 WL 387922, at \*4 (E.D.N.Y. Feb. 1, 2013); *LaVoice v. UBS Fin. Servs., Inc.*, 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012); *Reid v. Supershuttle Int'l Inc.*, 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010); *and Pomposi v. Gamestop, Inc.*, 2010 WL 147196 (D. Conn. Jan. 11, 2010).

21

30. The Eighth Circuit also recognized that its decision, as well as those of <u>all</u> of the courts of appeals that have considered this issue, is "consistent with more than two decades of pro-arbitration Supreme Court precedent." *Owen*, 2013 WL 57874, at *4.

The plaintiffs fail to demonstrate how the FLSA's collective action provision "enshrines a substantive right to [a] collective action," Opp. 30, rather than merely providing a procedural mechanism. It is well-settled that, insofar as there is a "right" under Section 16(b) of the FLSA to represent a class, it is a "procedural right" only. *Smith v. T-Mobile USA Inc.*, 570 F.3d 1119, 1122 (9th Cir. 2009); *see also Diaz-Ramos v. Hyundai Motor Co.*, 501 F.3d 12, 15 (1st Cir. 2007) (citing cases holding class action provisions are procedural mechanisms, not substantive rights). The Supreme Court has recognized that the ADEA's collective action provision, which is based on the FLSA, *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 357 (1995), is merely a procedural device in the context of considering the enforcement of an agreement to arbitrate. *Gilmer*, 500 U.S. 20, 32 (1991). In *Gilmer*, the Supreme Court rejected the plaintiff's argument that the "arbitration procedures [could not] adequately further the purposes of the ADEA because they do not provide for . . . class actions," explaining that the agreement to arbitrate would be enforceable "even if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator."[13]  *Id.*

The plaintiffs thus cannot avoid their agreement to arbitrate on this ground.

**E.   The NLRA Does Not Render The Agreements To Arbitrate Unenforceable.**

The plaintiffs also seek to avoid their arbitration agreements on policy grounds by contending that enforcing the agreement's class waiver would violate the NLRA and/or

---

[13] The plaintiffs contend that this "interpretation of *Gilmer* has been rejected by the Second Circuit," relying on dicta from *Amex I*, 554 F.3d at 314. Opp. 31 n.8. *American Express* stated *Gilmer* was inapplicable because the plaintiffs in *Amex I* "d[id] not proffer the argument rejected in *Gilmer*, namely that the class action waiver is unenforceable merely because the relevant statute allows class actions." *Amex I*, 554 F.3d at 314. The plaintiffs here, by contrast, argue that the FLSA's collective action provision confers a nonwaivable right. The Second Circuit's decision is not controlling on an issue it expressly declined to address. In any event, the plaintiffs fail to address the numerous other appellate court decisions that have examined *Gilmer* and held that the inability to proceed collectively in arbitration does not deprive plaintiffs of a substantive right under the FLSA. *E.g., Owen*, 2013 WL 57874, at *4; *Carter*, 362 F.3d at 298; *Caley*, 428 F.3d at 1378.

the Norris-La Guardia Act.  Opp. 32.  The plaintiffs, however, fail to satisfy their heavy

burden because they cannot point to any "contrary congressional command," in either

statute, to override the FAA's mandate.  *CompuCredit*, 132 S. Ct. at 669.

The plaintiffs rely nearly exclusively on *D.R. Horton*, a widely criticized National

Labor Relations Board ("NLRB" or "Board") opinion, in which the Board held that an

arbitration agreement containing a class waiver violated the NLRA, reasoning that the

agreement restricted the employees' right under Section 7 of the NLRA "to engage in . .

. concerted activities for the purpose of collective bargaining or other mutual aid or

protection . . . ." and, thus, was an unfair labor practice under Section 8(a)(1) of the

NLRA.  *D.R. Horton*, 2012 WL 36274, at *2 (20120 (citing 29 U.S.C. §§ 157,

158(a)(1)).  In so ruling, the Board rejected an argument that its ruling was incompatible

with the FAA, characterizing its ruling as only a "limited" intrusion on the Supreme

Court's pro-arbitration policy.  *Id.* at *10-11, 15.

There is no merit to the plaintiffs' assertion that this Court "is required to give

substantial deference" to *D.R. Horton*.  Opp. 3-4.  It is entitled to *no* deference.

As an initial matter, *D.R. Horton* is currently on review to the Fifth Circuit.  The

employer has petitioned for review, and the NLRB has cross-petitioned for enforcement.

*D.R. Horton, Inc. v. NLRB*, No. 12-60031 (5th Cir., filed Jan. 13, 2012).  Unless the

Fifth Circuit enforces D.R. Horton, it is not a binding order.  *See NLRB v. Long Island

Coll. Hosp.*, 20 F.3d 76, 82 (2d Cir. 1994) (NLRB orders "not self-executing").

In addition, the Fifth Circuit is considering serious questions regarding whether

*D.R. Horton* was even a valid decision by the Board.  The NLRB must maintain a

membership of at least three members to exercise its authority.  *New Process Steel, L.P.

v. NLRB*, 130 S. Ct. 2635, 2639-40 (2010).  Although *D.R. Horton* was ostensibly

decided while the Board had three members, the recess appointment of Member Craig

Becker, one of the two members who decided *D.R. Horton*, is likely to be ruled

constitutionally invalid.  As the D.C. Circuit recently held, the Constitution's Recess

Appointments Clause requires the President to "make the recess appointment during the

23

same intersession recess when the vacancy for that office arose." *Canning v. NLRB.*, -- F.3d --, 2013 WL 276024, at \*23 (D.C. Cir. Jan. 25, 2013) (citing Const., art. II, section 2, clause 3). When Becker was appointed on March 27, 2010, there had been three empty seats on the Board since January 2008 (over two years earlier). Because Becker's appointment was not made during the recess in which the vacancy arose, it was an invalid recess appointment and, thus, without a quorum at the time of the decision, the Board could not have lawfully acted. *Id.* at \*1.

   In any event, even assuming *D.R. Horton* were a valid exercise of Board authority, federal courts nonetheless "owe no deference to its reasoning." *Owen*, 2013 WL 57874, at \*3. "[C]ourts do not owe deference to an agency's interpretation of a statute it is not charged with administering or when an agency resolves a conflict between its statute and another statute." *Ass'n of Civilian Technicians, Silver Barons Chapter v. Fed. Labor Relations Auth.*, 200 F.3d 590, 592 (9th Cir. 2000); *see also Cal. Nat. Guard v. Fed. Labor Relations Auth.*, 697 F.2d 874, 879 (9th Cir. 1983) (affording no deference to interpretation of statute agency not charged with administering and disapproving of agency's attempt to "conciliate" or "harmonize" two statutes because "it would tend to render the existence of part of the [other federal statute] meaningless").

   The Board is entitled to no deference when it interprets statutes other than the NLRA or when it attempts to accommodate or reconcile an interpretation of the NLRA with another federal statute. *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 147-52 (2002) (holding award for NLRA violation impermissibly undermined federal immigration law); *Southern S.S. Co. v. NLRB*, 316 U.S. 31, 47 (1942) (setting aside NLRB award and holding "the Board has not been commissioned to effectuate the policies of the Labor Relations Act so single-mindedly that it may wholly ignore other and equally important Congressional objectives").

   Indeed, *D.R. Horton* has been "widely criticized" as inconsistent with the pro-arbitration policy embodied in the FAA and with *decades* of Supreme Court decisions interpreting the FAA. *Carey v. 24 Hour Fitness USA, Inc.*, 2012 WL 4754726, at \*1-2

1  (S.D. Tex. Oct. 4, 2012).  Nearly every court that has considered *D.R. Horton*—

2  including the Eighth Circuit (the first federal appellate court to consider *D.R. Horton*)

3  and the courts in this district—has declined to follow it.  *E.g., Owen*, 2013 WL 57874, at

4  *3 (reversing district court decision that had relied on *D.R. Horton* to invalidate

5  arbitration agreement's class waiver and holding *D.R. Horton* "carrie[d] little persuasive

6  authority"); *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 845 (N.D.

7  Cal. 2012) (analyzing *D.R. Horton* and concluding that "[b]ecause Congress did not

8  expressly provide that it was overriding any provision in the FAA when it enacted the

9  NLRA or the Norris-LaGuardia Act, the Court cannot read such a provision into either

10  Act and must enforce the parties' Arbitration Agreement according to its terms"); *Jasso*

11  *v. Money Mart Exp., Inc.*, 2012 WL 1309171, at *10 (N.D. Cal. Apr. 13, 2012)

12  (enforcing agreement with class waiver in employment context, determining *D.R.*

13  *Horton*'s "reasoning does not overcome the direct, controlling authority holding that

14  arbitration agreements, including class action waivers contained therein, must be

15  enforced according to their terms").[14]

16      *D.R. Horton*'s decision that the NLRA could trump the well-established policies

17  of the FAA, without any identification of a "contrary congressional command" in the

18  NLRA or the Norris-LaGuardia Act, thus cannot satisfy the plaintiffs' heavy burden.

19  The plaintiffs' agreements to arbitrate must be enforced according to their terms.

20  **III.   CONCLUSION**

21      For the foregoing reasons and the reasons set forth in its motion, Ernst & Young

22  requests that the Court dismiss this action and order the plaintiffs' claims to arbitration.

23  Dated: February 4, 2013         AKIN GUMP STRAUSS HAUER & FELD LLP

24                          By_____/s/ *Gregory W. Knopp*_____
25                                      Gregory W. Knopp
                                  Attorneys for defendant Ernst & Young

26      [14] *See also Carey*, 2012 WL 4754726, at *1-2; *Tenet HealthSystem Phila., Inc. v. Rooney*, 2012 WL
    3550496 (E.D. Pa. Aug. 17, 2012); *Delock v. Securitas Security Servs. USA, Inc.*, 2012 WL 3150391, at
27  * 1–6 (E.D. Ark. Aug. 1, 2012); *Brown v. Trueblue, Inc.*, 2012 WL 1268644, at *9 (M.D. Pa. Apr. 16,
    2012); *LaVoice*, 2012 WL 124590, at *6; *Torres*, 2013 WL 387922, at *9; *but see Herrington v.*
28  *Waterstone Mortg. Corp.*, 2012 WL 1242318 (W.D.Wis. Mar. 16, 2012).

1

PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

I am employed in the County of Los Angeles, State of California.  I am over the
age of 18 and not a party to the within action; my business address is:  2029 Century
Park East, Suite 2400, Los Angeles, California 90067.  On February 4, 2013, I served
the foregoing document(s) described as:

4

5

6

**DEFENDANT ERNST & YOUNG LLP'S AND ERNST & YOUNG U.S.,
LLP'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS, OR IN THE
ALTERNATIVE, STAY PROCEEDINGS AND COMPEL ARBITRATION**

7

8

on the interested party(ies) below, using the following means:

9

**All parties identified for Notice of Electronic Filing
generated by the Court's CM/ECF system under the
referenced case caption and number**

10

11

☒ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION.  Based on a court order or an
agreement of the parties to accept service by e-mail or electronic transmission, I caused
the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated
above.  I did not receive, within a reasonable time after the transmission, any electronic
message or other indication that the transmission was unsuccessful.

12

13

14

☒ (FEDERAL)  I declare that I am employed in the office of a member of the bar of this
court at whose direction the service was made.

15

16

Executed on February 4, 2013 at Los Angeles, California.

17

18

Carmen M. Ayala
[Print Name of Person Executing Proof]

[Signature]

19

20

21

22

23

24

25

26

27

28