1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

12

13

14

15

16

17

18

STEPHEN MORRIS and KELLY
McDANIEL, on behalf of themselves and all
others similarly situated,

                    Plaintiffs,

v.

ERNST & YOUNG LLP, and ERNST &
YOUNG U.S., LLP,

                    Defendants.

Case No. C-12-04964 RMW


**ORDER GRANTING ERNST &
YOUNG LLP's AND ERNST &
YOUNG U.S., LLP'S MOTION TO
DISMISS, OR IN THE
ALTERNATIVE, STAY
PROCEEDINGS AND COMPEL
ARBITRATION**

**[Re Docket No. 42]**

19

20

21

22

23

24

25

26

27

28

Plaintiffs Stephen Morris ("Morris") and Kelly McDaniel ("McDaniel"), former EY

employees, claim that EY unlawfully classified them and other individuals as exempt from

federal and California overtime laws.  On January 11, 2013, defendants Ernst & Young LLP and

Ernst & Young U.S., LLP, (collectively "EY" or "defendants") moved to dismiss the present

action, or in the alternative to stay proceedings and compel arbitration.  Having considered the

arguments of the parties, and for the reasons set forth below, the court GRANTS EY's motion to

compel arbitration and dismisses the action accordingly.

# I. BACKGROUND

## A.  The EY Arbitration Agreement

EY maintains a "Common Ground Dispute Resolution Program" ("Dispute Resolution Program" or "Arbitration Agreement") for resolving disputes between EY and employees.   Dkt. No. 42-4 (Hoddap Decl., Ex. C).  The Arbitration Agreement provides that it "is the sole method for resolving disputes within its coverage."  *Id.* ¶ I.  Under its terms, the Arbitration Agreement covers "[a]ll claims, controversies or other disputes between [EY] and an Employee that could otherwise be resolved by a court," and provides that "[n]either [EY] nor an Employee will be able to sue in court in connection with a Covered Dispute."  *Id.* ¶ II.B.1.   Covered disputes include "[c]laims based on federal statutes such as . . . the Fair Labor Standards Act," "based on state statutes," and "concerning wages, salary, and incentive compensation programs."  *Id.* ¶ II.C.   The Arbitration Agreement is expressly governed by the Federal Arbitration Act ("FAA") or, if the FAA is held not to apply, by New York State law."  *Id.* ¶ V.G.

Relevant here, the Arbitration Agreement provides: (1) that "Covered Disputes pertaining to different Employees will be heard in separate proceedings," *id.* ¶ IV.K; (2) that "Arbitrator fees and other costs of the arbitration . . . [shall] be shared equally to the extent permitted by law and the Arbitration Rules," *id.* ¶ IV.P; and (3) that "[e]ach party will be responsible for the party's own attorney's fees and related expenses, but the Arbitrator will have authority to provide for reimbursement of the Employee's attorney's fees, in whole or part, in accordance with applicable law or in the interest of justice," *id.*

## B.  The Plaintiffs

McDaniel began her employment at EY on October 1, 2008.  McDaniel's signed offer letter included a copy of EY's Arbitration Agreement, and provided therein that that all employment-related disputes would be subject to the Agreement's mandatory mediation or

arbitration provisions.  In addition, McDaniel signed a confidentiality agreement that incorporated by reference the terms of the Arbitration Agreement.  Morris began his employment at EY in January 2005.  In March and April of 2006, EY sent an email to all employees attaching a copy of its "revised" Arbitration Agreement, and stating therein that "An Employee indicates his or her agreement to the [Dispute Resolution] Program and is bound by its terms and conditions by beginning or continuing employment with the firm after May [25], 2006."  Dkt. Nos. 42-6, 42-7 (McGuire Decl., Exs. A & B).  EY asserts that the plaintiffs are bound by the Arbitration Agreement based on their express (McDaniel) or implied (Morris) acceptance of its terms.  Defs.' Br. 7.  The plaintiffs do not dispute this argument in their opposition brief, *see* Opp'n 4-5, but rather argue that the Arbitration Agreement is unenforceable for five reasons discussed in Part II.B *infra*.

Morris and McDaniel seek approximately $17,642.97 and $28,805.19 in overtime payments respectively, and each claim additional potential damages under California law. Plaintiffs allege that the costs of complying with the Arbitration Agreement and settling each employee's dispute separately "would be in excess of $160,000 in attorney's fees, and $33,500 in expert witness fess, and well over $6,000 of additional costs and potentially in addition to one-half of the arbitrator's estimated $24,000 fee."  Opp'n 6.

## C.  Procedural History

There are three actions related to this case.  The first is *Ho v. Ernst & Young LLP*, Case No., 05-04867 ("*Ho*").  In that case, in September 2005, David Ho commenced a class action against EY raising the same claims under the California Labor Code that plaintiffs raise in the present action.  *Ho* was then related to *Richards v. Ernst & Young LLP*, Case No. 08-04988 and *Landon v. Ernst & Young LL*, Case No. 08-02853 (collectively "*Ho* related cases").  Morris and McDaniel, the plaintiffs here, were putative class members in the *Ho* related cases.  In *Ho*, the

1   court denied EY's motion to compel arbitration on the basis that EY waived its right to enforce

2   the Arbitration Agreement.  *Ho*, No. 05-04867, 2011 WL 4403625, at *6 (N.D. Cal. Sept. 20,

3   2011).   The court found waiver based on the significant prejudice to the plaintiffs resulting from

4   nearly six years of litigation before EY moved to compel arbitration.  *Id.*   The court also denied

5   class certification with respect to plaintiff Fernandez.  *Id.* at *3; *Ho*, 2011 WL 4985047 (N.D.

6   Cal. Oct. 19, 2011) (order denying plaintiffs' motion for reconsideration on the class certification

7   issue with respect to Fernandez).  After the court's finding that EY waived the right to arbitrate

8   and denial-in-part of class certification, on December 8, 2011, plaintiffs moved to add Morris as a

9   new representative plaintiff.  *Ho*, No. 05-04867, Dkt. No. 311.  On January 11, 2012, the court

10   denied the plaintiffs' request to add Morris as a class representative in *Ho* based on undue delay.

11   *Id.*, Dkt. No. 322.

12        In February 2012, Morris filed the present action in the Southern District of New York,

13   alleging six causes of action related to the alleged misclassification as exempt from federal and

14   California overtime laws under the Fair Labor Standards Act ("FLSA") and the California Labor

15   Code.  In April 2012, Morris amended his complaint to add McDaniel, who asserted the same

16   claims as Morris.  Neither Morris nor McDaniel attempted to utilize EY's Dispute Resolution

17   Program to resolve their dispute.  In May 2012, EY filed motions to transfer this case from the

18   Southern District of New York to the Northern District of California and to relate this action to

19   the *Ho* related cases.  Dkt. No. 24.  The court granted the motions, and the cases were

20   consolidated and reassigned to the undersigned.  Dkt. No. 36.  On January 11, 2013, EY filed the

21   present motion to compel arbitration.

1

## II. ANALYSIS

2

### A.  Legal Standard

3

4

5

6

7

8

9

10

11

12

13

    Under the FAA, a contractual agreement "to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "[T]his provision . . . reflect[s] both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (internal quotations omitted).  Thus, "[t]he court's role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4).

14

15

16

17

18

19

20

21

22

    Claims based on statutory rights may be arbitrated pursuant to the FAA "unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *see also Shearson/American Express Inc. v. McMahon,* 482 U.S. 220, 226 (1987).  The Court has seldom found congressional intent to preclude such a waiver, and has enforced contracts to arbitrate claims under the Sherman Act, the Racketeer Influenced and Corrupt Organizations Act, Age Discrimination in Employment Act, and the Securities Exchange Act of 1934.  *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 33, 35 (1991) (citing cases).

23

24

25

26

27

28

    If a court grants a motion to compel arbitration, pursuant to the FAA the court must stay the proceedings pending arbitration.  9 U.S.C. § 3.   "[T]he FAA . . . does not 'limit the court's authority to grant a dismissal,'" however, when a court requires arbitration with respect to all claims.  *Quevedo v. Macy's Inc.*, 798 F. Supp. 2d 1122, 1143 (C.D. Cal. 2011) (quoting *Sparling v. Hoffman Constr. Co.*, 864 F.2d 634, 638 (9th Cir. 1988).  Although this case was transferred

from a district court in the Second Circuit, this court applies Ninth Circuit law in reviewing the federal claims. *Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994) ("[W]hen reviewing federal claims, a transferee court in this circuit is bound only by our circuit's precedent.").

### B. Parties' Arguments

EY argues that its Dispute Resolution Program is a valid agreement to arbitrate based on the employees' express acceptance (McDaniel's signed offer letter) or implied acceptance (Morrison's continued employment after the program was instituted) of its terms. *See Shah v. Wilco Sys., Inc.*, 806 N.Y.S. 2d 553, 557 (N.Y. App. Div. 2005) (Under New York law, an "[at will] employee's continued employment is deemed to be a consent" to changes in employment terms.).[1] Further, EY argues that its Dispute Resolution Program encompasses the claims at issue here. According to EY, because the Arbitration Agreement is valid and encompasses the claims at issue, "there is 'no place for exercise of discretion,' and the [c]ourt must 'direct the parties to proceed in arbitration.'" Defs.' Br. 5, Dkt. No. 42 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

Plaintiffs counter that the EY Arbitration Agreement is unenforceable because: **(1)** it does not provide for mandatory shifting of costs and expenses, as required by the FLSA; **(2)** even if the Agreement preserves plaintiffs' rights to fee shifting, the cost of proceeding individually is prohibitively expensive such that arbitration would not allow the plaintiffs to "effectively

---

[1] Defendants cite New York law because the Arbitration Agreement provides that New York law governs any dispute arising under the arbitration "Program" where the FAA is "held not to apply." However, to the extent California law applies to the determination of *whether* the employees actually *agreed to be bound* by EY's Arbitration Agreement, California law also deems an at will employee's continued employment after notification of an arbitration program an agreement to be bound by the terms of the arbitration program. *See Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 419-21 (2000) (holding that, where employee received notification of employer's arbitration program through two mailings and continued working, her continued employment constituted an agreement to be bound by the arbitration program).

1   vindicat[e] [their] statutory rights," *Sutherland v. Ernst & Young LLP*, 768 F. Supp. 2d 547, 549-

2   50 (S.D.N.Y. 2011) ("*Sutherland I*") and *Sutherland v. Ernst & Young LLP*, 857 F. Supp. 2d 528,

3   533, 536-38 (S.D.N.Y. 2012) ("*Sutherland II*"); (**3**) EY waived its right to compel arbitration

4   based on its litigation conduct in this case and in a related case where Morris was a class member;

5   (**4**) the class and collective action waiver terms in the Arbitration Agreement conflict with the

6   statutory right to collective action in the FLSA; and (**5**) those same terms violate Sections 7 and 8

7   of the National Labor Relations Act ("NLRA"), as decided in *D.R. Horton, Inc. v. N.L.R.B.*, No.

8   12-ca-25764, 357 NLRB No. 184 (Jan. 3, 2012).  The court addresses each of plaintiff's

9   arguments in turn.

10  **C.  Mandatory Fee-Shifting Under the FLSA**

11          The FLSA provides that "[t]he court . . . shall, in addition to any judgment awarded to the

12  plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of

13  the action." 26 U.S.C. § 216(b).  Plaintiffs argue that § 216(b) mandates fee shifting for

14  employees who successfully sue for violation of the Act.  Because the Arbitration Agreement

15  does not provide for this "mandatory" fee shifting, plaintiffs argue that it violates the FLSA, and

16  is therefore unenforceable.

17          Section 216(b) does not require an arbitration agreement to affirmatively mandate fee

18  shifting.  *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 82 (2000) (holding that

19  an arbitration agreement that did not mention arbitration costs and fees was not *per se*

20  unenforceable where plaintiff presented no evidence as to the likelihood that she would incur

21  prohibitive costs in arbitration).  Plaintiffs cite *McBurnie v. City of Prescott*, No. 09–8139, 2010

22  WL 5344927 (D. Ariz. Dec. 22, 2010), to support the proposition that fee-shifting is mandatory

23  under the FLSA.  While *McBurnie* does emphasize that shifting attorney's fees for prevailing

24  plaintiffs is mandatory and nonwaivable under the FLSA, the court did not hold that an arbitration

agreement must affirmatively require mandatory fee shifting in order to be enforceable.  *Id.* at *2-3.  For example, where the parties stipulate to fee shifting or where the agreement gives the arbitrator the power to shift fees in accordance with applicable laws, there may be no violation of § 216(b).  *See Sutherland II*, 847 F. Supp. 2d at 532 n.1.

In *Sutherland II*, although "the [Arbitration] Agreement appear[ed] to prevent shifting of costs or expenses on behalf of a prevailing plaintiff," EY's stipulations in that case (to shift fees and costs to EY if the employee prevailed) addressed these "most obvious obstacles to Sutherland's vindication of her claims."  *Id.*  In *Sutherland II*, the court found EY's Arbitration Agreement unenforceable not on the basis of the lack of a fee shifting provision, but rather on the basis that the Arbitration Agreement's waiver of collective action made arbitration prohibitively expensive for the employee in that case to vindicate her statutory rights.  *Id.* at 533, 536-38; *see* Part II.D *infra*.

In this case, EY has made the same stipulations as in *Sutherland II*.  Defs.' Mot. 2; *Sutherland II*, 847 F. Supp. 2d at 532 n.1.  Specifically,  EY "stipulates that plaintiffs are entitled to recover in arbitration any fees and costs that they could recover in court if they prevail on their individual claims" and "that [EY] will bear all administrative costs and arbitrator fees."  Defs.' Mot. 2.  Further, EY's Arbitration Agreement allows fee shifting "in accordance with the law," Arbitration Agreement ¶ IV.P.3, and both the FLSA and California law provide for recovery of attorney's fees as a matter of right for prevailing plaintiffs.  In light of EY's express stipulations and the terms of the Arbitration Agreement expressly permitting plaintiffs to recover attorney's fees "in accordance with the law," plaintiffs' fee-shifting rights are adequately protected even if arbitration is compelled.

**D.  Whether Arbitration is Prohibitively Expensive**

Plaintiffs argue that, like in *Sutherland*, even if the costs of arbitration could be shifted, the waiver of the ability to proceed in a collective action set forth in the Arbitration Agreement effectively makes individual arbitration prohibitively expensive for the plaintiffs to enforce their statutory rights.  Based on EY's express stipulations, EY counters that "plaintiffs have the potential to be <u>fully compensated</u> for the costs of bringing suit." Reply 16 (underline in brief).  Thus, EY contends that there are no costs "unique to arbitration whatsoever, let alone costs that could render arbitration prohibitively expensive."   Reply 10.  EY urges the court not to follow *Sutherland*'s application of the prohibitive costs doctrine because the Ninth Circuit has rejected that court's cost-benefit approach. *Id.* at 14.

"[W]here [a] party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree*, 531 U.S. at 92. [2]  Thus, courts generally hold that a party opposing arbitration "must provide some *individualized evidence* that it likely will face prohibitive costs in the arbitration at issue *and* that it is financially incapable of meeting those costs."   *Livingston v. Assocs. Fin., Inc.,* 339 F.3d 553, 557 (7th Cir. 2003) (citing *Bradford v. Rockwell Semiconductors Sys., Inc.,* 238 F.3d 549, 557 (4th Cir. 2001)) (emphases added).  While *Green Tree* recognized that "the existence of large arbitration costs may well preclude a litigant . . . from effectively vindicating" her statutory rights, it explicitly did not address "[h]ow detailed the showing of prohibitive expense must be before the party seeking arbitration must

---

[2] The "prohibitive costs" doctrine from *Greem Tree* is "limited to federal statutory rights." *Coneff*, 673 F.3d at 1159 n.2 ("*Mitsubishi*, *Gilmer*, *Green Tree* and similar decisions are limited to federal statutory rights.").   Thus, the court's analysis of the applicability of *Green Tree* to the present case does not apply to plaintiffs' California Labor Code claims.

1  come forward with contrary evidence." *Green Tree*, 531 U.S. at 91-92 (not reaching this issue

2  because there was no evidence whatsoever of any prohibitive costs, and "[t]he 'risk' that

3  [petitioner] w[ould] be saddled with prohibitive costs [wa]s too speculative to justify the

4  invalidation of an arbitration agreement").

5       Plaintiffs cite *Sutherland I*, where the court found EY's Arbitration Agreement

6  unenforceable where the cost of prosecuting an individual claim was prohibitive relative to that

7  individual's potential recovery. *See Sutherland I*, 768 F. Supp. 2d at 551.  But both *Sutherland I*

8  and *II* relied on the Second Circuit's prohibitive costs doctrine set forth in the *American Express*

9  rulings: *In re American Express Merchants' Litigation*, 554 F.3d 300 (2d Cir. 2009) (*Amex I*); *In

10  re American Express Merchants' Litigation*, 634 F.3d 187, 199 (2d Cir. 2011) (*Amex II*)

11  (reconsideration of *Amex I* on remand from the Supreme Court); and *In re American Express

12  Merchants' Litigation*, 681 F.3d 139 (2d Cir. 2012) (*Amex III*) (sua sponte reconsideration of

13  *Amex II* in view of *AT&T Mobility LLC v. Concepcion*).  In these rulings, the Second Circuit held

14  that the class action waiver in plaintiffs' arbitration agreement was unenforceable because

15  individual arbitration proceedings were prohibitively expensive and thus plaintiffs were entitled

16  to class proceedings to effectively vindicate their statutory rights.  The Supreme Court granted

17  certiorari and reversed the Second Circuit's holding under the prohibitive costs doctrine *sub nom

18  American Express Co. v. Italian Colors Restaurant*, --- S. Ct. --- , 2013 WL 3064410, at *7 (June

19  20, 2013) (*Amex IV*).  In *Amex IV*, the Supreme Court held that there is "no entitlement to class

20  proceedings for the vindication of statutory rights." *Id.* at *4.

21       The Ninth Circuit has also rejected the Second Circuit's approach to the prohibitive costs

22  doctrine. *See Coneff v. AT&T Corp.*, 673 F.3d 1155, 1159 (9th Cir. 2012) ("To the extent that the

23  Second Circuit's opinion is not distinguishable, we disagree with it . . . ."); *see also Amex III*, 681

24  F.3d 139, 144 (2d Cir. 2012) (Jacobs, J., dissenting) (observing that the *Amex III* majority

1    diverged from the Ninth Circuit's holding in *Coneff*); *Jasso v. Money Mart Exp., Inc.*, 879 F.

2    Supp. 2d 1038, 1046 (N.D. Cal. 2012) ("[T]o the extent that *Amex II'* s holding rested on the

3    principle that a class waiver should be unenforceable where the amounts at issue in the claims and

4    the expense of prosecuting the claims would effectively preclude vindication of statutory rights

5    . . . that argument has been soundly rejected by the Ninth Circuit's subsequent decision in *Coneff*

6    . . . .").

7

8           In *Coneff*, the Ninth Circuit rejected the argument that "[small-dollar] claims . . . cannot

9    be vindicated effectively [in arbitration] because they are worth much less than the cost of

10   litigating them."  673 F.3d at 1158-59.  The Ninth Circuit held that although it may be true that

11   these types of "small-dollar claims" do not implicate sufficient incentives to vindicate plaintiffs'

12   rights in arbitration––as opposed to "effective means" of doing so, i.e., through class

13   actions––"[s]uch unrelated policy concerns, however worthwhile, cannot undermine the FAA."

14   *Id.* at 1159.[3]  The Supreme Court's recent ruling in *Amex IV* affirms the Ninth Circuit's approach.

15   The Supreme Court explained that "the fact that it is not worth the expense involved in *proving* a

16   statutory remedy does not constitute the elimination of the *right to pursue* that remedy."  *Amex*

17   *IV*, --- S. Ct. --- , 2013 WL 3064410, at *5.

18

19          Plaintiffs' arguments here are primarily based on evidence indicating that the costs of

20   arbitration including the attorney's fees end expert witness fees are much smaller in a class action

21   lawsuit as compared to potential individual recovery in arbitration.  *See* Opp'n 20.  But these are

22

23   _____

24   [3] Although *Coneff* primarily address state law unconscionability defenses to the enforcement of
     an arbitration agreement, the court also held that the plaintiff's federal claim failed to meet the
25   requirements under *Green Tree* to invalidate the arbitration agreement on the basis that it was
     prohibitively expensive.  673 F.3d at 1159 n.2 ("[B]ecause Plaintiffs raise at least one federal
26   claim in their complaint, we decide the case with *Green Tree* in mind; Plaintiffs' federal claim
     fails under *Green Tree*.").
27

28

1   precisely the arguments that the Supreme Court rejected in *Amex IV* and the Ninth Circuit rejected

2   in *Coneff*.  --- S. Ct. --- , 2013 WL 3064410, at *5; 673 F.3d at 1159.  Plaintiffs' arguments here

3   also fail under the Supreme Court's broad language in *Concepcion* holding that: "Requiring the

4   availability of classwide arbitration interferes with fundamental attributes of arbitration and thus

5   creates a scheme inconsistent with the FAA." 131 S. Ct. at 1748.  Absent a clear statement in a

6   federal statute demonstrating Congressional intent to override the use of arbitration, the FAA

7   prevails.  *Jasso*, 879 F. Supp. 2d at 1045 (citing *CompuCredit Corp. v. Greenwood*, 132 S. Ct.

8   665 (2012)).

9

10          The court in *Kaltwasser v. AT&T Mobility LLC* explained that the effective vindication of

11   statutory rights doctrine (referred to as "Green Tree") may still be applicable in limited situations:

12          If *Green Tree* has any continuing applicability [after *Concepcion*], it must be
           confined to circumstances in which a plaintiff argues that *costs specific to the*
13         *arbitration process, such as filing fees and arbitrator's fees, prevent her from*
           *vindicating her claims.  See Green Tree*, 531 U.S. at 90-91 & n.6, 121 S.Ct. 513.
14         *Concepcion* forecloses plaintiffs from objecting to class-action waivers in
           arbitration agreements on the basis that the potential cost of proving a claim
15         exceed potential individual damages.
16
17   812 F. Supp. 2d 1042, 1050 (N.D. Cal. 2011) (emphasis added); *Accord Amex IV*, --- S. Ct. --- ,

18   2013 WL 3064410, at *5 ([The "effective vindication" exception . . . would certainly cover a

19   provision in an arbitration agreement forbidding the assertion of certain statutory rights.  And it

20   would perhaps cover *filing and administrative fees attached to arbitration that are so high as to*

21   *make access to the forum impracticable*." (citing *Gree Tree*, 531 U.S. at 90) (emphasis added)).

22
23          No prohibitively expensive costs "specific to the arbitration process, such as filing fees

24   and arbitrator's fees," exist here.  Here, EY expressly stipulated in its motion: (1) "that plaintiffs

25   are entitled to recover in arbitration any fees and costs that they could recover in court if they

26   prevail on their individual claims"; and (2) "that it [EY] will bear all administrative costs and

27   arbitrator fees."  Defs.' Br. 2.  In its Reply brief, EY further stipulates "that should the plaintiffs

28

prevail, they may recover any expert fees reasonably necessary to prosecute their individual claims, up to the $33,500 estimated by the proposed expert."  Reply 13.  EY's stipulations essentially eliminate any additional "costs specific to the arbitration process" that would render arbitration prohibitively expensive and that plaintiffs would not otherwise incur in litigation.  *See Kaltwasser*, 812 F. Supp. 2d at 1049-50.

Morris provided an affidavit declaring his financial inability to pursue his claim in an individual arbitration.  However, the court does not find plaintiffs' financial means, or lack thereof, to be outcome-determinative.  Even if Morris were able to finance the arbitration costs, he retains no right to fee shifting if his statutory claims *fail*.  *See* Part II.C *supra*.  By seeking to invalidate the Arbitration Agreement's collective action waiver, the plaintiff is essentially seeking a "risk of loss" premium.  "[I]t is incorrect to read *Concepcion* as allowing plaintiffs to avoid arbitration agreements on a case-by-case basis simply by providing individualized evidence about the costs and benefits at stake."  *Kaltwasser*, 813 F. Supp. 2d at 1049; *see also Amex IV*, --- S. Ct. --- , 2013 WL 3064410, at *7 ("The regimen established by the Court of Appeals' decision would require—before a plaintiff can be held to contractually agreed bilateral arbitration—that a federal court determine (and the parties litigate) the legal requirements for success on the merits claim-by-claim and theory-by-theory, the evidence necessary to meet those requirements, the cost of developing that evidence, and the damages that would be recovered in the event of success. . . . The FAA does not sanction such a judicially created superstructure.").

In sum, plaintiffs fail to meet *Green Tree*'s burden of demonstrating that their statutory rights cannot be effectively vindicated through arbitration based solely on the risk of loss argument.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E.  Waiver**

Plaintiffs argue, relying primarily on *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754 (9th Cir. 1989), that EY waived the right to arbitrate by pursuing and actively litigating their claims in state or federal court.  According to plaintiffs, EY's actions in this case (transferring the action to this district) and in the *Ho* related cases (where Morris and McDaniel were putative class members) support a finding that EY waived its right to compel arbitration.

EY counters that "[i]t is well established that first moving to transfer an action does not relinquish a party's right to compel arbitration."  Reply 4 (citing *Gonsalves v. Infosys Techs., Ltd.*, 2010 WL 3118861, at *3 n.2 (N.D. Cal. Aug. 5, 2010) ("The California Supreme Court has held that '[a] petitioning party does not waive its arbitration rights merely by seeking to change judicial venue of an action prior to requesting arbitration. . . .  [A] party is not required to litigate the issue of arbitration in an improper or inconvenient venue.'" (quoting *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal. 4th 1187, 1205 (2003)).  EY also argues that there is no waiver of the right to compel arbitration based on an action where Morris and McDaniel were not parties.  EY contends that the court's determination of waiver in *Ho* cannot be binding here because the waiver ruling in *Ho* "turned on facts that were unique to the parties asserting a waiver in that case," primarily prejudice to plaintiffs Ho and Fernandez.  Reply 7.  Moreover, EY argues that the plaintiffs in this case cannot establish prejudice.

"A party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts."  *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 693, 694 (9th Cir. 1986).  "Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy

1   favoring enforcement of arbitration agreements." *Id.* "The *Fisher* test applies to both express and

2   implied waiver." *Van Ness*, 862 F.2d at 758.

3          Plaintiffs fail to meet the "heavy burden" required to prove waiver of the contractual right

4   to arbitrate. *See Fisher*, 791 F.2d at 694. First, this court agrees that the decision in *Ho* is not

5   binding here because that case turned on whether those particular plaintiffs, Ho and Fernandez,

6   were prejudiced. *Ho*, 2011 WL 4403625, at *6 ("[T]he prejudice to plaintiffs in this case goes

7   well beyond the expenditure and duplication of effort claimed by the plaintiffs in *Fisher*. The

8   parties' substantive rights have been affected."). Because no similar prejudice applies to Morris,

9   the issues are not identical. *See Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir.

10  1995), as amended 75 F.3d 1391 (1996) (no collateral estoppel where issues are not identical).

11  The court also agrees that neither Morris nor McDaniel, as putative class members, were parties

12  to the *Ho* related cases litigation such that waiver applied to them. *See Mora v. Harly-Davidson

13  Credit Corp.*, 2012 WL 1189769, at *15 (E.D. Cal. Apr. 9 2012) ("[U]ntil a class is certified and

14  the opt-out period has expired, unnamed Class members are not parties to this action, and their

15  claims are not at issue."); *Laguna v. Coverall North Am. Inc.*, 2011 WL 3176469, at *8 (S.D. Cal.

16  July 26, 2011) (same). Plaintiffs cite no conduct by EY during the *Ho* litigation that evidences

17  actions inconsistent with its intent to enforce arbitration with respect to Morris. Indeed, when

18  Morris attempted to intervene in *Ho*, EY opposed plaintiff's motion to add Morris on the grounds

19  that the motion was "futile, because if the [c]ourt granted it, [EY] *would move to compel Morris

20  to arbitrate his claims*." Defs.' Opp. to Mot. to Add a New Representative 19, *Ho*, No. 05-4867,

21  Dkt. No. 316 (emphasis added). The court's waiver decision with respect to Ho and Fernandez—

22  which the court rendered prior to Morris's motion to intervene in that case—simply has no

23  bearing on EY's right to arbitrate with respect to Morris.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Second, the court agrees with EY that its motion to transfer does not waive its right to compel arbitration, especially here were EY voiced its intent to move to compel arbitration in the transfer motion itself.  *See* Transfer Mot., Dkt. No. 25 at 2 n.1.  EY also put Morris on notice of its intent to compel arbitration in its answer to Morris's complaint.  Dkt. 30 at 19.  Plaintiffs rely on cases from other circuits where courts have held that defendants waived their arbitration rights based on their own filing of a lawsuit or their removal of a lawsuit to federal court.  Opp'n 11 (citing Fifth Circuit and Seventh Circuit cases).  Plaintiffs also cite *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784, at *3 (N.D. Cal. May 9, 2011), where the court held that "multiple motions to dismiss" and failure to "raise the arbitration clauses in their joint opposition to class certification," waived any right to arbitration.  These cases, however, are inapposite to the facts here, where EY consistently acted with the intent to compel arbitration as soon as Morris filed suit, and where EY has not filed any case dispositive motions.

Third, plaintiffs here have not demonstrated prejudice.  In *Ho*, the court found that the parties suffered substantial prejudice because their "substantive rights ha[d] been affected—[EY] obtained summary judgment against Ho, and it was able to flesh out its 'poor employee' defense against Fernandez in the summary judgment motion it brought against her" which led the court to "conclud[e] that Fernandez is not an appropriate class representative."  *Ho*, 2011 WL 4403625, at *6.  In *Van Ness*, the appellate court held that the defendant "implicitly waived arbitration under the third prong of the *Fisher* test because the appellants were prejudiced by [defendant's] inconsistent acts," including "litigat[ing] actively the entire matter—including pleadings, motions, and approving a pre-trial conference order" without "mov[ing] to compel arbitration until more than two years after the appellants brought the action."  *Van Ness*, 862 F.2d at 759.  In contrast to *Ho* and *Van Ness*, the instant action has been pending for less than a year, and plaintiffs only generally allege prejudice based on having to respond to EY's transfer motion and incurring

litigation costs.  EY has not served any discovery requests or made any motions as to the merits

of plaintiffs' claims.  In *Fisher*, under circumstances far more compelling than these with respect

to a showing of prejudice, the Ninth Circuit held that the plaintiff failed to establish prejudice

after investing "time, money, and effort" in responding to pretrial motions, preparing for trial, and

conducting "extensive discovery" during three and a half years of litigation.  791 F.2d at 697.

Plaintiffs cannot claim prejudice based on their own choice to sue in federal court, in violation of

the Arbitration Agreement.  *See id.* at 698 ("Any extra expense incurred as a result of the

[plaintiffs'] deliberate choice of an improper forum . . . cannot be charged to [the defendant].")

Any such prejudice is "self inflicted," and EY has a right to seek transfer to move to compel

arbitration in the proper forum.  *See id.*

      Accordingly, the court holds that EY did not waive its right to compel arbitration with

respect to Morris.

### F.  Right to Collective Action Under the FLSA

      Plaintiffs also attempt to rely on the FLSA's provision providing for collective action, 29

U.S.C. § 216(b), to argue that such a right is "substantive and not waivable in an arbitration

agreement."  Opp'n 25 (citing *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 311 (S.D.N.Y.

2011)).  Section 216(b) provides that "[a]n action to recover the liability prescribed in [the Act]

may be maintained against any employer . . . in any Federal or State court of competent

jurisdiction by any one or more employees for and in behalf of himself or themselves and other

employees similarly situated."

      Under Supreme Court precedent, courts must "enforce agreements to arbitrate according

to their terms," "unless the FAA's mandate has been overridden by a contrary congressional

command."  *CompuCredit*, 132 S. Ct. at 669.  Plaintiffs depend on *Raniere* for the proposition

that Congress intended the right to collective action under the FLSA to be nonwaivable.  In that

1   case, plaintiffs sought certification as a class in a suit for overtime wages and liquidated damages

2   under the FLSA and the New York labor law.  827 F. Supp. 2d at 299.  The *Raniere* court found

3   that the legislative history of the FLSA evidenced congressional intent to for employees to have a

4   nonwaivable right to collective action.  *Id.* at 314 (citing legislative history indicating Congress's

5   desire to "reduce[] the burden borne by the public fisc," 83 Cong. Rec. 9264, and to promote

6   "uniformity with regard to the application of FLSA standards," H. Rep. No. 2182, 75th Cong., 3d

7   Sess. at 6-7).  The *Raniere* court held that a waiver of class action is thus "unenforceable as a

8   matter of law" because, "'[b]y agreeing to arbitrate a statutory claim, a party does not forgo the

9   substantive rights afforded by the statute [at issue].'"  *Id.* (quoting *Gilmer v. Interstate/Johnson*

10   *Lane Corp.,* 500 U.S. 20, 26 (1991).

11

12         Despite *Raniere*'s analysis, every circuit court that has addressed the issue has held the

13   opposite: that arbitration agreements *can* validly waive collective action because Congress did *not*

14   intend to confer a nonwaivable right to a class action under the FLSA.  *See Owen v. Bristol Care,*

15   *Inc.*, 702 F.3d 1050, 1052 (8th Cir. Jan. 7, 2013) ("[T]he FLSA contains no 'contrary

16   congressional command' as required to override the FAA."); *Carter v. Countrywide Credit Indus.*

17   *Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) ("[W]e reject the Carter Appellants' claim that their

18   inability to proceed collectively deprives them of substantive rights available under the FLSA.");

19   *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) ("[T]here is no suggestion in the

20   text, legislative history, or purpose of the FLSA that Congress intended to confer a nonwaivable

21   right to a class action under that statute."); *Horenstein v. Mortgage Mkt., Inc.*, 9 F. App'x 618, 619

22   (9th Cir. 2001) (same); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th

23   Cir. 2005) (holding that waiver of collective action in arbitration agreement was not

24   unconscionable).

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In *Gilmer*, the Supreme Court considered whether Congress intended to preclude a waiver of judicial resolution of claims brought under the Age Discrimination in Employment Act of 1967 ("ADEA"). 500 U.S. at 26-27. The Court rejected the plaintiff's argument that judicial enforcement of the ADEA was a nonwaivable right because, although the ADEA provided for a judicial forum, it "did not explicitly preclude arbitration or other nonjudicial resolution of claims." *Id.* at 29. Plaintiff specifically argued in *Gilmer* that the arbitration agreement there was inadequate under the ADEA because, *inter alia*, "arbitration procedures . . . do not provide for broad equitable relief and class actions." *Id.* at 32. Although the arbitral forum at issue in *Gilmer* (the New York Stock Exchange arbitration forum) actually did provide for collective proceedings, the Court nevertheless held: "'[E]ven if the arbitration could not go forward as a class action or class relief could not be granted by the arbitrator, the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred.'" *Id.* (quoting *Nicholson v. CPC Int'l Inc.*, 877 F.2d 221, 241 (3d Cir. 1989) (Becker, J., dissenting). The Court emphasized that "although all statutory claims may not be appropriate for arbitration, '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Id.* at 26 (quoting *Mitsubishi*, 473 U.S. at 628).

The court finds the Supreme Court's reasoning in *Gilmer* equally applicable to the FLSA. Indeed, the ADEA expressly adopts the collective action procedures of the FLSA, 29 U.S.C. § 216(b). *See* 29 U.S.C. § 626(b); *Carter,* 362 F.3d at 298. The court here agrees with the various circuits concluding that nothing in the legislative history of the FLSA indicates Congressional intent to preclude arbitration of FSLA claims. As the Ninth Circuit found in *Horenstein*, "there is nothing in the text [of the FLSA], and plaintiffs have shown nothing in the legislative history, indicating that Congress intended to preclude arbitration of FLSA claims." 9 F. App'x at 619.

1
2
3
4
5
6

The court disagrees with *Raniere* that the right to collective action under the FLSA is a substantive right. *Accord id.* ("Although plaintiffs who sign arbitration agreements lack the procedural right to proceed as a class, they nonetheless retain all substantive rights under the statute."). The court holds that Congress did not intend collective actions to be a substantive right under the FLSA, and that such a right may be waived as a part of a valid arbitration agreement.

7

### G.  Right to Collective Action Under Sections 7 and 8 of the NLRA

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Plaintiffs also relies on the National Labor Relations Board's ("NLRB") decision in *D.R. Horton*, 357 N.L.R.B. No. 184 (2012), for the proposition that right to collective action is also nonwaivable under Sections 7 and 8 of the NLRA. In *D.R. Horton*, the NLRB determined that "an agreement that precludes [employees] from filing joint, class, or collective claims addressing their wages, hours or other working conditions against the employer in any forum, arbitral or judicial . . . unlawfully restricts employees' Section 7 right to engage in concerted action for mutual aid or protection, notwithstanding the [FAA], which generally makes employment-related arbitration agreements judicially enforceable." 357 NLRB No. 184 at 1. Both the Eighth Circuit and at least one district court in this circuit, however, have rejected the NLRB's interpretation of the NLRA on the grounds that it is inconsistent with the Supreme Court's interpretation of the FAA. *Owen*, 702 F.3d at 1054 (declining to defer to the NLRB's interpretation of Supreme Court precedent); *Jasso*, 879 F. Supp. 2d at 1047 ("[T]here is no language in the NLRA . . . demonstrating that Congress intended the employee concerted action rights therein to override the mandate of the FAA.").

24
25
26
27
28

In *Jasso*, the court held that "[b]ecause Congress did not expressly provide [in the NLRA] that it was overriding any provision in the FAA, the Court cannot read such a provision into the NLRA and is constrained by *Concepcion* to enforce the instant agreement according to its terms." 879 F. Supp. 2d at 1048. The court reasoned that "the broad language in *Concepcion* . . .

1   articulates a strong policy choice in favor of enforcing arbitration agreements and thereupon holds

2   that class waiver provisions should not be stricken or render the agreements unenforceable." *Id.*

3   Here, the court declines to defer to the NLRB's interpretation of the NLRA in *D.R. Horton*

4   because, although the NLRB is charged with interpreting the NLRA, it is *not* charged with

5   interpreting the FAA.  When an NLRB decision "trenches upon a federal statute or policy outside

6   the Board's competence to administer, the Board's remedy may be required to yield." *Hoffman*

7   *Plastic Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 147 (2002).  "[C]ourts do not owe deference

8   to an agency's interpretation of a statute it is not charged with administering or when an agency

9   resolves a conflict between its statute and another statute." *Ass'n of Civilian Technicians, Silver*

10  *Barons Chapter v. Fed. Labor Relations Auth.*, 200 F.3d 590, 592 (9th Cir. 2000).  Based on "the

11  strong policy favoring arbitration [whereby] doubts are to be resolved in favor of the party

12  moving to compel arbitration," *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1,

13  24 (1983), the court declines to defer to the NLRB's decision in *D.R. Horton*.

### III.  ORDER

For the foregoing reasons, the court GRANTS EY's motion to compel arbitration.  At oral

argument, the parties agreed that if the court grants the motion to compel arbitration the case

should be dismissed.  Because arbitration is required for every claim, the court dismisses, rather

than stays, the case. *See Sparling*, 864 F.2d at 638.

Dated:  July ; , 2013

*Ronald M. Whyte*
_____
Ronald M. Whyte
United States District Court Judge