| | |
|---|---|
| 1 | MAX FOLKENFLIK (admitted *pro hac vice*) |
| 2 | FOLKENFLIK & MCGERITY LLP |
|   | 1500 Broadway, 21St Floor |
| 3 | New York, NY 10036 |
|   | Telephone: (212)757-0400 |
| 4 | mfolkenflik@fmlaw.net |
| 5 | ROSS L. LIBENSON, (State Bar No. 181912) |
|   | LIBENSON LAW |
| 6 | 1939 Harrison Street, Suite 917 |
|   | Oakland, CA 94612 |
| 7 | Telephone: (510) 451-4441 |
|   | Facsimile: (510) 877- 3222 |
| 8 | |
| 9 | *Counsel for Plaintiffs* |

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# (OAKLAND DIVISION)

| | |
|---|---|
| STEPHEN MORRIS and KELLY McDANIEL, on behalf of themselves and all others similarly situated, | Case No. 12-CV-04964-JSW |
| Plaintiffs, | Hearing Date: June 7, 2024 |
| vs. | Time: 9:00 a.m. |
| ERNST & YOUNG LLP, | Courtroom:5 |
| Defendant. | 1301 Clay Street, 2nd Flr. |
| | Oakland, CA 94612 |

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO VACATE THE ARBITRATION AWARD

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................... 1

THE FACTS ........................................................................................... 4
    A.    THE ARBITRATION AGREEMENT ....................................... 5
    B.    THE ARBITRATON AWARD ................................................. 7

ARGUMENT ......................................................................................... 9

    POINT I ............................................................................................ 9

    THE AWARD MUST BE VACATED BECAUSE THE ARBITRATOR FAILED TO APPLY THE CONTRACTUAL CHOICE OF LAW.

    POINT II ........................................................................................ 11

    THE ARBITRATOR IGNORED THE EXPRESS TERMS OF THE ARBITRATION AGREEMENT THAT *REQUIRED* PHASE I MEDIATION TO PRECEDE ARBITRATION.

    POINT III ....................................................................................... 12

    THE ARBITRATOR MANIFESTLY DISREGARDED THE HOLDING OF *STOLT-NIELSON* REQUIRING THE ARBITRATOR TO GIVE EFFECT TO THE INTENTION OF THE PARTIES TO THE AGREEMENT.

    POINT IV ...................................................................................... 14

    THE ARBITRATOR MANIFESTLY DISREGARDED THE PRIOR RULINGS BY THIS COURT AND TOLLING OF THE STATUTE THAT RESULTED FROM ONGOING PROCEEDINGS BEFORE THE COURT.

CONCLUSION ................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Albano v. Shea Homes Ltd. Partnership*
(9th Cir. 2011) 634 F.3d 524 ............................................................................................. 7

*Barnes v. Logan,*
122 F.3d 820 (9th Cir. 1997) ........................................................................................ 2, 10

*Comedy Club, Inc. v. Improv West Assocs.,*
553 F.3d 1277 (9th Cir. 2009) ......................................................................................... 12

*Coutee v. Barington Capital Group, L.P.,*
336 F.3d 1128 (9th Cir 2003) ...................................................................................... 2, 10

*Federated Empls. of Nevada, Inc. v. Teamsters Local No. 631,*
600 F.2d 1263 (9th Cir 1979) ............................................................................................ 2

*Hambrecht & Quist Venture Partners v. Am. Med. Internat., Inc.,*
38 Cal App 4th 1532, 46 Cal Rptr 2d 33 (1995) ............................................................. 13

*HayDay Farms, Inc. v. FeeDx Holdings, Inc.,*
55 F.4th 1232 (9th Cir. 2022) ............................................................................................ 1

*Indian Harbor Ins. Co. v Group SHS, LLC,*
2022 U.S. App. LEXIS 33311 (9th Cir. Dec. 2, 2022) ........................................ 3, 10, 13

*Stolt-Nielsen S.A. v. AnimalFeeds Intl. Corp.*
559 U.S. 662 (2010) ........................................................................................ 3, 7, 11, 12

*Sun Oil Co. v. Wortman,*
486 U.S. 717 (1988) (Brennan, concurring) ................................................................... 13

**Statutes**

29 U.S.C. § 216(b) ................................................................................................................ 4

California Labor Code Section 1194 ................................................................................... 4

Federal Arbitration Act .................................................................................................... 2, 6

FLSA Section 7(a)(1) .................................................................................... 4

**Other Authorities**

Federal Rules of Civil Procedure Rule 23 ....................................................... 4

Rest.2d Conf. of Laws, § 122 ........................................................................ 13

**PLEASE TAKE NOTICE** that on Friday, June 7, 2024, at 9:00 a.m., in Courtroom 5 of the above-entitled Court, located at 1301 Clay Street, 2nd Floor, in Courtroom 5, Plaintiff STEPHEN MORRIS will and hereby does move the Court for an order vacating the Arbitration Award signed on December 31, 2023.

Plaintiff seeks an order vacating the Arbitration Award in favor of Defendant and against Stephen Morris dated December 31, 2023 and served upon the parties on January 2, 2024.

Plaintiff Stephen Morris (hereinafter "Morris" or "Plaintiff") by his Attorneys, Folkenflik & McGerity LLP and Libenson Law, respectfully submits this Memorandum of Points and Authorities in support of Plaintiff's Motion to vacate the Arbitration Award delivered on January 2, 2024.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

The EY Arbitration Agreement is nine densely typed pages. It imposes a *mandatory multi-phased process* that adds to the cost employee must pay as well as delaying the outcome. Phase I requires mediation. This was conducted on July 18, 2022. Phase II is arbitration. A copy of the EY Arbitration Agreement is annexed to the Declaration of Max Folkenflik submitted herewith as Exhibit A. In compliance with this Court's Order, Plaintiff commenced an Arbitration on July 22, 2022. The Arbitrator rendered a Decision that was served on the parties on January 2, 2024. A copy of the Arbitration Award (hereinafter the "Order") is annexed to the Declaration of Max Folkenflik submitted herewith as Exhibit B.

While the burden on a party seeking to vacate an arbitration award is high, "[v]acatur under § 10(a)(4) is warranted when an arbitration award exhibits a manifest disregard of law or is completely irrational." *HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1240 (9th Cir. 2022).

1  However, the law of this Circuit and the Supreme Court put flesh on the
2  bones of that general statement.  First, the award must "draw[] its essence"
3  from the arbitration agreement. "To determine whether the standard has
4  been satisfied, this court simply asks: Is the arbitrator's interpretation of
5  the contract plausible?"  *Federated Empls. of Nevada, Inc. v. Teamsters*
6  *Local No. 631*, 600 F.2d 1263, 1264-1265 (9th Cir 1979), *quoting Aloha*
7  *Motors, Inc. v. I. L. W. U. Local 142*, 530 F.2d 848 (CA9 1976).
8         In particular, as this Circuit has recognized time and again,
9  "[a]rbitrators act beyond their authority if they fail to adhere to a valid,
10 enforceable choice of law clause agreed upon by the parties."  *Coutee v.*
11 *Barington Capital Group, L.P.*, 336 F.3d 1128, 1134 (9th Cir 2003); *Barnes v.*
12 *Logan*, 122 F.3d 820, 823 (9th Cir. 1997).  Here, the Arbitrator reached the
13 "completely irrational" conclusion that because the Federal Arbitration Act
14 applied to this Arbitration generally, the choice of law provision in Section
15 V.G, at page 4 of the EY Arbitration Agreement could be ignored.  On that
16 ground alone, binding precedent requires vacatur.
17        As a second and independently sufficient ground for vacatur, the
18 Arbitrator ignored the express terms of the Arbitration Agreement that
19 *required* Phase I mediation to precede arbitration.  Morris gave notice to EY
20 that mediation was required.  The parties went to mediation on July 18,
21 2022 and commenced arbitration within days after mediation failed to reach
22 a resolution.  It is "completely irrational" to conclude that the statute of
23 limitations could expire prior to the conclusion of the mediation *required* by
24 the Arbitration Agreement.
25        Further, the remedy for a party, if the other party goes to court in
26 violation of the agreement, is to either a) commence arbitration or b) to *seek*
27 *an order requiring the party who filed the lawsuit to satisfy the*
28 *requirements of the Program."*  The "requirements of the Program" included

1 the requirement to conduct a Phase I mediation.  Under the Arbitration
2 Agreement, the Court could only order the Plaintiff to arbitrate after the
3 mediation had concluded.
4      In yet another independently sufficient ground for vacatur, the
5 Arbitrator recognized and failed to apply the holding of *Stolt-Nielsen S.A. v.*
6 *AnimalFeeds Intl. Corp.* 559 U.S. 662, 682-83 (2010) that the EY Arbitration
7 Agreement "must be read 'to give effect to the contractual rights and
8 expectations of the parties' based on 'the parties intentions….'"  Order at 6.
9 The Arbitrator's conclusion that the "plain language" of § IV.J. of the
10 Agreement stating that "the Arbitrator will apply the substantive law…that
11 would be applied by a court in the venue of the arbitration…***unambiguously***
12 ***include[ed]*** statutes of limitation."  (emphasis added).  Order at 6 requires
13 vacatur for three reasons.
14      First, the Arbitrator ignored the rule of *ejusdem generis* "where
15 specific words follow general words in a contract, 'the general words are
16 construed to embrace only things similar in nature to those enumerated by
17 the specific words.'"  *Indian Harbor Ins. Co. v Group SHS, LLC*, 2022 U.S.
18 App. LEXIS 33311, at *3 (9th Cir. Dec. 2, 2022).  Second, the meaning of the
19 phrase is at best ambiguous with respect to the unmentioned issue of the
20 statute of limitations, as numerous cases have found.  *See infra.* at 14.
21 Third, the clause was drafted by Defendant.  The Arbitrator manifestly
22 disregarded the law that, under the rule of *contra preferendum,* any
23 ambiguity must be construed against EY.
24      In concluding that the language of § IV.J. unambiguously revealed
25 Morris' agreement to apply California law instead of New York law, as
26 required by the choice of law section of the Agreement, the Arbitrator acted
27 in manifest disregard of the Supreme Court holding in *Stolt-Nielsen.*
28

Finally, the Arbitrator ignored the effect of the proceedings and rulings of this Court in either rejecting EY's requests for a ruling on the statute of limitations thereby resulting in law of the case, or alternatively, in tolling the running of the statute of limitations during the course of the proceedings.

The Arbitrator's ruling is not grounded in the terms of the Arbitration Agreement, but instead represents the Arbitrator's personal view of the proper role of limitations on the rights of parties to initiate arbitration. For any of the above errors, each one of which is a sufficient ground for vacatur, the Arbitration Award must be vacated. A further arbitration on the merits of Plaintiff's claim should be ordered.

## THE FACTS

Stephen Morris commenced this action against Ernst & Young seeking overtime payments that he alleged were required to be paid under the terms of Section 7(a)(1) of the FLSA. 29 § 207(a)(1). Morris sought to proceed as a collective action under Section 16(b) of that statute. 29 U.S.C. § 216(b). He also sought relief under California Labor Code Section 1194, which has its own overtime payment requirements, and other related relief under state law. With respect to the state law claims, Morris sought to proceed under Rule 23 of the Federal Rules of Civil Procedure. After extensive litigation before this Court, the Ninth Circuit, and the Supreme Court, it was ultimately determined that Morris could not proceed on a class or collective basis. During the course of the appellate proceedings, this Court imposed a stay of proceedings, that was not lifted when the mandate of the Ninth Circuit remanded the case to this Court.

Subsequent to the decision by the United States Supreme Court holding that Morris's objections to arbitration would not prevail, EY

1  repeatedly asked this Court to lift the stay and dismiss Morris's action. *See,*
2  Status Report dated July 11, 2018 Exhibit A to EY's Request for Judicial
3  Notice, at p. 2, Status Report dated January 10, 2020, Exhibit B to EY's
4  Request for Judicial Notice, at p.3, Status Report dated May 16, 2022,
5  Exhibit C to EY's Request for Judicial Notice, at p 2.  Finally, the District
6  Court entered an order requiring Morris "to initiate arbitration" by July 22,
7  Exhibit D to EY's request for Judicial Notice, which was done. EY's Request
8  for Judicial Notice is annexed to the Declaration of Max Folkenflik
9  submitted herewith as Exhibit C.

10  Prior to the July 22, 2022 Order, consistent with the E&Y Common
11  Ground Dispute Resolution Program (the "Arbitration Agreement"), Exhibit
12  E to EY Request for Judicial Notice, the parties participated in the pre-
13  arbitration demand Mediation on July 18, 2022.  That mediation is
14  proscribed as being required before demanding arbitration in the Arbitration
15  Agreement and denominated as the Phase I proceeding. *See id.* Exhibit E to
16  EY Request for Judicial Notice § III.  The initiation of arbitration on July
17  22, 2022, was timely under the terms of the Phase I procedure.

18  A.   THE ARBITRATION AGREEMENT
19  The EY Arbitration Agreement is nine densely typed pages. It imposes
20  a *mandatory multi-phased process* which adds to the cost that the employee
21  must pay as well as delay in the outcome. Phase I requires mediation. EY
22  Arbitration Agreement, §§ III and III.G, RJN Ex. E, p. 16. Phase II is
23  arbitration, either before the International Institution for Conflict
24  Prevention and Resolution ("CPR"), American Arbitration Association, or
25  JAMS. § IV and IV.C, *Id.,* p. 17.  The chosen provider must agree to comply
26  by the terms of the EY Arbitration Agreement. § IV.G.4, *Id.,* p.18.  If there is
27  any conflict between the provider's arbitration rules and terms of the EY
28

5

Arbitration Agreement, the EY Arbitration Agreement "will take precedence." § IV.D. *Id.*, p.17.

The Arbitration Agreement at § II B states, "[b]oth the Firm and the Employee give up any right to resolve any Covered Dispute through any other means. Neither the Firm nor an Employee will be able to sue in court in connection with a Covered Dispute.

Section III. C., the Arbitration Agreement provides, "[i]nitiation. A party may start Phase I by giving the other party notice in writing. If contemplated by the mediation procedures of the Provider, the Firm will contact the Provider on behalf of the parties."

The Arbitration Agreement provides in § IV B., "*Phase I Default*. If a party files a lawsuit relating to a Covered Dispute in court in violation of the terms of the Program, the other party may choose to proceed directly to Phase II *or to seek an order requiring the party who filed the lawsuit to satisfy the requirements of the Program.*" (emphasis added).

The EY Arbitration Agreement contains two provisions regarding the law to be applied by the Arbitrator. Section V.G, p. 4. entitled "Choice of Law Governing Program," provides that "The Program, these procedures, and any arbitration award that may result from them shall be governed by the Federal Arbitration Act and, to the extent, if any, that such Act is held not to apply, to the state law, including judicial interpretations, applicable in the State of New York, provided that principles of conflicts of laws shall not be applied."

Section IV.J of the EY Arbitration Agreement refers to the "substantive law" applicable in the hearing or other proceedings and provides that "the Arbitrator will apply the substantive law, including burdens of proof, that would be applied by a court in the venue of the arbitration."

B.   **THE ARBITRATON AWARD**

The Arbitrator began her decision by noting that there was a dispute regarding the choice of law to apply. The arbitrator noted that Morris asserted that under the express choice of law provision of EY Arbitration Agreement §V.G, New York law applied. While EY asserted that California law should apply under section IV.J of the EY Arbitration Agreement.

In addressing the question of choice of law, the Arbitrator did not address the issue of the statute of limitations specifically, a threshold matter not addressed in the Arbitration Agreement itself. Rather the Arbitrator addressed the issue of choice of law generally, and without regard to the application of choice of law to the specific statute of limitations issue being rule upon. The Arbitrator then decided she was free to completely ignore the Section V.G, p. 4. G. headed **Choice of Law,** because that provision only applies "to the extent, if any, that [the Federal Arbitration] Act is held not to apply." Order at 3-4. The Arbitrator held:

> No court has found the Federal Arbitration Act inapplicable to this arbitration.
> Indeed, to the contrary, the U.S. Supreme Court applied the FAA to the Common Ground program. (*See Epic Sys. Corp. v.* Lewis. (2018) 138 S.Ct. 1612.) Section V.G of the Common Ground program, therefore, does not apply.

Order at 4.

The Arbitrator then held that the issue of the statute of limitations was governed by Section IV.J of the of the EY Arbitration Agreement, because "Statutes of limitations are considered part of the substantive law of a state. (*See Albano v. Shea Homes Ltd. Partnership* (9th Cir. 2011) 634 F.3d 524, 530.)" Order at 4. The Arbitrator conceded that under *Stolt-Nielsen S.A. v. AnimalFeeds Intl. Corp.* 559 U.S. 662, 682-83 (2010) the EY

7

1  Arbitration Agreement "must be read 'to give effect to the contractual rights
2  and expectations of the parties' based on "the parties intentions,""" but then
3  held that the "plain language" of the Agreement that stated "the Arbitrator
4  will apply the substantive law . . . that would be applied by a court in the
5  venue of the arbitration" covered the issue of the statute of limitations
6  holding: "There is no limitation placed on the type of substantive law to
7  which this provision applies. Thus, the provision is broad in scope,
8  *unambiguously including* statutes of limitation." (emphasis added).  Order
9  at 6.

10  The Arbitrator noted that "the phrase in section IV.J specifically lists
11  "burdens of proof," and statutes of limitation are not also listed." But held
12  that "'burdens of proof' is merely an example of substantive law that the
13  parties intended to be 'includ[ed].'Nothing in this provision indicates that
14  the inclusion of "burdens of proof" was intended to exclude the application of
15  any other substantive law to Covered Disputes, such as statutes of
16  limitation." Order at 6-7.  The Arbitrator then held that in her view not
17  having a statute of limitations on the commencement of an arbitration
18  would be an "absurd outcome that cannot stand." *Id.*

19  The Arbitrator also ruled that the pendency of proceedings before the
20  District Court up until the date the Court ordered Arbitration to be
21  commenced "had no bearing on the statute of limitations issues." *Id.* at 7.
22  Despite the mandatory mediation procedures in "Phase I" of the Arbitration
23  Agreement the Arbitrator ruled that "nothing in the Common Ground
24  mediation procedures suggests that engaging, or not engaging, in mediation
25  would have any impact on the statute of limitations." *Id.*

26  The Arbitrator also dismissed Morris' argument that he alone could
27  not be penalized for failing to commence the arbitration sooner since EY had
28  the right to commence the Arbitration itself.  The Arbitrator held:

> The Common Ground program only gives EY the right, but not the obligation, to initiate arbitration, however. (*See* Common Ground program, §IV.A ["If a Covered Dispute is not resolved in Phase I, *either party may choose* to proceed to binding arbitration."] [emphasis added].) Morris's argument is therefore unpersuasive.

*Id.* at 8.

Finally the Arbitrator held that the Court's failure to hold that the statute of limitations had passed in response to repeated requests by EY for that relief did not amount to "law of the case," the Court order requiring initiation of arbitration by July 22, 2022 (a date Morris met) is "irrelevant to the undersigned's inquiry." *Id.* at 8-9.

## ARGUMENT

## POINT I

## THE AWARD MUST BE VACATED BECAUSE THE ARBITRATOR FAILED TO APPLY THE CONTRACTUAL CHOICE OF LAW.

Section V.G. of the EY Arbitration agreement is headed "**Choice of Law.**" It applies "to the extent, if any, that [the Federal Arbitration] Act is held not to apply."

Base on that language, the Arbitrator held: [T]the U.S. Supreme Court applied the FAA to the Common Ground program. (*See Epic Sys. Corp. v. Lewis.* (2018) 138 S.Ct. 1612.) Section V.G of the Common Ground program, therefore, does not apply." Order at 4.

That holding is completely irrational. There are many legal aspects of an arbitration proceeding that are not covered by the FAA, including, but not limited to, the law with respect to the claims and defenses of the parties. Were the "Choice of Law" provisions of § V.G. the only provision in the EY Arbitration Agreement it would undoubtedly apply and govern all of the claims and defenses asserted in the arbitration. The EY Arbitration

9

Agreement does have a "carve out" for "substantive law, including burdens of proof, that would be applied by a court in the venue of the arbitration." EY Arbitration Agreement § IV. J.  But any law applicable to the arbitration proceeding not covered by that "carve out" is governed by New York law as required by § V.G.

Under binding Ninth Circuit precedent the wording of § IV.J referring to "substantive law including burdens of proof" would not include the statute of limitations.  "Under the principle of ejusdem generis, 'where specific words follow general words in a contract, the general words are construed to embrace only things similar in nature to those enumerated by the specific words.'" *Indian Harbor Ins. Co. v Group SHS, LLC*, 2022 U.S. App. LEXIS 33311, at *3 (9th Cir Dec. 2, 2022), *quoting, Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 72 Cal. Rptr. 3d 210, 223 (Ct. App. 2008), *quoting Cal. Farm Bureau Fed'n v. Cal. Wildlife Conservation Bd.*, 143 Cal. App. 4th 173, 49 Cal. Rptr. 3d 169, 181 (Ct. App. 2006).

There can be no serious question that the law regarding the statute of limitations is not "similar in nature" to burdens of proof.  Even if one could make such an argument, the Arbitrator should have considered that issue and balanced the requirements of Section V.G. against Section IV. J. and determined the parties' intent with respect to the law governing the statute of limitations.  Instead of performing the required analysis, the Arbitrator simply ignored the "Choice of Law" Section.  That was an error that requires vacatur.

As mentioned above, under binding Ninth Circuit precedent, "Arbitrators act beyond their authority if they fail to adhere to a valid, enforceable choice of law clause agreed upon by the parties." *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1134 (9th Cir. 2003); *Barnes v. Logan*, 122 F.3d 820, 823 (9th Cir. 1997). A similar issue arose in *Stolt-*

10

*Nielson* where "[t]he District Court vacated the award, concluding that the arbitrators' decision was made in "manifest disregard" of the law insofar as the arbitrators failed to conduct a choice-of-law analysis." The Second Circuit reversed, but the Supreme Court agreed with the District Court's analysis and vacated the Arbitration Award. *Stolt-Nielsen S. A. v AnimalFeeds Intl. Corp.*, 559 U.S. 662, 669 (2010).

While we believe in light of the rule of ejusdem generis this Court could conclude that the law governing the statute of limitations is not covered by Section IV. J. of the Agreement, absent that determination it is for the Arbitrator, and not the Court, to conduct the choice-of-law analysis considering ***both*** Section IV.J. and V.G. and weighing one section against the other. Accordingly, for that reason alone the Arbitration Award must be vacated.

## POINT II

## THE ARBITRATOR IGNORED THE EXPRESS TERMS OF THE ARBITRATION AGREEMENT THAT *REQUIRED* PHASE I MEDIATION TO PRECEDE ARBITRATION.

Section III of the EY Arbitration Agreement provides, "[i]f a Covered Dispute arises, ***the parties will try to resolve the Covered Dispute through mediation***.... A party may start Phase I by giving the other party notice in writing." The Arbitrator recognizes that Morris and EY held a mediation on July 18, 2022, but concluded that "nothing in the Common Ground mediation procedures suggests that engaging, or not engaging, in mediation would have any impact on the statute of limitations." Order at 7. Actually, the express term of Section III makes mediation a mandatory predicate to the commencement of an Arbitration. That fact is buttressed by the fact that § IV B., "*Phase I Default*. If a party files a lawsuit relating to a Covered Dispute in court in violation of the terms of the

11

Program, the other party may choose to proceed directly to Phase II *or to seek an order requiring the party who filed the lawsuit to satisfy the requirements of the Program."* (emphasis added).  Since it is an alternative to "proceeding directly to Phase II [Arbitration]" requiring the party to "satisfy the requirements of the Program" can only mean requiring *first* mediation *and then* Phase II Arbitration.

An arbitration award is "completely irrational" if it "fails to draw its essence from the agreement." *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009), *quoting Hoffman v. Cargill Inc.*, 236 F.3d 458, 461-62 (8th Cir. 2001).  The Arbitrator's conclusion that the parties had not agreed that mediation was a contractual pre-condition to commencement of Arbitration failed to "draw its essence from the agreement" and was therefore "completely irrational" and requires vacatur.

### POINT III

### THE ARBITRATOR MANIFESTLY DISREGARDED THE HOLDING OF *STOLT-NIELSON* REQUIRING THE ARBITRATOR TO GIVE EFFECT TO THE INTENTION OF THE PARTIES TO THE AGREEMENT.

As noted above, the Arbitrator recognized but failed to apply the holding of *Stolt-Nielsen S.A. v. AnimalFeeds Intl. Corp.* 559 U.S. 662, 682-83 (2010) that the EY Arbitration Agreement "must be read 'to give effect to the contractual rights and expectations of the parties' based on "the parties intentions…."'  Order at p. 6.  The Arbitrator's conclusion that the "plain language" of § IV.J. of the Agreement that stating that "the Arbitrator will apply the substantive law…that would be applied by a court in the venue of the arbitration…*unambiguously include[ed]* statutes of limitation." (emphasis added).  *Id.*  This conclusion requires vacatur for three reasons.

12

1        First, as noted above, the Arbitrator ignored the rule of *ejusdem generis* "where specific words follow general words in a contract, 'the general words are construed to embrace only things similar in nature to those enumerated by the specific words.'" *Indian Harbor Ins. Co. v Group SHS, LLC*, 2022 U.S. App. LEXIS 33311, at *3 (9th Cir. Dec. 2, 2022). For that reason alone, Section IV.J., is at a minimum ambiguous.

        Further, the meaning of the term "substantive" is at best ambiguous with respect to the unmentioned issue of the statute of limitations, as numerous cases have found. *See, e.g. Sun Oil Co. v. Wortman,* 486 U.S. 717, 736 (1988) (Brennan, concurring) ("Statutes of limitations, however, defy characterization as either purely procedural or purely substantive.); *Hambrecht & Quist Venture Partners v. Am. Med. Internat., Inc.*, 38 Cal App 4th 1532, 1542, n 7, 46 Cal Rptr 2d 33, 39 (1995) ("At least with respect to statute of limitations issues, the substance-procedure terminology is problematic because those labels are difficult to apply as mutually exclusive categories. (See Rest.2d Conf. of Laws, § 122, com. b, p. 352 [discussing problems in classifying matters as either 'procedural' or 'substantive.']")

        Indeed, the EY Arbitration Agreement was drafted exclusively by EY. The Arbitrator manifestly disregarded the law that under the rule of *contra preferendum,* any ambiguity must be construed against EY.

        Particularly here, where there are two conflicting choice of law provisions, to say that simply the use of the word "substantive law" unambiguously revealed *Morris' intent* to have the California statute of limitations apply is not grounded on the language of the Agreement and finds no basis in law or logic.

        For all of these reasons, the Arbitrator's decision manifestly disregarded the mandate of *Stolt-Nielson* "to give effect to the contractual rights and expectations of the parties' based on the parties intentions…."

# POINT IV

## THE ARBITRATOR MANIFESTLY DISREGARDED THE PRIOR RULINGS BY THIS COURT AND TOLLING OF THE STATUTE THAT RESULTED FROM ONGOING PROCEEDINGS BEFORE THE COURT.

The order of this Court dated August 24, 2017, stayed all action in the District Court Action between Morris and EY. Subsequent to the decision by the United States Supreme Court holding that Morris's objections to arbitration would not prevail, EY repeatedly asked this Court to lift the stay and dismiss Morris's action. *See,* Status Report dated July 11, 2018, Exhibit A to EY's Request for Judicial Notice, at p. 2, Status Report dated January 10, 2020, Exhibit B to EY's Request for Judicial Notice, at p.3, Status Report dated May 16, 2022, Exhibit C to EY's Request for Judicial Notice, at p 2. Finally, the District Court entered an order requiring Morris "to initiate arbitration" by July 22, 2022. Exhibit D to EY's request for Judicial Notice. On July 22, 2022, Morris "initiated" arbitration, but only after complying with required Phase I to participate in a mediation.

The Arbitrator held that this Court's decisions were not "law of the case" because "EY never made a motion to dismiss based on statute of limitations grounds before the District Court…[and] the District Court did not have jurisdiction to rule on statute of limitations questions" Order at 8. We respectfully submit that the Arbitrator took too narrow a view of this Court's orders. But whether considered law of the case or not, as the Court is well aware, the filing of and pendency of an action in Court tolls the statute of limitations with regard to the claims asserted. The Arbitrator provided no reason to believe that the statute of limitations continued to run with respect to the commencement of arbitration while the statute was tolled in the District Court.

14

For this separate and independently sufficient reason, the Arbitration Award is not based on a "plausible" reading of the Arbitration Agreement and must be vacated.

## CONCLUSION

As set forth above, there are numerous separate and independently sufficient reasons why as a matter of law, the Arbitration Award must be vacated. It is clear that instead of applying the terms of the Arbitration Agreement, the Arbitrator had her own view of the just requirement of when an arbitration must be commenced. Instead of interpreting the Agreement of the parties, the Arbitrator when went out of her way to ignore terms that were included and to insert terms the parties had never agreed to. While arbitrators have latitude in interpreting an arbitration agreement, their powers are strictly limited to the agreement "as written." They may not stray from the agreement based on personal predilections about what the agreement should have provided.

For all of these reasons, Morris respectfully requests that the Arbitration Award be vacated.

Dated: New York, New York
April 2, 2024

Respectfully submitted,

_____/s Max Folkenflik_____
Max Folkenflik
Folkenflik & McGerity LLP

_____/s Ross Libenson_____
Ross Libenson (SBN 181912)
Libenson Law
*Attorneys for Plaintiff Stephen Morris*